IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03098-DDD-NRN

JOANNE BLACK, protected person,

Petitioner,

v.

BERNARD BLACK,

Respondent.

---

**REPORT AND RECOMMENDATION ON ORDER TO SHOW CAUSE WHY THIS MATTER SHOULD NOT BE REMANDED TO STATE COURT FOR LACK OF FEDERAL SUBJECT MATTER JURISDICTION (Dkt. #5) AND BERNARD BLACK'S MOTION TO CHANGE VENUE (Dkt. #7)**

---

**N. Reid Neureiter**
**United States Magistrate Judge**

This matter is before the Court on an Order to Show Cause why this matter, which purportedly was removed to federal court on November 30, 2022, should not be remanded to state court for lack of subject matter jurisdiction and because of certain procedural deficiencies. *See* Dkt. #5 (Order to Show Cause issued December 2, 2022). The Order to Show Cause also asked the removing party, Mr. Bernard S. Black ("Mr. Black" or "Bernard"), to show cause "why he should not be sanctioned or referred for discipline to the appropriate disciplinary authorities for what appears to be a frivolous and baseless attempt at removal for the purpose of interfering with an ongoing state probate proceeding." *Id*.

**BACKGROUND**

1. **Background of the removal efforts and Order to Show Cause.**

The notice of removal (Dkt. #1) that is the subject of the Order to Show Cause purports to remove (based on diversity jurisdiction) a *single motion* that was filed in an ongoing Denver Probate Court conservatorship matter (the "Probate Case"): *In re Joanne Black*, 2012PR001772. As is apparent from the probate matter case number, the probate matter, a conservatorship, has been pending in the Denver County Probate Court since 2012. The purportedly removed motion was filed in the Probate Court on November 4, 2022 and carries the caption:

> PROTECTED PERSON JOANNE BLACK'S MOTIONS TO VACATE THIS COURT'S ORDER AUTHORIZING THE DISCLAIMERS AND/OR TO VOID THE DISCLAIMERS, TO SUSPEND BERNARD BLACK AS A TRUSTEE OF THE ISSUE AND 2013 TRUSTS, TO SUSPEND SAMUEL BLACK AS A TRUSTEE OF ALL THREE TRUSTS, AND TO SURCHARGE SAMUEL BLACK FOR THE DAMAGES HE HAS COST THE PROTECTED PERSON AND HER CONSERVATORSHIP ESTATE.

Dkt. #1-1.

Mr. Black filed his response to the Order to Show Cause on December 19, 2022. *See* Dkt. #11. In the meantime, on December 7, 2022, Mr. Black filed a 43-page motion to transfer the removed motion to either the Northern District of Illinois or the Eastern District of New York. *See* Dkt. #7.

On January 3, 2023, Mr. Black filed a supplement to his response to the Order to Show Cause. *See* Dkt. #14. In his supplement, Mr. Black argues that because the protected party, his sister Joanne Black ("Joanne"), had not sought remand within 30 days, any non-jurisdictional or procedural basis for remand was waived. *Id.*

Because any remand would likely be considered a dispositive order and because the parties had not consented to magistrate judge jurisdiction, on January 4, 2023, the

Court asked the Clerk's Office to reassign the matter to a district judge. Dkt. #15. The case was reassigned to Judge Daniel D. Domenico. Dkt. #16. Judge Domenico then referred the issues raised by the Order to Show Cause to me for a recommendation. *See* Dkt. #18 (Referral order dated January 6, 2023). On January 31, 2023, Judge Domenico also referred the Motion to Change Venue to me for recommendation. Dkt. #22.

On January 20, 2023, Joanne responded to Mr. Black's filings. *See* Dkt. #19. She requested that the case be remanded and also opposed any transfer. *Id.* Mr. Black filed a reply in support of removal on February 2, 2023. Dkt. #24. On February 3, 2023, the Court heard oral argument by telephone on the Order to Show Cause and on Joanne's request for remand. The hearing lasted an hour and a half. *See* Dkt. #26 (Courtroom Minutes for Show Cause Hearing).

As explained in more detail below, the Court recommends that the matter be remanded to the Denver Probate Court and that Mr. Black be ordered to pay the attorney fees of the protected party, Joanne, for his bad faith attempt to remove an on-going state probate matter. The motion to transfer should be denied as moot.

The Court further orders that Mr. Black be referred to the disciplinary authorities of the State Bar of New York. His conduct, as described in the underlying state Probate Case, is shameful. That conduct, coupled with his ongoing attempts to interfere with efforts by Joanne's guardian to recoup money ($1.5 million+) that he stole from Joanne, are unbecoming of a lawyer admitted to practice law in any jurisdiction.

**2. Background on the underlying Colorado probate matter and the removing party, Mr. Black.**

The underlying Denver Probate Case has a long and tortured history. There are a number of reported decisions arising out of the Probate Case, from which much of the thumbnail description outlined below is taken.[1]

Joanne and Bernard Black are brother and sister. Joanne suffers from mental illness and cannot manage her own affairs. Mr. Black is a tenured faculty member at the Northwestern University School of Law. He has taught on the subject of the fiduciary duties of directors of corporations.[2] Joanne and Bernard Black's mother, Renata, died in New York in 2012. To account for Joanne's condition, the mother had created a Supplemental Needs Trust (the "SNT") for Joanne's benefit and, in her will, devised two-thirds of her estate to the SNT. The remaining one-third of the estate was devised to a

---

[1] Just some of these decisions include: *Black v. Black*, 422 P.3d 592 (Colo. App. 2018) (*"Black I"*); *Black v. Black*, 482 P.3d 460 (Colo. App. 2020) (*"Black III"*) (making a comparison between the Probate Case and Charles Dickens's *Jarndyce and Jarndyce*); *Litvak v. Black*, 147 N.E.3d 835 (Ill. App. 2019) (vacating on the basis of fraud and collusion an agreed judgment between Bernard Black, his son Samuel, and his wife, Katherine Litvak, where they conspired to obtain a judgment to "repay" the wife's purported loans, out of the stolen trust monies); *JPMorgan Chase Bank v. Black*, No. 18-cv-03447, 2021 WL 4459482 (N.D. Ill., Sept. 29, 2021) (interpleader action involving trust funds subject to completing claims, including claims being litigated in the Denver Probate Court); *Black as Trustee of Joanne Black 2013 Trust Agreement v. Goodwin*, No. 19 C 5305, 2020 WL 4053176, (N.D. Ill., July 20, 2020) (suit by Bernard Black against Joanne's conservator, purportedly for aiding and abetting in breach of fiduciary duty, which was dismissed for lack of federal jurisdiction based on the probate exception and the *Rooker-Feldman* doctrine).

[2] The fact that Mr. Black and his wife are lawyers and law professors makes the conduct in this affair that much more appalling.

trust for the benefit of Mr. Black and his children (the "Issue Trust" or "IT"). The mother died with about $3.5 million in her brokerage accounts.

Unbeknownst to Bernard Black, and inconsistent with the terms of the will, the mother had executed payable-on-death ("POD") beneficiary designations on her brokerage accounts directing that almost all funds in the accounts be passed directly to Joanne, bypassing the estate and hence, the trusts. Because of this designation, nearly one-third of the money in certain brokerage accounts which, under the will, should have gone through the estate to the IT (for the benefit of Bernard and his children), was designated directly for Joanne.

Bernard Black was executor of his mother's estate. Unhappy with his deceased mother's decision to leave significant assets to his sister via the POD designation, Mr. Black formulated a scheme to gain control of Joanne's finances as her court-appointed conservator. Mr. Black allowed the Denver Probate Court to believe he would deposit the POD assets directly into the SNT for Joanne's benefit. However, he instead caused the bulk of those funds to pass through his mother's estate, where one-third of those POD funds—over $1 million—was redirected to the trust established for the benefit of himself and his children: the IT. *Litvak*, 147 N.E.3d at 836–837.

Mr. Black himself initiated the conservatorship proceeding in the Denver Probate Court because, at the time, his sister was in Denver, homeless, and in a deteriorated state.

Mr. Black's scheme to redirect money from Joanne to the SNT and the IT was accomplished when Mr. Black, acting as Joanne's conservator (and purporting to act on Joanne's behalf), "disclaimed" the money in the POD accounts. The funds then reverted

to the estate, where a substantial portion would be distributed to the IT for the benefit of Mr. Black and his children. This way, Mr. Black could unilaterally correct what he perceived as his mother's "mistake" of leaving so much money to his mentally ill sister. *Black I,* 422 P.3d at 598. In addition to "disclaiming" the POD funds on behalf of his sister, Mr. Black moved a $300,000 Roth IRA that had been designated for Joanne directly into new accounts in the name of his children. *Id.*

Approximately two years after the diversion of funds from Joanne to the IT for Bernard and his children's benefit, Joanne's guardian ad litem learned of the deception and filed a motion in the Probate Case challenging Mr. Black's disclaimer transaction. The guardian ad litem sought to void the disclaimer and asserted claims of breach of fiduciary duty and civil theft against Mr. Black.

Following an evidentiary hearing that occurred over four days from June to September 2015, the Probate Court concluded that Mr. Black had breached his fiduciary duty to Joanne. And, because had failed to adequately disclose his intent to use the disclaimer to divest his sister of one-third of the POD assets, Mr. Black therefore did not have authorization to redirect the assets. The Probate Court found Mr. Black's actions in redirecting the funds were "deceptive and undertaken in bad faith" and that his conduct constituted civil theft. Accordingly, the Probate Court removed him as Joanne's conservator and ordered Mr. Black to reimburse Joanne $1.5 million (the value of the improperly diverted assets, including the Roth IRA). Further, under Colorado's civil theft statute, the Court trebled the damages awarded to $4.5 million total. *Id.* at 598–599. The Probate Court did not at that time void the disclaimer. *Id.* at 599.

6

Mr. Black appealed the adverse order but the Colorado Court of Appeals affirmed. *See generally id.* The case then was remanded to the trial court for the determination of reasonable attorneys' fees (to which Joanne was entitled upon the finding of civil theft). *Id.* at 612. The Colorado Supreme Court denied certiorari. *See Black v. Black*, No. 18SC419, 2019 WL 2178077 (Colo. May 20, 2019).

In its decision affirming the Probate Court order, the Court of Appeals confirmed that the Probate Court had (and has) authority, either by petition or on its own motion, to address alleged misconduct of a fiduciary. Accordingly, the Denver Probate Court had (and has) jurisdiction to adjudicate the allegations and issues raised by Joanne's motion to void the disclaimer. *Black I*, 422 P.3d at 599.

In a subsequent appellate decision addressing additional expense orders by the Probate Court, the Colorado Court of Appeals granted a limited remand for resolution of certain jurisdictional issues. *See Black v. Black*, No. 16CA0625, 2018 WL 549917, at *1 (Colo. App., Jan. 25, 2018) (unpublished) ("*Black II*").[3]

On remand, the Probate Court found that it had *in rem* jurisdiction over the conservatorship assets and also had personal jurisdiction over Mr. Black and his co-trustee son, Samuel. It also granted Joanne's motion to vacate the POD disclaimers. These orders, too, were appealed. *See Black III*, 482 P.3d at 460.

In *Black III*, the Colorado Court of Appeals affirmed in large part the Probate Court's orders on remand. In so doing, the Court of Appeals explicitly found that:

1. The Probate Court properly exercised subject matter jurisdiction over Joanne's conservatorship. *Id*. at 473;

---

[3] The version of the *Black II* opinion cited here does not contain the text of the opinion, but the Colorado Court of Appeals explained its ruling in a subsequent opinion. *See Black III*, 482 P.3d at 470.

2. The Probate Court was properly exercising its jurisdiction over the trusts through its continuing *in rem* jurisdiction over the assets transferred into the trusts from Joanne's conservatorship. *Id*. at 474–75;

3. The Probate Court had and has personal jurisdiction over Bernard and the transferred assets. Critically, the Court of Appeals found that the Probate Court could exercise jurisdiction over Bernard in *all* of his capacities, whether as an individual, as conservator, or as trustee of the trusts. This was because Bernard had submitted himself to the jurisdiction of the Probate Court in his capacity as a co-trustee of the trusts and repeatedly raised no objection to its exercise of jurisdiction over him. *Id*. at 475–76. He had also accepted appointment as Joanne's conservator, which meant that the Probate Court could exercise personal jurisdiction over him by operation of Colorado law. *Id*. at 477 (citing Colo. Rev. Stat. §15-14-111 ("[b]y accepting appointment, a guardian or conservator submits personally to the jurisdiction of the court in any proceeding relating to the guardianship or conservatorship")).

Specific to Mr. Black's present claim that he is seeking removal to this Court only in his capacity as "Issue Trust Trustee Black" (Dkt. #1 at 1) and the suggestion that the Probate Court never had jurisdiction over him in that capacity, the Colorado Court of Appeals found that the Probate Court has jurisdiction over the Issue Trust: "because Bernard funded the Issue Trust with conservatorship assets through his disclaimers of the POD designations, the probate court possessed the authority to determine that it had continuing jurisdiction over those funds." *Black III*, 482 P.3d at 473. The Court of Appeals also agreed with the Probate Court that, "[t]he funds transferred into the Issue Trust were never trust assets at inception as they were POD funds with Joanne Black as beneficiary. Bernard Black's use of the Court's Orders to further a scheme of self-dealing did not change the essential nature of the funds from POD assets, which are conservatorship estate assets, to trust assets beyond the reach of the Court." *Id*. at 474–475.

In confirming the Probate Court's personal jurisdiction over Bernard, the Court of Appeals noted that Colorado has an interest in ensuring that Bernard, who "purposefully

derived benefit by appearing in Colorado to divert assets from Joanne's conservatorship to the Trusts, does not escape having to account in Colorado for consequences that arose proximately from his activities." *Id*. at 479 (internal citations and quotations omitted). "Allowing Bernard to come to Colorado, invoke the jurisdiction of its courts, commit torts against Joanne's conservatorship, and then raise a personal jurisdiction shield would be antithetical to the purpose of the Colorado courts to serve justice." *Id*.

The Court of Appeals also expressed serious concerns about Mr. Black's conduct if he were to prevail on his jurisdictional arguments:

> Further, if Bernard prevails on his jurisdictional arguments, he may well succeed in misappropriating a portion of Joanne's conservatorship assets for his own personal use through the Issue Trust. The record and number of out-of-state lawsuits support our conclusion. First, Bernard placed Joanne's diverted conservatorship funds into twenty-five different accounts in the names of one or more of the Trusts, which the probate court concluded "could only be likened to a shell game."

*Id*. The Court of Appeals ultimately found that "[b]ecause the record supports the probate court's conclusions, we hold that the court properly exercised specific personal jurisdiction over Bernard *in his capacity as Joanne's conservator, as a trustee of the Trusts, and in his individual capacity*." *Id*. at 480 (emphasis added).

After the Court of Appeals' decision in *Black III*, Mr. Black again petitioned for certiorari to the Colorado Supreme Court, but the petition was denied. *In re Joanne Black*, No. 20SC554, 2021 WL 1030354, at *1 (Colo. March 15, 2021).

Thus, in *Black III*, the Court of Appeals affirmed most of the Probate Court decisions. However, because the Probate Court had made certain decisions relating to distribution of funds while *Black II* was pending review before the Colorado Supreme Court, the Court of Appeals found that those decisions were made without jurisdiction.

These included the Probate Court's decision to vacate the POD disclaimers. In addition, because the Probate Court's decision to remove Bernard's son Samuel as trustee of the SNT was made without appropriate due process, the Court of Appeals held that decision too should be vacated. 482 P.3d at 472, 480, 482–83. Those discrete issues then were remanded for new determinations, including "for a determination of whether the disclaimers were valid." *Id*. at 488.

Following the Colorado Court of Appeals' remand, on May 10, 2021, the Probate Court directed Joanne to file the motion that Mr. Black now seeks to remove to federal court. Specifically, the Probate Court ordered as follows:

> The Protected Person has identified several issues to be addressed by this Court at remand hearing, to-wit:
>
>> Voiding the disclaimers used by Bernard Black
>>
>> Return of conservatorship assets as previously ordered by this Court, which orders pre-dated Mr. Black's initiation of US District Court proceedings;
>>
>> Suspension and/or removal of Bernard Black and Samuel Black as Trustees from all trusts holding assets derived from the conservatorship estate;
>>
>> Personal liability and damages against Samuel Black.
>
> The Court directs the Protected Person to file such motions as needed to frame the issues she identifies . . ."

Order, *In re Joanne Black*, 2012PR001772 (Denver Prob. Ct, May 10, 2021). Consistent with the Probate Court's Order, on November 4, 2022, Joanne filed her motion (which Mr. Black presently seeks to remove to this Court) raising exactly the issues ordered by the Denver Probate Court—including the voiding of the disclaimers, the return of the stolen conservatorship assets, the suspension and removal of Mr. Black and his son as

trustees from all trusts holding assets derived from the conservatorship estate, and recoupment of damages from the son, Samuel Black. *See* Dkt. #1-1.

In sum, Mr. Black seeks to remove to federal court a motion seeking to remediate the harm he and his family have done to the conservatorship estate. The motion arises from the conservatorship proceeding that Mr. Black himself initiated ten years ago, and during which he was found to have committed theft of $1.5 million from his disabled sister. The issues raised in the disputed motion (such as voiding the disclaimers) have been percolating in the Denver Probate Court for literally years.

### 3.   Other lawsuits initiated by Mr. Black and his family.

Joanne's counsel explains that the delay in filing the disputed, purportedly removed, motion in Denver Probate Court was due in part to the distraction of having to defend some of the numerous legal actions that Mr. Black or his family have filed around the country. These include an Illinois state court matter filed by Mr. Black and his son, Samuel. That action sought a declaratory judgment that the disclaimers Mr. Black employed in his fraudulent scheme were valid under Illinois law. The Illinois Chancery court dismissed that lawsuit on comity grounds. *See Black v. Black*, No. 2021CH6049 (Chancery Ct., Cook Cnty, Ill. September 23, 2022).

On January 29, 2016, Bernard and Samuel Black filed a lawsuit against Joanne in the United States District Court for the Northern District of Illinois. *See* Compl., *Black v. Black*, No. 16-cv-1763 (N.D. Ill. Jan. 29, 2016), Dkt. #1. In that case, Bernard and Samuel alleged that they were under "judicial restraints" to distribute funds through the IT based on orders issued by New York and Colorado state courts, and requested that the court issue a declaratory judgment, binding against Joanne, that they are free from

judicial restraint to administer the IT. That case failed when the court granted Joanne's motion to dismiss with prejudice due to lack of personal jurisdiction. *See* Order, *Black v. Black*, No. 16-cv-01763 (N.D. Ill. July 13, 2016), Dkt. #27.

Mr. Black filed another case that has distracted from the work of Joanne's conservator's efforts to recoup Joanne's stolen money: *Black as Tr. of Joanne Black 2013 Tr. Agreement v. Goodwin*, No. 19 C 5305, 2020 WL 4053176, at *1–7 (N.D. Ill., July 20, 2020). In that matter, Mr. Black sued Joanne's current conservator, Jeanette Goodwin, in Illinois federal court alleging that Ms. Goodwin aided and abetted in breaches of fiduciary duty, civil conspiracy, and that Goodwin's actions have injured certain Black family trusts. The supposed damages all flowed from Ms. Goodwin's efforts in the Denver Probate Court. Judge Feinerman of the Northern District of Illinois dismissed that case for lack of subject matter jurisdiction based on the probate exception to federal jurisdiction, and the *Rooker-Feldman* principle that a federal court should not interfere with ongoing state court proceedings. *Id*. at *7. Notably, at a hearing before Judge Feinerman in that case, Mr. Black's lawyer admitted that Mr. Black had filed suit in Illinois because Mr. Black "did not think [he] would get anywhere with the Colorado court." The lawyer also conceded that Mr. Black was "forum shopping." *Id*. at *6.[4]

---

[4] During oral argument before this Court on February 3, 2023, this Court asked Mr. Black about this specific example of forum-shopping. Mr. Black acknowledged that the suit was filed in the Northern District of Illinois purely to put pressure on Joanne's conservator to reach some kind of settlement. Dkt. #29 (February 3, 2023, Show Cause Hearing Tr.) at 54:16–22 ("So that was a case that I would describe as 'We are just desperately looking for some way to bring these people into settlement, where they are refusing to talk to us.' And we thought there was an opportunity to put some pressure on Jeanette Goodwin by bringing a case against her in Illinois, seeking damages.")

Beyond direct lawsuits seeking damages, Mr. Black, his son Samuel, and his wife (Katherine Litvak), all have engaged in collusive lawsuits intended to obtain confessed judgments to encumber the assets of the SNT and IT. As described in *Litvak v. Black*, 147 N.E.3d 835 (Ill. App. 2019), the scheme involved Ms. Litvak bringing a collusive lawsuit against Samuel and Mr. Black in their capacities as co-trustees of the trusts (SNT and IT). Ms. Litvak claimed to be owed hundreds of thousands of dollars that supposedly had been lent to the trusts for payment of attorney fees. Of course, the trust assets consist exclusively of money that should belong to Joanne. One week after suit was filed, Ms. Litvak, Mr. Black, and Mr. Black's son Samuel, without answering the complaint, asked an Illinois circuit court to enter an agreed judgment against the trusts for the full amount of the claim. This was done without notifying Joanne's court-appointed conservator of the lawsuit. The Illinois Court of Appeals eventually vacated the confessed judgments in favor of Ms. Litvak as a product of collusion and fraud. But Joanne's conservator had to hire counsel and expend attorney fees to reverse this fraudulent and collusive conduct. *See generally id.*

A similar confessed judgment against the trusts and for the benefit of Olga Dal, (Ms. Litvak's cousin), was upheld by the Illinois Court of Appeals. Yet, in that case too, the defendants (Mr. Black and his son Samuel) never answered the complaint; an agreed judgment for the full amount claimed was quickly presented to the court; and Ms. Goodwin was not notified of the proceedings, despite the fact that Joanne was a named beneficiary of two of the affected trusts. Nevertheless, despite intervention by Ms. Goodwin, that collusive judgment was not vacated because the trial court found that Ms. Litvak's cousin, Olga Dal, was an innocent lender who did not realize she was being

used improperly to encumber trust assets that belonged to Joanne. *See Dal v. Black*, No. 1-19-1348, 2020 WL 7046887, at *7–8 (Ill. App. Nov. 30, 2020).

There is also currently an interpleader action pending in the Northern District of Illinois, where J.P. Morgan Chase Bank has asked for guidance as to what to do with the SNT and IT funds to which there are competing claims. *See JPMorgan Chase Bank*, 2021 WL 4459482, at *1. The interpleader action was instituted after counsel for Mr. Black and his son sent a letter to JPMorgan stating that they would hold JPMorgan responsible if it took any action toward the SNT's accounts, *including any action implementing orders from the Denver Probate Court. Id.* at *4. JPMorgan filed the interpleader to resolve the risk of competing liabilities and multiple litigation. *Id*.

In issuing her own order on whether she had jurisdiction to entertain the interpleader action, Judge Wood of the Northern District of Illinois cited the Colorado Court of Appeals' decision in *Black III* and reaffirmed that the Denver Probate Court has continuing *in rem* jurisdiction of the interpleaded assets, which are held in accounts belonging to the trusts. *Id*. at *6. Nevertheless, because an interpleader action is *in personam*, not *in rem*, in Judge Wood's view, it was not appropriate to dismiss the interpleader based on the prior exclusive jurisdiction of the Denver Probate Court. Nor was it appropriate to dismiss the interpleader action based on the probate exception to federal jurisdiction because Judge Wood did not intend to interfere with the probate proceedings, to assume general control of the probate, or to control property in the custody of the state court. *Id*. at *8. Nevertheless, Judge Wood did make clear that "the Interpleaded Assets were stolen from Joanne," and "are not the rightful property of the Trusts." *Id*. at *11.

Judge Wood also considered whether it would be appropriate to enjoin additional proceedings before the Denver Probate Court. The answer to that question was an emphatic "no," in part based on the extensive history of litigation in Colorado and the need to efficiently determine the proper disposition of the disputed assets. Instead, Judge Wood's order provided for the Denver Probate Court to continue with its determination of whether to undo the disclaimer and address related issues, while simultaneously ensuring that there should be no attempt to turn over or make any withdrawal of the disputed funds without prior approval of the Northern District of Illinois:

> If the Court stayed the DPC [Denver Probate Court] proceedings and took up the issue pending there—whether to undo the disclaimer of the POD assets—it would complicate and delay the matter of whether and how Joanne's assets will be returned to her. The DPC has had much to unravel. As noted in *Black III*, "Bernard placed Joanne's diverted conservatorship funds into twenty-five different accounts in the names of one or more of the Trusts, which . . . could only be likened to a shell game." 482 P.3d at 479. Bernard also previously transferred $258,000 from the SNT—for which Joanne is the sole beneficiary—to one of his personal accounts, violating a prior order of the SNT. *Id*. at 484. And after several years and multiple appeals, the DPC is poised to determine whether Bernard's disclaimer of the POD assets—the fraud that initiated countless legal actions across numerous forums—should be undone, and the assets returned to the conservatorship. The DPC is in the best position to trace the disputed assets. For one thing, it has already analyzed Bernard's disposition of the POD assets, supported by a forensic accounting. (Compl., Ex. 11, Attachment A: DPC March 2016 Order, Dkt. No. 1-11.) There is no equitable reason to repeat those proceedings here.

> Thus, the Court enters the following injunction. JPMorgan shall not allow any withdrawals of the Interpleaded Assets or execute any instructions with regard thereto without prior approval from this Court. Such approval shall be sought by written motion with due notice provided to all parties. The parties may continue to litigate the disposition of the POD assets in the DPC proceedings. Otherwise, no party may seek to effectuate any turnover or withdrawal of the Interpleaded Assets from the accounts held by Plaintiff, or seek to enforce any court order requiring such, without first filing a motion with this Court.

> This order balances several factors, including the risk of multiple liability faced by JPMorgan, the DPC's holding that the POD assets belong to the conservatorship and are not property of the Trusts, the need to efficiently determine the proper disposition of the Interpleaded Assets, and the goal of concentrating litigation instead of allowing for its continued dispersal across several forums.

*Id*. at *13.

In a later Order, issued September 27, 2022, Judge Wood expressly authorized Joanne to proceed with her efforts in the Denver Probate Court to hold Mr. Black and his son Samuel to account for the harm to the conservatorship. Order, *JPMorgan Chase Bank v. Black*, No. 18-cv-03447 (N.D. Ill. September 27, 2022), Dkt. #251. The September 27 Order was issued at Joanne's request granting express advance approval of Joanne's actions in the Probate Court. Joanne had sought to ensure that by filing a motion or seeking a hearing in the Probate Court, she would not run afoul of Judge's Wood's orders. Judge Wood made clear that Joanne was authorized to take appropriate steps in the Probate Court:

> Joanne's motion seeks approval from this Court to schedule a hearing with the DPC. Joanne claims that, on April 17, 2021, the DPC ordered the parties in that proceeding to schedule a hearing to address the following issues: (1) voiding Bernard's disclaimers of payable-on-death ("POD") assets; (2) returning conservatorship assets; (3) suspending or removing Bernard and Samuel as trustees from all trusts with assets from the conservatorship; and (4) personal liability and damages as to Samuel. Those four issues were remanded to the DPC by the Colorado Court of Appeals.

> Joanne requests confirmation that scheduling the DPC hearing will not conflict with this Court's June 2019 Order, which barred "any party from seeking to enforce any court order requiring, or otherwise seek to effectuate, any turnover or withdrawal of the interpleader assets." (6/12/19 Minute Entry, Dkt. No. 69.) Joanne claims that the DPC hearing will not affect the interpleader assets, and further attests that she will ask the DPC to stay any order that implicates the assets until this Court approves its enforcement.

In response to the motion, and to avoid any confusion on the matter, the Court clarifies that Joanne and the parties need not inquire with this Court as to whether they may move forward with the DPC litigation. While the Court stated in its June 2019 Order—and still maintains—that the parties cannot effectuate any turnover or withdrawal of the assets, the Court further explained in its September 2019 memorandum opinion that "[t]he parties may continue to litigate the disposition of the POD assets in the DPC proceedings." (Mem. Op. and Order at 25–27.) This Court will not police the DPC's jurisdiction, which lies within the DPC's purview. The hearing before the DPC about which Joanne inquires concerns suspending Samuel as a trustee of the Supplemental Needs Trust and voiding Bernard's disclaimers, and the DPC can issue a decision regarding those matters without going so far as touching the interpleader assets. Further, Joanne has confirmed in her briefing and during a telephonic hearing that she will request a stay of any DPC order that seeks to effectuate a turnover or withdrawal. As a result, this Court grants Joanne's motion, with the clarification that the parties need not seek this Court's approval to continue litigating before the DPC.

*Id.* at 2.

In the face of the Judge Wood's explicit refusal to enjoin the Denver Probate Court matter, in part so as to "concentrate the litigation" in Colorado and prevent its "dispersal across several forums," and with Joanne having received express approval from Judge Wood to proceed in the Denver Probate Court, Mr. Black now has sought to remove the very motion that addresses the issue of undoing the disclaimer (which is at the core of the *in rem* proceedings before the Denver Probate Court). He also asks to transfer that removed motion to the Northern District of Illinois. He does this knowing Judge Wood has already decided that the Denver Probate Court is the appropriate court for final determination the validity of the disclaimers and of how to dispose of the POD assets held in the SNT and IT accounts. Mr. Black made no mention of Judge Wood's refusal to enjoin the Probate Court matter or her September 27, 2022 clarifying order in his 43-page motion to transfer.

Pending in the Eastern District of New York is yet another lawsuit arising out of the Black family saga. *See Black v. Dain*, 16-cv-1238 (CBA) (ST), 2017 WL 11696660, (E.D.N.Y., August 16, 2017). That case was brought by Sarah, Daniel and Jacob Black, Mr. Black's children (and grandchildren of the deceased Renata). The plaintiffs were beneficiaries of the IT. In the New York matter, the grandchildren sued Bernard and Joanne's first cousins, Anthony Dain and Cherie Wrigley (and others) alleging that Dain and Wrigley (primarily through their efforts in the Denver Probate Court) and Dain as co-trustee of the SNT and IT, had breached duties owed to the trusts by, among other things, seeking to reverse the disclaimer, and withdrawing funds to retain counsel to represent Joanne. In addition to *in personam* damages claims against the named defendants, the New York plaintiffs brought a number of claims for injunctive and declaratory relief, including: seeking removal of Dain as a trustee of the SNT; a declaratory judgment that the Denver Probate Court had no jurisdiction over the Estate of Renata Black, the IT, or the SNT; a declaratory judgment that the Denver Probate Court's orders permitting actions with respect to the Estate, the IT or the SNT have no legal effect; and a preliminary injunction allowing the SNT and IT to compensate their trustees for reasonably incurred legal and accounting expenses associated with the legal battles. *Id.* at *8. Judge Amon of Eastern District of New York allowed the *in personam* money damages claims to go forward, but dismissed based on the probate exception to federal jurisdiction all the claims seeking to limit the authority of the Denver Probate Court to make rulings relating to the Estate or the various trusts. As Judge Amon stated, "[h]ere, plaintiffs are trying to remove into the federal court a *res* over which a state court is exercising control, which is what the 'probate/domestic-relations

exception is intended to prevent.'" *Id*. at *9 (citing *Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007)).

Because of the ongoing disputes, including those arising from satellite litigation filed by Mr. Black and his family and the threatening letters from Mr. Black and Samuel's counsel to JPMorgan, there has been no distribution of any of the money in the SNT or IT accounts. Joanne has not benefitted at all from the money in the SNT account, though it has been recognized by multiple courts that the money in the IT account was stolen from Joanne.

In addition, to date, Mr. Black has not returned any of the $1.5 million that he stole from Joanne. Nor has he paid any of the $3 million in additional damages that the Probate Court awarded to Joanne.

### 4.  **Mr. Black's admitted attempts at forum shopping.**

As noted above, Mr. Black's counsel in the dismissed Illinois federal case brought against Joanne's conservator admitted he was "forum shopping" by filing a lawsuit in that venue attacking Joanne's conservator. 2020 WL 4053176, at *6.

When asked at the February 3, 2023 oral argument on the Order to Show Cause whether the instant removal effort was just another attempt at forum shopping, Mr. Black was candid in his response. Although he initiated the conservatorship proceeding in the Denver Probate Court, he does not like how the case has progressed there and wants out of Colorado state court:

> Mr. Black: Ok. So, are we trying to move whatever we can out the Denver Probate Court to somewhere else? Yes. There is no doubt in my mind that I cannot get a fair hearing before the Denver Probate Court. And I could give you chapter and verse, but it would take a long time. So, are we trying to move the case to a forum that we think would be neutral? Yeah. But that is what removal jurisdiction is about. It's the opportunity for a defendant to

say, I want a decision by a federal court, not by a state court. It is the same logic that underlies diversity jurisdiction, and the removal statute gives that right to a removing defendant to seek a federal forum that we believe will be more neutral.

The Court: But you, correct me if I am wrong, you started the Denver Probate Court conservatorship proceeding yourself, on behalf of Joanne.

Mr. Black: As conservator, yes. And, at that time, I had, first of all, no option. But that was as conservator, and I think that, over time, the Denver Probate Court has been persuaded . . . to be hostile to me, to be hostile to my wife, to be hostile to my son, uh, and I want to find another court that won't behave that way. And so I will happily say that. We want this case to be in federal court and not before the Denver Probate Court because we don't think we can get a fair hearing before the Denver Probate Court.

Dkt. #29 (February 3, 2023 Hearing Tr.) at 45:19–46:20. Thus, ten years into a conservatorship proceeding that he himself began, Mr. Black is now trying to remove the case (or parts of the case) to federal court because he does not like the decisions from Colorado's state courts that seek to hold him accountable.

Of course, the forum-shopping goes well beyond this removal attempt. For example, in the interpleader action pending in the Northern District of Illinois, on October 4, 2022, Mr. Black tried to preemptively invalidate any potential orders from the Denver Probate Court by filing amended counterclaims seeking a declaratory judgment against Joanne's current conservator and others. The declaration Mr. Black seeks there is a patent effort to relitigate many of the matters that have already been decided or are being decided by the Denver Probate Court.[5] The Judge Wood has not yet ruled on the propriety of these counterclaims.

---

[5] For example, Mr. Black asks the interpleader court to declare, among other things: that Joanne does not have any interest in the IT; that the SNT accounts are not assets of Joanne's conservatorship; that any order by the Denver Probate Court with respect to SNT assets would be void and unenforceable due to lack of jurisdiction over Samuel as SNT trustee; that Bernard, as executor of the estate is entitled to recover

## ANALYSIS

1. **Mr. Black's removal attempt is procedurally flawed.**

The many flaws with Mr. Black's attempt to remove a single motion in a ten-year-old probate case are apparent from the face of the removal document.

"It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1095 (10th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941); *United States ex rel. King v. Hillcrest Health Ctr.*, 264 F.3d 1271, 1280 (10th Cir. 2001)). "All doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

Section 1446 of Title 28 of the United States Code governs the procedure for removal. Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed. A removal which does not comply with the express statutory requirements is defective and must be remanded to state court. *See Huffman v. Saul Holdings LP*, 194 F.3d 1072, 1077 (10th Cir. 1999). With respect to subject matter jurisdiction, "[t]he burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). A defect in

---

attorneys fees and accounting expenses he has incurred to defend the estate assets; that the disclaimers that resulted in Joanne's POD assets being included in the SNT and IT "are valid and irrevocable;" that any orders of the Denver Probate Court against Bernard in his capacity as trustee of the IT are "void and unenforceable on the grounds that the Denver Probate Court does not have personal jurisdiction over him as trustee of the IT;" and that the Denver Probate Court lacks jurisdiction to enjoin Bernard or Samuel from acting as a trustee or co-trustee of the SNT or IT. *See* Bernard S. Black and Samuel Black's Am. Compl. at 13-16, *JPMorgan Chase Bank v. Black*, Case No. 18-cv-03447 (N.D.Ill., Oct. 4, 2022), Dkt. #253.

subject matter jurisdiction can never be waived and may be raised at any time. A procedural defect, however, does not involve the subject matter jurisdiction of the court and may be waived. *Huffman*, 194 F.3d at 1076–77.

First, a party may not remove a single *motion* from an on-going state court case to federal court. The federal removal statute, 28 U.S.C. §1446, speaks of removal of "any civil action" or "proceeding," not a single motion. *See* 28 U.S.C. §1446(a) & (b). Either the entire proceeding is removed, or it is not. This principle follows from the explicit language of the removal statute.

The federal removal statute, 28 U.S.C. § 1446(b)(1), anticipates removal after receipt of an initial pleading in a "civil action." "Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP America Production Co. v. Burton*, 549 U.S. 84, 91 (2006). A "civil action" is simply "a civil . . . judicial proceeding." *Action*, Black's Law Dictionary (11th ed. 2019); *see Burton*, 549 U.S. at 91 & n.3 (relying on Black's Law Dictionary for the ordinary meaning of "action"). A "proceeding" is "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." Black's Law Dictionary, *supra*, *Proceeding.* A "complaint" is "[t]he initial pleading that starts a civil action. . ." *Id.*, *Complaint*; *see also Burton*, 549 U.S. at 91 (quoting Black's Law Dictionary for this definition). Thus, the ordinary meaning of "civil action" is "a single proceeding begun with a complaint and continuing all the way through entry of judgment." *Tucker v Equifirst Corp.*, 57 F. Supp. 3d 1347, 1354 (S.D. Ala. 2014). Thus, in the context of the Probate Case, the "action" is the *entire* probate conservatorship proceeding, not a discrete motion.

Here, Mr. Black attempts to remove only a portion of the probate proceeding from state to federal court. *See* Dkt. #1 at 1 ("Bernard Black, acting pro se, in his capacity as trustee . . ., hereby moves to remove to federal court the *attached motion* . . . ."). (emphasis added). This is simply not contemplated by the removal statute. "The defendant cannot carve out of the state court litigation a claim [or claims] which fits the definition of diversity found in the jurisdictional statutes and remove only that claim, because the term civil action will not permit removal of a single claim without the rest of the action." *Stark-Romero v. National R.R. Passenger Co.*, 763 F. Supp. 2d 1231, 1273 (D.N.M. 2011). Or, as put by the Western District of Louisiana when it rejected an attempt to remove from a lawsuit a single third-party claim asserted by one defendant against its insurer:

> In light of the use of the term "civil action" in the removal statute, and of this Court's understanding of the term "action" as comprising the entirety of a case, and of the longstanding prohibition against removing only handpicked claims from state court to federal, and as the removing defendant has made no attempt to reconcile its theory of partial removal with the well-settled judicial tenets with which it is in conflict, this Court finds that the defendant's attempt at a partial removal is contrary to both the law and the theory of removal.

*Levert-St. John, Inc. v. Hartford Steam Boiler Inspection & Ins. Co.*, No. CIVA 06-1023, 2006 WL 1875494, at *2 (W.D. La. July 3, 2006).

This is consistent with the authoritative treatise on federal courts, Wright & Miller's *Federal Practice and Procedure*, which makes clear that there is a prohibition, in place for over a century, against removing only a portion of an action:

> There is also a sensible judge-made limitation--stemming from the civil-action requirement--that proceedings that are ancillary to an action pending in state court cannot be removed separately from the main claim. This restriction is premised on the wastefulness of having a satellite element of

a case pending in federal court when principal claims are being litigated in state court.

14C Wright & Miller, *Federal Practice and Procedure* § 3721.1 (4th ed. 2018).

Mr. Black's initial explanation for his attempt to remove only a single motion (as opposed to the entire probate proceeding), was that, in his view, the Probate Court motion is itself procedurally improper and constitutes a *new* lawsuit or complaint. *See* Dkt. #11 at 3 ("To avoid removal to this Court, and subsequent transfer back to the NDIL, Plaintiff's attorneys styled their pleading as a "motion" (the "DPC 'Motion'"), rather than a complaint. They did so in bad faith. Their filing is a completely new action, indeed eight new actions, which require a complaint."). But even if it were true that the "motion" were a new complaint under Colorado law, then Mr. Black should have sought relief from the Probate Court from the purported procedural impropriety of filing a mere motion in a pending conservatorship proceeding, rather than a complaint. On its face, however, the document was a motion filed in a long-pending state court proceeding.

Moreover, contrary to Mr. Black's assertions, Joanne's motion was not a "new claim" but a filing intended to address issues that had been in the conservatorship proceeding for years, such as the validity of the disclaimers. Indeed, as described above, the motion was filed at the explicit direction of the Denver Probate Court (after a remand from the Court of Appeals) to address prior remanded orders and to facilitate the recoupment of funds that Mr. Black as conservator had unlawfully redirected (and which were received by Mr. Black and his son as trustees of the SNT and IT). Mr. Black cites no authority that would justify removing a single motion which raises issues over which the Probate Court indisputably has jurisdiction, and all of which are supplemental

to the Probate Court's efforts to retrieve funds that rightfully belong to the conservatorship for the benefit of Joanne.

Indeed, a somewhat similar case out of Illinois comes down firmly against removing only an ancillary part of a probate case. In *Fischer v. Hartford Life Ins. Co.*, 486 F. Supp. 2d 735 (N.D. Ill. 2007), a petition was filed with an Illinois probate court seeking a citation to recover assets from an insurance company. The petitioner had alleged that insurance proceeds from a life insurance policy should have been estate property subject to administration by the Illinois probate court. The insurance company filed a notice of removal of the petition to the Northern District of Illinois. The matter was remanded. Holding that "only independent suits are removeable," the Illinois federal court found the effort to parse only one aspect of the probate matter for removal to be improper. 486 F. Supp. 2d at 740. In addition, because the petition for a citation was an effort to recover assets of the probate estate, it was a supplementary proceeding— substantially a continuation of the estate administration which could not be separately removed to federal court. *Id*.

In Mr. Black's Reply, he seems to concede that removing a single motion in an on-going proceeding is not appropriate. Dkt. #24 at 2 ("Removal applies to an entire case, not only to specific parties or claims."). Thus, Mr. Black appears to argue that he in fact did remove the entire probate proceeding, but the Court should remand only those portions of the proceeding over which it lacks jurisdiction. *See id*. at 2–3 ("If some claims within an overall case are not within federal jurisdiction, only those portions may be remanded. Conversely all claims within an overall case that are within federal jurisdiction must remain removed, even if other portions are remanded."). And yet, at

25

oral argument, Mr. Black flip-flopped again, acknowledging that he was not intending to remove the entire conservatorship, but merely the purported "new claims." When asked directly "What has been removed?" Mr. Black responded cryptically:

> It would never have occurred to me that I was removing the underlying conservatorship. What I was trying to do was remove the new claims that were brought in October of last year. The underlying conservatorship exists. It is ongoing. There is a conservator. The conservator does what she does. I'm not trying to remove those claims. I trying to remove the claims that should have been brought as brand new complaints, but were not. And then along with those, because they are all tied up in a single motion, I think that the issue of 'Can the disclaimer be reversed?' comes along with those. But I do not believe that this has any impact on the underlying conservatorship.

Dkt. #29 (February 23, 2023 Show Cause Hearing Tr.) at 6:13–7:1. This is simply not how removal is contemplated by the removal statute.

It is true that the filing of a *motion* alone may make removable an otherwise non-removable *case*. *See* 28 U.S.C. § 1446 ("a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, *motion*, order or other paper from which it may first be ascertained that *the case* is one which is or has become removable") (emphasis added). But that statute makes explicit that it is the entire case, not the discrete motion, which is properly removed to federal court. Either the federal court gets the entire case, or nothing. Accepting Mr. Black at his word that he was not seeking to remove and does not seek to remove the entire conservatorship, and because the removal statute does not contemplate removal of a single motion, the removal effort must fail and whatever Mr. Black thinks he removed to federal court should be remanded.

Mr. Black himself seems to acknowledge that certain portions of the disputed motion should not be removed, because they address issues that have already been

before the Denver Probate Court and are core issues to the conservatorship. For example, Mr. Black conceded at oral argument that the request to void the disclaimers was properly before the Denver Probate Court and that request, by itself, would not be removable:

> If the only motion before the Denver Probate Court had been, "Judge, please reconsider the disclaimer. . . . we want to come back to this issue," there would be no basis for removing that claim by itself. The basis for removal is that new claims were brought against new defendants. Okay. And so, in my mind, the issue of the disclaimer gets caught up in that, even though if that had been the only claim that had been brought, it would not have been removable.

Dkt. #29 (February 3, 2023 Show Cause Hearing Tr.) at 5:13–24. But Mr. Black gets it exactly wrong. Ongoing conservatorship matters do not get "caught up" in supplemental claims that Mr. Black thinks might be removable to federal court. Those new "claims" seek to recover assets that belong to the conservatorship or to recover damages for unlawful actions taken against the conservatorship. They are therefore supplemental to the ongoing probate matter and, for that reason, cannot be removed separately. *Fischer*, 486 F. Supp. 2d at 740.

Mr. Black's removal attempt is incorrect for another reason. His basis for removal is diversity jurisdiction. Dkt. #1 at 1. The federal removal statute is clear that a case may not be removed on the basis of jurisdiction conferred by Section 1332 (diversity of citizenship) more than one year after commencement of the action. 28 U.S.C. § 1446 (c)(1). This is so even if the case only becomes *removable* more than a year after initiation (absent bad faith). Here, the Probate Case has been pending for ten years. It is therefore not removable on diversity jurisdiction grounds per 28 U.S.C. § 1446 (c)(1). *See*, *e.g., Hajdasz v. Magic Burgers, LLC*, 805 Fed. Appx. 884 (11th Cir. 2020)

(affirming imposition of Rule 11 sanctions where defendant attempted to remove case on diversity grounds two years after initial filing, and well after the one-year removal time limit). The fact that the issue of the validity of the disclaimer has been percolating in the Denver Probate Court literally for years makes it apparent that this is no "new" claim. Similarly, the issues of recouping the money from the IT and removing the Blacks as trustees of trusts which hold Joanne's assets have been before the Denver Probate Court for years as well.

2. **Joanne did not waive procedural objections to the removal.**

Mr. Black claims that even if there are procedural deficiencies in his removal attempt, Joanne waived those procedural deficiencies by not moving for remand within the 30 days contemplated by 28 U.S.C. § 1447(c). *See* Dkt. #14 (Supplemental Response). Under that statutory provision relating to procedure after removal, "a motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." § 1447(c). A plaintiff is deemed to have waived procedural defects in a removal notice where she does not seek remand within 30 days, as required under § 1447(c). And there is authority for the proposition that a district court lacks even the authority to remand *sua sponte* for procedural defects after the 30-day limit for filing remand motions has passed. *See, e.g.*, *F.D.I.C. v. Loyd*, 955 F.2d 316 (5th Cir. 1992) (reversing *sua sponte* District Court remand on procedural grounds some twenty months after the thirty-day remand period had expired); *Hamilton v. Aetna Life and Cas*

28

*Co.*, 5 F.3d 642, 644 (2d Cir. 1993) (holding that "an order remanding on procedural grounds either upon an untimely motion or *sua sponte* more than 30 days after removal. . . is not authorized by § 1447(c) [and] is reviewable").

But in this case, within the 30 days mandated by section 1447(c), this Court issued its show cause order identifying potential procedural and jurisdictional problems with Mr. Black's removal attempt. The notice of removal was filed November 30, 2022. Dkt. #1. The Order to Show Cause issued two days later, on December 2, 2022. Dkt. #5. Mr. Black was ordered to respond by December 9, 2022. *See id.* He then asked for an extension (*see* Dkt. #8) and filed his response (Dkt. #11) on December 19, 2022. Joanne filed her own response (Dkt. #18) to Mr. Black's response to the Order to Show Cause on January 20, 2022.

Thus, within the requisite 30 days, procedural and jurisdictional improprieties of the removal were teed-up for briefing by the Court's Order to Show Cause. Joanne can hardly be deemed to have waived those procedural deficiencies. Questions about the procedural propriety of the removal were before the Court via the show cause order within the 30 days mandated by § 1447(c), the Court believes it proper to consider procedural defects of the removal effort. *See, e.g.*, *Tengler v. Spare*, No. C-95-3421 SI, 1995 WL 705142, at *5 n.3 (N.D. Cal. Nov. 15, 1995) (concluding that where an Order to Show Cause addressing procedural problems with removal is issued within the 30 day period, the Order to Show Cause should be treated as motion for purposes of § 1447(c)); *In re Gold Messenger, Inc.*, 221 B.R. 259 (D. Colo. 1998) (rejecting the notion that a Court cannot act *sua sponte* within the 30-day period based on procedural defects in the removal notice, but recognizing that a *sua sponte* remand for procedural

defects after 30 days is not appropriate); *Corry v. City of Houston*, 832 F. Supp. 1095, 1096–97 (S.D. Tex. 1993) (explaining that "Congress' purpose in amending § 1447(c) was not to altogether limit district courts' *sua sponte* remands but only to require that remands based on procedural defects be addressed within thirty days of removal").

3. **The Court lacks subject matter jurisdiction.**

 Putting aside the procedural improprieties of Mr. Black's removal effort, the most basic, and ultimately fatal, problem with Mr. Black's removal attempt is that this Court lacks jurisdiction over probate matters such as the underlying conservatorship proceeding. This is the so-called "probate exception" to federal jurisdiction. *See generally Marshall v. Marshall*, 547 U.S. 293, 308 (2006). "[T]he the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id*. at 311–12. A case which seeks to reach a *res* in the custody of a state probate court is likewise not cognizable in federal court. *Id*. at 312.

Specifically, federal courts are without jurisdiction to hear *in rem* or *quasi in rem* matters in which a state court has exercised jurisdiction, such as conservatorship proceedings. *Cassity v. Pitts*, 995 F.2d 1009, 1012 (10th Cir. 1993) (holding that federal court lacked jurisdiction to hear RICO suit alleging malfeasance brought against trustees of testamentary trust, because beneficiaries' action was *in rem* or *quasi in rem* and county court had already exercised jurisdiction over the disputed trust); *Beren v. Ropfogel*, 24 F.3d 1226, 1228 (10th Cir. 1994) (dismissing for lack of jurisdiction and holding that while federal courts may entertain certain actions collateral to a probate

proceeding, federal courts may not interfere with probate proceedings or assume general jurisdiction of the probate estate or control of property in state court's custody); *see also Black v. Dain*, 2017 WL 11696660, at *9 ("[A] probate court administering the estate of a conservatee or a guardian is within the boundaries of the probate exception") (citing *Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007)). Put simply, federal courts are prohibited from endeavoring to dispose of property that is in the custody of a state probate court. *Id.* If the claim or claims a defendant seeks to remove concern the *res* under the jurisdiction of a state court, the federal court must remand for lack of federal jurisdiction. *Marshall,* 547 U.S. at 311–12.

The prohibition against "endeavoring to dispose of property that is in the custody of a state probate court" is, the Supreme Court has explained, "essentially a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Id.* at 311 (internal citations omitted). "This general principle applies equally when, as in this case, the *res* in question is not property of an estate but property of a trust." *Mercer v. Bank of N.Y. Mellon, N.A.*, 609 F. App'x 677, 678–79 (2d Cir. 2015); *see also Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939); *Beach v. Rome Trust Co.*, 269 F.2d 367, 371 (2d Cir. 1959). Moreover, it applies to jurisdiction that is quasi *in rem*: it "is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." *Princess Lida*, 305 U.S. at 466–67.

When analyzing the applicability of the probate exception, the Court "must examine the substance of the relief that Plaintiffs are seeking, and not the labels that they have used." *Mercer*, 609 F. App'x at 679–80. The Colorado Court of Appeals made clear in *Black III* that Joanne's conservatorship is an *in rem* proceeding. *Black III*, at 467. And the Colorado Court of Appeals affirmed both the Probate Court's continuing *in rem* jurisdiction over the conservatorship trust assets and its personal jurisdiction over the actions of IT trustee Bernard. *Id.* ("[W]e hold that the probate court retains in rem jurisdiction over the assets transferred to the foreign trust"), *see also id.* at 474. Here, the disputed, purportedly removed, motion deals directly with matters over which the Denver Probate Court has properly asserted jurisdiction—the conservatorship, the disclaimers which allowed conservatorship assets to be transferred to the trusts, the trusts into which the conservatorship assets were unlawfully transferred, and the trustees who conspire to keep the stolen assets from being returned to the conservatorship. Whether the Probate Court has jurisdiction over Samuel (in addition to Bernard), for the damage caused to the conservatorship has not yet been definitively decided by the Probate Court or the Colorado Court of Appeals, but the issue is clearly closely related and supplemental to the issues indisputably before the Probate Court.

Both the Northern District of Illinois and the Eastern District of New York, the two courts to whom Mr. Bernard would have this Court transfer the disputed motion, have recognized that the Denver Probate Court has subject matter jurisdiction over the conservatorship and issues that concern the conservatorship *res*, and that the Denver Probate Court is the appropriate place for these decisions to be made. Judge Wood of the Northern District of Illinois has already abstained from deciding, and elected not to

enjoin the Denver Probate Court from addressing, precisely the issues raised in the disputed motion. *See JPMorgan Chase Bank*, 2021 WL 4459482, at *12–13. The Eastern District of New York, for its part, has already explicitly said that there are certain things it cannot do precisely because of the probate exception to federal jurisdiction. These include interfering with the Denver Probate Court's ongoing administration of the conservatorship estate, making decisions regarding access to funds in the estate and payment of fees and expenses, or issuing orders concerning the jurisdiction of state probate courts over the estates. *See Black v. Dain*, 2017 WL 11696660, at *8–9.

There is one aspect of Joanne's disputed motion that arguably does not fall under the probate exception to federal jurisdiction. That is the part of the motion that seeks damages from Samuel for his frivolous and groundless legal shenanigans against Joanne, Conservator Goodwin, and Trustee Dain, including his fraudulent and collusive efforts to encumber the trusts—all in direct breach of his fiduciary duties. The motion asks that the Denver Probate Court hold a hearing and require Samuel to "show cause why he should not be surcharged the damages, i.e., attorney's fees and costs, he has cost the Protected Person and the Conservatorship." Dkt. #1-1 at 22, ¶¶ 7–8. This could be characterized as an independent, *in personam*, claim against Samuel for breach of fiduciary duty causing damage to the conservatorship estate which, under the logic of *Marshall*, would not necessarily implicate the probate exception. The federal court arguably could retain jurisdiction over such a claim if it were filed independently. But, for the reasons set forth below, the Court will not recommend retaining jurisdiction over just one part of the disputed motion.

First, the actions of Samuel are intimately related to the ongoing conservatorship. Samuel's actions as trustee of the trusts that contain conservatorship assets arguably damaged the conservatorship. Removing just a discrete claim against Samuel from an ongoing conservatorship proceeding runs counter to the principle that parties may not parse out certain claims for removal while leaving other parts of a case behind. Claims against Samuel are supplemental to the ongoing conservatorship proceeding.

Second, Samuel has not appeared. No one acting on Samuel's behalf has removed anything to federal court. Bernard purports to be appearing *pro se* in his capacity as trustee of the IT. He is not authorized to act as an attorney on behalf of Samuel. Thus, there is no basis to treat the purported claim against Samuel as having been properly removed.

Third, much of Bernard's argument about why many of the "claims" asserted in the removed motion should not be remanded are based on the Denver Probate Court's supposed lack of jurisdiction over Samuel, either personally or in his capacity as trustee. But Mr. Black and Samuel are free to raise any personal jurisdictional concerns in the Denver Probate Court in the first instance, or in the Colorado Court of Appeals on appeal. Alleged lack of personal jurisdiction in a state court is not a valid objection to the remand of claims.

Therefore, for all the reasons stated above, including especially the lack of federal jurisdiction, this case (or "motion," or whatever Mr. Black thinks he removed) should be remanded to the Denver Probate Court.

### 4. **Bernard Black should pay Joanne's attorney fees for his bad faith attempt to remove a single motion filed in Denver Probate Court.**

The Court concludes that Mr. Black's attempt to remove a single motion in a 10-year old probate matter was done in bad faith, for the purpose of forum shopping, to delay the Denver Probate Court's effort to reacquire funds that belong to Joanne, and to interfere with the administration of justice. Mr. Black has been told by numerous courts that the Probate Court has jurisdiction over funds that were unlawfully transferred to other trusts, and also has jurisdiction over Mr. Black in every possible capacity: conservator, individual, and trustee. Mr. Black's attempt to justify why the probate exception does not apply in this situation ignores the decisions of at least two other federal courts that recognized that the most expeditious way to get a final resolution of this case is to have the Denver Probate Court engage in the determinations that Joanne's motion expressly requests. *See JPMorgan Chase Bank*, 2021 WL 4459482, at *13 ("[T]he DPC is poised to determine whether Bernard's disclaimer of the POD assets—the fraud that initiated countless legal actions across numerous forums—should be undone, and the assets returned to the conservatorship.").

Mr. Black's arguments are all-the-more egregious because he is both a lawyer and a law professor. There is no justification for the kinds of procedural and rhetorical games Mr. Black is playing. He should, and in the Court's view, does, know better. He is using his myriad legal skills to file cases across the country, engage in procedural gymnastics to avoid legitimate court judgments, impose undue and unnecessary legal costs on Joanne's conservator, and inappropriately pressure for settlement. He has imposed significant burdens on multiple courts for no legitimate or justified reason. The

victims of this chicanery are his disabled sister and the state and federal court systems that he is abusing. As a lawyer and law professor, he needs to accept the fact that that he has been adjudged by a court of competent jurisdiction to have stolen his disabled sister's assets. That decision was affirmed on appeal and certiorari was denied. Under our system of laws, there must come a point where the machinations stop.

5. **An award of attorney fees on remand is authorized under 28 U.S.C. §1447(c).**

Federal law specifically allows for an award of attorney fees against the removing party on issuance of a remand order. *See* 28 U.S.C. §1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). There is no automatic presumption that fees will be awarded on remand. Nor is there a presumption against an award of fees. *See Martin v. Franklin Capital Corp*., 546 U.S. 132, 136–139 (2005) ("[W]e see nothing to persuade us that fees under § 1447(c) should either usually be granted or usually be denied."). That said, "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Id*. at 140. "Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Id*. Therefore, per the Supreme Court, "[t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Id*. In light of this objective, a trial court may award attorney's fees under §1447(c), "only where the removing party lacked an objectively reasonable basis for

seeking removal." *Id*. at 141. As set forth extensively above, Mr. Black had no objectively reasonable basis for seeking removal.

6. **The Court has inherent authority to sanction an attorney of party.**

Federal courts have certain "inherent powers" which are not conferred by rule or statute "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962). Among these powers is a court's "ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *see also Rice v. NBCUniversal Media, LLC*, 2019 WL 3000808, at *3–4 (S.D.N.Y. July 10, 2019) (imposing sanctions pursuant to court's inherent powers).

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. But it is undisputed that "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id*. at 45–46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)). One permissible sanction is an assessment of attorney fees, requiring the party that has engaged in misconduct to reimburse the legal fees and costs of the other party. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). Such a sanction must be compensatory rather than punitive in nature, and any attorney fee award is limited to the fees "the innocent party incurred solely because of the misconduct—or, put another way, to the fees that party would not have occurred but for the bad faith." *Id*. at 104.

Sanctions under the Court's inherent authority appear to require a finding of bad faith on the part of the attorney to be sanctioned. *See Farmer v. Banco Popular of North*

*America*, 791 F.3d 1246 (10th Cir. 2015) (upholding sanction award under the Court's inherent authority finding bad faith by a party in failing to comply with order enforcing settlement); *Chambers*, 501 U.S. 32 (1991) (holding there was no abuse of discretion in district court's resort to inherent power to impose sanctions for bad-faith conduct, even though some conduct was also sanctionable under the rules of civil procedure).

7. **Sanctions are also available under 28 U.S.C. § 1927 for vexatiously multiplying proceedings.**

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Given this statutory language, "[a] court may assess attorney[s'] fees against an attorney under § 1927 if (a) the actions of the attorney multiply the proceedings, and (b) the attorney's actions are vexatious and unreasonable." *Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1144 (D. Colo. 2000).

Actions are considered vexatious and unreasonable if the attorney acts in bad faith . . . or if the attorney's conduct constitutes a reckless disregard for the duty owed by counsel to the court." *Id.* The attorney's conduct is judged objectively; subjective bad faith is not required to justify § 1927 sanctions. *See Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1203 (10th Cir. 2008) ("Where, 'pure heart' notwithstanding, an attorney's momentarily 'empty head' results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible."). In *Miera v. Dairyland Ins. Co.*, 143 F.3d

1337 (10th Cir. 1998), the Tenth Circuit listed the categories of conduct that might justify

the imposition of sanctions under § 1927. These include:

> • acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law;

> • when an attorney is cavalier or "bent on misleading the court;"

> • intentionally acts without a plausible basis;

> • when the entire course of the proceedings was unwarranted;

> • or when certain discovery is substantially unjustified and interposed for the improper purposes of harassment, unnecessary delay and to increase the costs of the litigation.

143 F.3d at 1342.

In the Tenth Circuit, the standard for imposing sanctions for unreasonably and

vexatiously multiplying proceedings is an "extreme standard," and fees should be

awarded as a sanction "only in instances evidencing a serious and standard disregard

for the orderly process of justice." *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015)

(quoting *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997)) (internal

quotation marks omitted). The statute makes attorneys potentially liable for harm

caused "because of" unreasonable and vexatious multiplication of proceedings. 28

U.S.C. § 1927. Thus, "there must be a causal connection between the objectionable

conduct of counsel and multiplication of the proceedings," such that the conduct

"result[ed] in proceedings that would not have been conducted otherwise." *Peterson v.*

*BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Ultimately, whether to award

§ 1927 sanctions is a matter committed to this Court's discretion. *Dominion Video*

*Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278–79 (10th Cir. 2005).

The District of New Mexico has found that sanctions under 28 U.S.C. § 1927 are appropriate where an attorney improperly attempted to effectuate removal to federal court in contravention of the express language of the removal statute, while nevertheless insisting that removal was somehow proper. *See Doe ex rel. Hughes v. Martinez*, 674 F. Supp. 2d 1282, 1285-86 (D.N.M. 2009).

8. **The Court concludes that sanctions against Mr. Black are appropriate.**

The Court finds the removal was in bad faith, vexatious, and without reasonable basis. Given Mr. Black's conduct in the underlying probate matter, the fact that the underlying probate court matter has been pending for more than 10 years, his repeated and shameless efforts to shop for fora other than Colorado, his disregard for basic legal principles and procedural rules in attempting the removal, and his request to transfer probate-related matters to two federal court (in Illinois and New York) that have already said that the Denver Probate Court is the venue where these issues are to be decided, sanctions are merited under the Court's inherent authority, under 28 U.S.C. §1447(c), and under 28 U.S.C. §1927. Mr. Black has multiplied the proceedings in the underlying probate matter by vexatiously and without a plausible basis removing the case to federal court.

The Court specifically finds that the removal in this instance, coupled with the motion to transfer the case, was done in bad faith. Mr. Black concedes that the issue of reversing the disclaimer is properly before the Denver Probate Court and there would be no legitimate basis to remove that particular issue. The request to transfer to the Northern District of Illinois is patently absurd, given that the Northern District which has the pending interpleader action, specifically explained in its own opinion and in a second

clarifying order, that the Denver Probate Court is the proper venue for addressing the issue of voiding the disclaimer, and related questions the trust accounts that hold Joanne's assets.

It is therefore recommended that Mr. Black be ordered to pay Joanne's attorney fees in opposing the removal and the motion to transfer. The Court shall retain jurisdiction to consider the exact amount of an appropriate award of attorney's fees, costs and actual expenses to be awarded Joanne on account of the improper removal by Mr. Black. Accordingly, if Judge Domenico adopts this Recommendation, Joanne's counsel shall within ten (10) days of Judge Domenico's ruling file an affidavit detailing what they assert is the reasonable attorney's fees, expenses and costs that should be awarded for the improper removal. Mr. Black shall have ten (10) days after such affidavit is filed to submit any written challenge concerning the reasonableness of attorney's fees, expenses and costs that the Court will award pursuant to § 1447(c).

9. **The Clerk of Court shall refer Mr. Black to disciplinary authorities in the State of New York.**

The Court believes it has an obligation to bring serious misconduct by an attorney to the attention of appropriate disciplinary authorities. *See* Colo. R.P.C. 8.3(a) (Reporting Professional Misconduct; Maintaining the Integrity of the Profession) ("A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority."). As the comment to this Rule states, "Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct."

In this case, and as described in exhaustive detail above and in numerous other court decisions, Mr. Black has been adjudged by a court of competent jurisdiction to have abused his fiduciary position to steal $1.5 million from mentally ill sister. Because he was found to have committed civil theft, that $1.5 million damage amount was trebled. The Denver Probate Court's civil theft decision was affirmed on appeal and is now a final judgment. In addition to committing civil theft, Mr. Black and his law professor wife have conspired to fraudulently encumber the accounts which contain the stolen money, making it more difficult for the money to be released for his sister's benefit. The theft and the fraudulent encumbrance constitutes conduct that, on its face, "raises a substantial question as to [Mr. Black's] honesty, trustworthiness or fitness as a lawyer." Colo. R.P.C. 8.3(a). Mr. Black has not returned the stolen money, instead, throwing up legal impediments after legal impediment.

Mr. Black says he is licensed to practice law in the State of New York. Dkt. #11 at 7 ("Bernard is a licensed attorney in New York. He is not licensed in Colorado and has not sought *pro hac vice* privileges in Colorado. He should not need them, since he is acting solely pro se."). It is not apparent that any disciplinary authority, in any jurisdiction, has taken action regarding Mr. Black's conduct in this affair. If Mr. Black were admitted to practice law in the District of Colorado or the State of Colorado, the Court would not hesitate to refer him for discipline to this Court's Committee on Conduct or to the Colorado Supreme Court's Office of Attorney Regulation Counsel.

The New York State Bar Association's Committee on Professional Discipline makes clear that "As officers of the court, all [New York] attorneys are obligated to maintain the highest ethical standards. In furtherance of this obligation, attorneys are

guided by a code of conduct, the NY Rules of Professional Conduct, as adopted by the Appellate Division of State Supreme Court. Attorneys who violate the law or fail to abide by this code of conduct are subject to discipline, which may include admonishment, reprimand, censure, suspension or loss of his or her license to practice law." *A Guide to Attorney Disciplinary Procedures in New York State*, NYSBA Committee on Professional Discipline, https://nysba.org/public-resources/guide-to-attorney-discipline (last visited February 13, 2023).

Accordingly, the Clerk of Court is **ORDERED** to send to the Appellate Division of the New York State Supreme Court (1) a copy of this recommendation; (2) the appellate court decisions in *Black v. Black*, 422 P.3d 592 (Colo. App. 2018) ("*Black I*"); *Black v. Black*, 482 P.3d 460 (Colo. App. 2020) ("*Black III*"); and the decision in *Litvak v. Black*, 147 N.E.3d 835 (Ill. App. 2019) (vacating on the basis of fraud and collusion an agreed judgment between Bernard Black, his son Samuel, and his wife, Katherine Litvak). The package to the Appellate Division should include a formal request that the appropriate New York State Bar disciplinary authority investigate Mr. Black for his conduct as described in those reported decisions and in this case, and consider imposing appropriate discipline, including potentially suspension or disbarment.

## CONCLUSION

In light of the foregoing, it is hereby

**RECOMMENDED** this matter be **REMANDED** to the Denver Probate Court. It is further

**RECOMMENDED** that the Motion to Change Venue (Dkt. #7) be **DENIED AS MOOT**. It is further

**RECOMMENDED** that Mr. Black be ordered to pay Joanne's attorney fees as outlined above. Finally, it is

**ORDERED** that the Clerk of Court send a formal request to the Appellate Division of the New York State Supreme Court referring the matter of the Mr. Black's misconduct as described in this matter and the underlying probate case and associated cases for attorney discipline.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: February 14, 2023
      Denver, Colorado

                                      _____
                                        N. Reid Neureiter
                                        United States Magistrate Judge