**United States District Court for the District of Colorado**

Joanne Black                          :       United States District Court
                                               District of Colorado
                                             Case No.  1:22-cv-3098-nrn
v.                                :
Bernard Black

### Objections by Bernard Black, Issue Trust Trustee, to Magistrate Judge's Report and Recommendations

Bernard Black (Bernard), acting *pro se* in his capacity as trustee ("Issue Trust Trustee" or "Respondent") of the Irrevocable Trust for the Benefit of the Issue of Renata Black (the "Issue Trust"), hereby submits his objections to the Report and Recommendation of Magistrate Judge Neuriter (Feb. 14, 2023) ("Magistrate Report").   Review is *de novo*, as to both the Magistrate Judge's factual finding and legal conclusions.  28 U.S.C. § 636(b).[1]

Oral argument is justified because the Magistrate Report departs greatly from the removal statute and precedent, exceeds the district court's power (which makes the remand reviewable on appeal), and attacks not only the reputation of Respondent, but also his son Samuel (against whom no fact-finder has ever made any adverse findings), and Respondent's wife, who is not a party here.[2]  Respondent also renews his motion for transfer of this case to the Northern District of Illinois or, in the alternative, the Eastern District of New York, for the reasons stated in his Motion to Transfer or Dismiss (Dec. 7, 2022; doc. 7).

---

[1]  The Issue Trust is one of two relevant trusts, the other is the Supplemental Need Trust for the Benefit of Joanne Black ("SNT").  A third trust for which Plaintiff brought claims, the Joanne Black 2013 Trust ("2013 Trust"), has no assets.

[2]  An Appendix to these Objections responds to selected, in accurate factual statements in the Magistrate Report.

# Table of Contents

I. Introduction .................................................................................................................... 1

II. Joanne Waived All Objections to Procedural Defects of Removal; The 30-Day Limit to Object in 28 U.S.C. § 1447 is Absolute, and the District Court Has No Power to Extend It ......... 8

  A. Procedural History of This Removal .................................................................................. 8

  B. Circuit Court Unanimity on the Meaning of § 1447(c): For Procedural Objections, Courts Lack Power to Extend Objection Deadline or to Act *Sua Sponte* ................................................. 9

  C. The Magistrate Report Erred in Concluding that Plaintiff's Failure to Timely Object Did Not Waive Procedural Objections ....................................................................................... 12

    1. Summary of Magistrate Report's Arguments on Waiver of Procedural Objections ....... 12
    2. No Power to Extend 30-Day Deadline for Plaintiff to Raise Procedural Objections ....... 13
    3. No Power To Remand Sua Sponte Even Within 30 Days ................................................ 14
    4. The Magistrate Judge Acted Sua Sponte, But Had No Power to Remand Sua Sponte on Procedural Grounds ......................................................................................................... 16
    5. Procedural Objections are Waivable and Were Waived ................................................ 17
    6. The Legislative History of § 1447(c) ............................................................................. 17
  D. Conclusion: Procedural Concerns Cannot Justify Remand ................................................ 19

III. Federal Subject Matter Jurisdiction Exists for All Claims Because Each Claim Could Have Been Brought in Federal Court, and None Is Covered by the Probate Exception. ...................... 19

  A. Diversity Jurisdiction Exists and Is Not Disputed .............................................................. 19

  B. The Federal Court Must Exercise Jurisdiction If It Exists .................................................. 19

  C. The Probate Exception Must Be Construed Narrowly ......................................................... 20

  D. This Court Must Conduct a Claim-by-Claim Analysis of the Probate Exception .............. 21

  E. The Much Narrower Scope of the Probate Exception After *Marshall* ............................... 22

  F The First Prong of the Marshall Test Is Not Satisfied: The DPC Has No Custody over Disputed Assets ......................................................................................................................... 26

    1. Actual State Court Custody of Assets is Required ........................................................ 26
    2. The DPC Does Not Have Custody of the Trust Assets .................................................. 28
    3. All Claims in the Current Case Fail to Meet the Custody Requirement ......................... 29
    4. The Magistrate Report Ignores the Custody Requirement ............................................ 30
  G. The Second Prong of the Marshall Test, *Approach A*, Is Not Satisfied: The Removed Claims Do Not Require the Federal Court to "Dispose of Property that Is in the Custody of a State Probate Court" ................................................................................................................ 31

    1. The Probate Exception Applies Only where the Federal Court Would Have to Dispose of Estate Assets ....................................................................................................................... 31
    2. None of the Eight Claims Would Require the Federal Court to Dispose of Assets in the Conservatorship Estate ....................................................................................................... 32
  H. The Second Prong of the Marshall Test, *Approach B*, Is Not Satisfied for the Three Claims That Would Bring Assets into the Probate Estate ..................................................................... 33

    1. Claims that Bring Assets into an Estate Are Outside the Probate Exception .................. 33
    2. All Eight Claims Either Seek to Bring Assets into the Probate Estate, or Have Nothing to
    Do with Estate Assets ............................................................................................................. 34
I. The Second Prong of the Marshall Test, *Approach C*, Is Not Satisfied: The Removed
Claims Do Not Require the Federal Court to Exercise *In Rem* Jurisdiction, Because They Can
Be Resolved via *In Personam* Jurisdiction ............................................................................. 35

    1. The Probate Exception Applies Only when the Federal Court Cannot Use In Personam
    Jurisdiction to Resolve Claims............................................................................................... 35
    2. Federal Law Determines Which Claims Are In Personam versus In Rem ..................... 35
    3. All Claims in the Current Case Seek to Determine Personal Rights and Obligations of
    Parties, Thus All Can Be Resolved Based on In Personam Jurisdiction .............................. 36
    4. All Claims Can Be Brought Under In Personam Jurisdiction ......................................... 37
J. The Magistrate Report Relies on Pre-*Marshall* Doctrine on the Probate Exception ........... 38

  K. Summary of Removed Claims and Probate Exception Requirements................................ 39

IV. Additional Claim-by-Claim Analysis to Decide Whether the Probate Exception Applies ... 41

  A. Claim #1 –Damages Claim Against Samuel Black ............................................................ 41

    1. Summary of Why Probate Exception Does Not Apply .................................................. 41
    2. Removal is Not Discretionary: the Federal Court Cannot Remand this Claim Because
    Federal Subject Matter Jurisdiction Exists ........................................................................... 42
    3. Samuel Consented to Removal, and Procedural Challenges to Removal Are Waived .... 43
  B. The Trustee Suspension Claims (Claims #2 through #6)..................................................... 44

    1. Summary of Why the Suspend-Trustees Claims Are Outside the Probate Exception .... 44
    2. The Suspend-Trustee Claims Can Be Brought In Personam; Plaintiff Is Precluded from
    Arguing that These Claims Can Only Be Brought In Rem Because Plaintiff Repeatedly
    Brought them In Personam in the Past................................................................................... 45
    3. Response to the Magistrate Report ................................................................................. 47
  C. Claim #7 (Seeking Order to Turn Over Assets)................................................................ 49

    1. Summary of Why The Asset-Turnover Claim Is Outside the Probate Exception .......... 49
    2. Remand is Improper because the Asset Turnover Claim Violates an NDIL Order......... 49
    3. Response to the Magistrate Report ................................................................................. 50
  D. Claim #8 (Seeking to Reverse the Disclaimer) ................................................................. 51

    1. Summary: The Reverse-Disclaimer Claim is Outside the Probate Exception................ 52
    2. Response to the Magistrate Report ................................................................................. 53
V. Removal Is Necessary to Protect Out-of-State Defendants from DPC Hostility................... 53

VI. Removal Was Procedurally Proper...................................................................................... 56

VII. Attorney Fees and Sanctions ............................................................................................. 59

VIII. Conclusion ....................................................................................................................... 61

Appendix: The Loans to the Trusts and Other Illinois Litigation.............................................. 61

# I. Introduction

Respondent seeks removal because of the evident bias of the Denver Probate Court ("DPC") toward Respondent and his family members.[3]  However, the case before this Court raises only narrow, technical issues, principally involving the probate exception to federal subject matter jurisdiction.  It turns on one statutory provision, 28 U.S.C. § 1447(c), which imposes a strict, non-discretionary 30-day time limit on procedural challenges to removal.  It involves one controlling case, *Marshall v. Marshall*, 547 U.S. 293 (2006), which governs the probate exception.

The Magistrate Report ignores the plain language of § 1447(c) and the unanimous view of every circuit that has interpreted § 1447(c), <u>including the Tenth Circuit</u>, that the plaintiff's failure to move to remand within 30 days waives all procedural objections to removal.  The Report does not cite any of the many circuit court decisions squarely on point, including a Tenth Circuit decision. Instead, it cites three district court opinions, each since overruled.

The Magistrate Report also never addresses *Marshall*'s core holding: for the probate exception to apply, two requirements must be met: (i) the probate court must already have <u>custody</u> of the assets (not merely have jurisdiction over assets); and (ii) the federal claim would require the court to dispose of assets in the custody of a state court (not merely make decisions affecting parties' rights in those assets). Dozens of post-*Marshall* circuit court decisions develop the requirements for the probate exception after *Marshall*. The Magistrate Report does not cite any of them, <u>even the Tenth Circuit decision</u>. It cites only two decisions in other circuits, neither of which involves the new test, and relies on pre-*Marshall* decisions that are no longer good law.

---

[3]  See infra Part V; Appendix (discussion of trust loans).

The issue of remand before this Court does not involve the merits of the underlying claims. Whether Bernard Black and members of his family are good people is irrelevant. Removal also does not involve judicial discretion. Yet the Magistrate Report spends 33 of its 44 pages discussing not just the merits of the removed case (already irrelevant for removal), but the merits of other cases in this family saga, even more irrelevant. Many of those other cases involved different parties, different claims, were litigated in other fora, and some were resolved years ago. None are relevant to the technical issues of jurisdiction before this Court.[4]

The civil action that was removed to this Court is a new pleading that Plaintiff improperly brought as a motion ("DPC Pleading") before the Denver Probate Court ("DPC"), rather than a complaint. The DPC Pleading is a bona fide new civil action, not a mere motion in an existing case: it brings new claims that were never brought in the DPC before, and names new defendants, who were never previously before the DPC.[5] Plaintiff cannot avoid removal by simply naming her new pleading a "motion", rather than a "complaint." At the same time, these procedural details are now irrelevant: Respondent removed, as is his right under 28 U.S.C. § 1447, and Plaintiff failed to seek remand within the 30-day period specified in 28 U.S.C. § 1447(c), thus waiving all procedural objections. The only issue before this Court is federal subject matter jurisdiction.

Respondent removed to federal court based on diversity, with the consent of all other defendants. Removal petition (Nov. 30, 2022) (doc. 1). Diversity jurisdiction, apart from possible

---

[4] The Magistrate Report describes this prior litigation selectively. It omits entire cases that were decided in favor of Respondent, and misstates some of the relevant rulings. This Response will not address irrelevant factual details, even when they are incorrectly presented by the Report, but it will correct some of the inaccurate descriptions of relevant prior decisions. See also Appendix discussion of the trust loans and other Illinois litigation.

[5] New defendants, who were never before the DPC, include Samuel Black in all capacities and Respondent in his capacity as Issue Trust trustee.

application of the probate exception, is not contested. Removal does not involve judicial discretion. This Court must determine whether it has subject matter jurisdiction over each claim in this action. Claims for which it has subject matter jurisdiction must stay removed; claims for which it does not must be remanded.

Plaintiff's new action includes eight claims: (Claim 1) seeking damages against Samuel Black, for breach of fiduciary duty as SNT trustee; (Claims 2 through 6) seeking to suspend Bernard and Samuel Black as trustees of the SNT, the Issue Trust, and the Joanne Black 2013 Trust; (Claim 7) seeking an order directing Bernard Black to deposit the SNT and Issue Trust assets with the DPC; and (Claim 8) seeking reversal of a disclaimer that Bernard carried out in 2012 as conservator for his sister Joanne. As this Response will show, this Court has subject matter jurisdiction over all eight claims, and thus, all eight must stay removed. All removed claims should then be transferred to the Northern District of Illinois, where the rest of the relevant litigation is currently ongoing.

The Magistrate Report erroneously concluded that: (1) this removal was procedurally defective; (2) Plaintiff did not waive objections to procedural defects of removal; and (3) the probate exception applies to some of the claims; and (4) all claims should be remanded, including those to which the probate exception does not apply. All four conclusions are incorrect. Because Plaintiff waived objections to procedural defects in removal, this Objection focuses on the last three.

The Magistrate Report is based on three fundamental errors in applying removal law. First, the Magistrate Judge appears to believe that the court has discretion on whether to remand. He

repeatedly says that the Denver Probate Court has the power to hear this case, and therefore this Court should decline removal.

This is not the law of removal. Under 28 U.S.C. § 1441(a), a defendant can remove as of right any claim for which federal subject matter jurisdiction exists. The court has no discretion whether to accept the removal. A removed case can then be remanded only if either the procedural requirements for removal are not met, or if federal courts lack subject matter jurisdiction. Under 28 U.S.C. § 1447(c), the state court plaintiff has 30 days to move for remand. If this does not happen (and it did not happen here), then, <u>all</u> objections to procedural defects in removal are waived. The only remaining issue is federal subject matter jurisdiction – could the plaintiff have brought her claims in federal court, if she had wanted to do so? If the answer is yes for some claims and no for others, the federal court can remand only the claims that could not have been brought in federal court, and <u>must</u> retain claims for which federal subject matter jurisdiction exists.

When federal subject matter jurisdiction exists, this Court lacks discretion to remand. See, e.g., *Marshall v. Marshall*, 547 U.S. 293, 298-299 (2006) (Federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."). It is irrelevant whether a state court also has jurisdiction to hear this case. In almost all removed cases, state court jurisdiction also exists. The point of removal is to protect nonresident defendants against potential bias of a state court that otherwise has legal power to hear the case.

Second, the Magistrate Judge concluded that Plaintiff did not waive procedural objections to removal, even though she failed to move for remand within 30 days, because the Magistrate Judge filed an Order to Show Cause within that time. This is plainly erroneous: it ignores (a) a 10th circuit case, *Farmland Nat'l Beef Packing Co., L.P. v. Stone Container Corp.*, 98 F. Appx.

752, 756 (10th Cir. 2004); (b) the unanimous conclusion of all circuit courts that have considered whether district courts have power to remand *sua sponte* on procedural grounds; and (c) the plain language and legislative history of the statute. Plaintiff waived all procedural objections to removal by not timely seeking remand. The court has no power to extend the statutory deadline. Nor can it remand *sua sponte* based on procedural objections, at any time.

Finally, the Magistrate Report relied on the probate exception to federal jurisdiction, and concluded that removal was improper because the DPC has subject matter jurisdiction over this case. This is plainly incorrect. As discussed above, concurrent jurisdiction is nearly universal in properly removed cases; the issue is whether federal subject matter jurisdiction also exists. Here, diversity jurisdiction exists unless the probate exception applies.

Under *Marshall*, 547 U.S. at 312, the probate exception is not triggered solely by the probate court's jurisdiction over disputed assets. Instead, the probate exception applies only when: (i) the probate court is already exercising <u>custody</u> over the relevant assets, rather than merely having jurisdiction over them; (ii) to decide a claim, the federal court would be required to exercise *in rem* jurisdiction over the same assets, and could not hear the case relying on personal jurisdiction; and (iii) the federal court action would "dispose of property that is in the custody of a state probate court," *id.*, not merely affect rights to that property. None of these requirements is satisfied, for any of the eight claims.

*Marshall* stresses the need for actual state court custody of assets, and that the purpose of the probate exception is to prevent the federal court from disposing of assets in probate court custody. *Id.* at 312.

After *Marshall*, every circuit court that has considered this issue concluded that the probate court must have actual custody of assets, not merely jurisdiction over assets, for the probate exception to apply.[6] A recent Tenth Circuit case, *Dunlap v. Nielsen*, 771 F. Appx. 846, 850 (10th Cir. 2019), emphasizes that custody is required and rejects the probate exception because the federal claim would not dispose of assets in probate court custody:

> The district court's judgment . . . does not constitute the disposal of Estate assets in the custody of the Kansas state court. As a result, the probate exception does not apply on this basis. *See Marshall*, 547 U.S. at 312 (concluding probate exception does not apply where party is not "seek[ing] to reach a *res* in the custody of the state court").

District courts in the Tenth Circuit have followed *Marshall* and *Dunlap*: they inspected the actual state court custody over assets, rather than mere jurisdiction over them, and often rejected the probate exception for lack of custody, even where jurisdiction clearly existed.[7] The Magistrate Report ignores the requirement for the state court to already have custody of assets.

In the current case, the DPC lacks custody over the relevant trust assets; instead, the Northern District of Illinois has custody as part of an interpleader case, *JPMorgan Chase Bank, N.A. v. Black*, 18-cv-03447 ("Interpleader Case"), and has had it since 2018. The NDIL has repeatedly exercised that custody. The NDIL has issued orders that: (i) denied JPMorgan Chase

---

[6] See *Jimenez v. Rodriguez–Pagan*, 597 F.3d 18, 24 (1st Cir. 2010); *Glassie v. Doucette*, 55 F.4th 58, 68–69 (1st Cir. 2022); *Lefkowitz v. Bank of New York*, 528 F.3d 102, 106 (2d Cir. 2007); *Three Keys Ltd. V. SR Utility Holding Co.*, 540 F.3d 220, 2278 (3d. Cir. 2008); *Lee Graham Shopping Ctr., LLC v. Estate of Kirsch*, 777 F.3d 678, 681 & n.4 (4th Cir. 2015); *Curtis v. Brunsting*, 704 F.3d 406, 409 (5th Cir. 2013); *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015); *Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008); *McAninch v. Wintermute*, 491 F.3d 759, 766 (8th Cir. 2007); *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1252–56 (9th Cir. 2017); *Dunlap v. Nielsen*, 771 F. Appx. 846, 850 (10th Cir. 2019); *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1356–57 (11th Cir. 2021).

[7] See *Linton v. Embry*, No. 22-CV-00680-CMA-MDB, 2023 WL 1069491, at *3–4 (D. Colo. Jan. 27, 2023) (probate exception does not apply because "Nothing in the facts provided suggests that the Colorado probate court has custody of those funds currently."); *Tripp v. Mary M. Tripp Fam. Tr.*, No. 20-CV-02012-LTB-KLM, 2021 WL 5537552, at *3 (D. Colo. Feb. 17, 2021); *Simpkins v. Wright*, No. 2:19-CV-236-JNP-CMR, 2019 WL 4745901, at *2 (D. Utah Sept. 30, 2019).

Bank's ("Chase") motion to sell the trust assets and deposit the proceeds with the Court; (ii) ordered Chase to post a bond for the value of the assets and continue to invest them;[8] (iii) froze the assets in dispute;[9] (iv) specifically prohibited anyone from taking action to remove the trust assets without prior NDIL permission;[10] (v) denied a trust creditor's request to collect against the trusts;[11] (vi) held that the probate exception does not apply, and instead retained custody over the trust assets and jurisdiction over the Interpleader Case;[12] and (vii) allowed Plaintiff to proceed before the DPC for two of the claims at issue here (but not a third), explaining that the DPC could do so without impairing with the NDIL's custody.[13]

The NDIL also directly addressed federal subject matter jurisdiction over the trust assets and concluded that it has subject matter jurisdiction and the probate exception does not apply.[14] This is why the NDIL continues to exercise custody over the trust assets, and the DPC does not.

Notably, claim #7 of the current action seeks to move trust assets from NDIL custody to the DPC. If the DPC had custody of those assets, this claim would not be needed. The existence

---

[8] Minute Order (Aug 18, 2018) (doc. 26) (directing court clerk to accept surety bond in lieu of depositing trust assets in the court registry); Memorandum Opinion and Order, 2021 WL 4459482 (ND. Ill. Sept 29, 2021), at *8-*9.

[9] Minute Order (May 15, 2019) (doc. 68) ("Plaintiffs [Chase Bank] shall not allow any withdrawals of the interpleader assets from the accounts or execute any instructions with respect to the interpleader assets, without prior approval from the Court. "); Minute Order (June 19, 2019) (doc. 69) ("The Court's prior order dated 5/15/2019 [68] is amended to preclude any party from seeking to enforce any court order requiring, or otherwise seek to effectuate, any turnover or withdrawal of the interpleader assets from the accounts held by Plaintiff, without first filing a motion with this Court seeking approval for such withdrawal.").

[10] Minute Order (June 19, 2019) (quoted in previous footnote); Memorandum Opinion and Order, 2021 WL 4459482, at *10-*11, *13 (Sept. 29, 2021).

[11] 2021 WL 4459482 at *11-*12.

[12] 2021 WL 4459482 at *6-*7.

[13] Order in Interpleader Case (Sept. 27, 2021) at 2 (doc. 251) ("The DPC can issue a decision regarding [the disclaimer and suspension of Samuel as SNT trustee] without going so far as to touching the interpleader assets.").

[14] *JPMorgan Chase Bank, N.A. v. Black*, 2021 WL 4459482, at *7.

of this claim concedes that the DPC lacks custody over the trust assets, and therefore the probate exception does not apply. Claim #7 also violates the NDIL orders noted in point (iv) above.

Even if the DPC had custody over the trust assets, the probate exception still would not apply to any of the eight claims. The probate exception applies only to claims that (1) would require the federal court to exercise *in rem* jurisdiction over the same assets (not satisfied for any of the claims), (2) do not merely add assets to the estate (this rules out remand of claims 1, 7, and 8; the other claims don't involve any movement of assets in the first place); and (3) would require the federal court to take action that would actually dispose of assets, not merely "affect the distribution of [the] assets." *Dunlap v. Nielsen*, 771 F. Appx. at 850 (not satisfied for any of the claims). As *Dunlap* discussed, the probate exception does not apply even when the federal court makes a decision that directly affects the disposition of assets in probate court custody – because issuing such a finding is not the same thing as disposing of the assets.

## II. Joanne Waived All Objections to Procedural Defects of Removal; The 30-Day Limit to Object in 28 U.S.C. § 1447 is Absolute, and the District Court Has No Power to Extend It

Under 28 U.S.C. § 1447(c):

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. . . .

### A. Procedural History of This Removal

Plaintiff filed a new civil action in the Probate Court on November 4, 2022. On November 30, Respondent filed a timely removal petition (doc. 1). On December 2, 2033, the Magistrate Judge filed an Order to Show Cause for why the case should not be remanded (doc. 5). On December 19, 2022, Respondent filed a Response to the Order to Show Cause (doc. 11). On

January 3, 2022, after Plaintiff had failed to move to remand within the 30-day period in § 1447(c),

Respondent filed a Supplemental Response to the Order to Show Cause (doc. 14), discussing the

implications of Plaintiff's failure to timely move for remand. On January 20, 203, Plaintiff filed a

motion to remand (doc. 19), which raised as the basis for remand solely lack of federal subject

matter jurisdiction. This was 51 days after the removal petition was filed, 49 days after the Order

to Show Cause was issued, and 32 days after Respondent had replied to the Order to Show Cause.

On February 2, 2023, Respondent filed a reply to Plaintiff's motion to remand (doc. 24).

On February 3, 2023, Magistrate Judge Neuriter held a hearing on his Order to Show Cause.[15] The

Magistrate Report *sua sponte* recommends remand based on procedural defects in removal, even

though: (1) Plaintiff's response was outside the 30-day period specified in § 1447(c), and thus

Plaintiff waived any procedural objections; and (2), Plaintiff did not raise any procedural

objections, and therefore waived these objections, even if they had been timely.

## B. Circuit Court Unanimity on the Meaning of § 1447(c): For Procedural Objections, Courts Lack Power to Extend Objection Deadline or to Act *Sua Sponte*

All circuit courts that have considered the scope of district court power under § 1447(c),

including the Tenth Circuit in *Farmland Nat'l Beef Packing Co., L.P. v. Stone Container Corp.*,

98 F. Appx. 752, 756 (10th Cir. 2004), are unanimous that:

(i)     The district court has no power to extend the 30-day deadline for plaintiff to seek remand on any grounds other than lack of subject matter jurisdiction, even for a single day;[16]

---

[15] On February 6, 2023, Respondent filed a Second Supplemental Response to the Order to Show Cause (doc. 27), to address new issues raised at the hearing. Judge Neuriter declined to consider this response (doc. 28).

[16] *Farmland Nat'l Beef Packing Co., L.P. v. Stone Container Corp.*, 98 F. Appx. 752, 756 (10th Cir. 2004); *Hamilton v. Aetna Life and Cas Co.*, 5 F.3d 642, 644 (2d Cir. 1993); *In re Shell Oil Co.,* 932 F.2d 1523, 1529 (5th Cir.1991); *Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 516–17 (6th Cir.2003); *In re Continental Cas. Co.,* 29 F.3d 292, 294–95 (7th Cir.1994); *In re Bethesda Memorial Hosp., Inc.*, 123 F.3d 1407, 1410 (11th Cir. 1997).

(ii)     The district court has <u>no power</u> to remand on its own motion, on grounds other than lack of subject matter jurisdiction, after the 30-day period has lapsed;[17] and

(iii)    the district court has <u>no power</u> to remand on its own motion, on grounds other than lack of subject matter jurisdiction, <u>even before</u> the 30-day period has lapsed.[18]

As the Tenth Circuit explained in *Farmland National*, 98 F. Appx. at 756:

> Because appellee's motion to remand was not filed within thirty days after the notice of removal was filed in the district court, the district court lacked discretion under § 1447(c) to remand based on a procedural defect… All of the circuit courts to have addressed the question have held that the thirty-day period binds the district court as well as the party opposing removal.

Even severe, obvious procedural defects in removal do not allow remand without a timely motion. In *Hamilton v. Aetna Life and Cas Co.*, 5 F.3d 642,644 (2d. Cir. 1993), the plaintiff filed a complaint in state court, and later <u>removed his own complaint</u> to federal court (for which there is no statutory basis).  Defendant's untimely remand motion was denied, because the case could have been filed in federal court, and all procedural objections to removal were waived.[19]

---

[17]   *Farmland National*, 98 F. Appx. at 756 (10th Cir); *Hamilton v. Aetna Life and Cas Co.*, 5 F.3d 642, 644 (2d Cir. 1993); *Air Shields, Inc, v. Fullam*, 891 F.2d 263 (3rd Cir. 1989); *Ellenburg v. Spartan Motors Chassis, Inc.,* 519 F.3d 192, 198 (4th Cir. 2008); *Federal Deposit Ins. Corp. v. Loyd*, 955 F.2d 316, 322 (5th Cir. 1992); *Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 516–17 (6th Cir.2003); *In re Continental Cas. Co.,* 29 F.3d 292, 294–95 (7th Cir.1994); *Maniar v. F.D.I.C.*, 979 F.2d 782, 784-85 (9th Cir. 1992); *Kelton Arms Condominium Owners Ass'n, Inc. v. Homestead Ins. Co.,* 346 F.3d 1190, 1193 (9th Cir.2003); *In re Bethesda Memorial Hosp., Inc.*, 123 F.3d 1407, 1410 (11th Cir. 1997).

[18]   *In re FMC Corp. Packaging Sys. Div.,* 208 F.3d 445, 451 (3d Cir.2000); *Ellenburg v. Spartan Motors Chassis, Inc.,* 519 F.3d 192, 198 (4th Cir. 2008); *In re Allstate Ins. Co.,* 8 F.3d 219, 223 (5th Cir. 1993); *Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 516–17 (6th Cir.2003) (not distinguishing between period before or after 30 days; stating that "technical defects in the removal procedure . . . may not be raised *sua sponte* and must be raised by a party within 30 days of removal or they are waived"); *Page v. City of Southfield,* 45 F.3d 128, 131 (6th Cir.1995), *In re Continental Cas. Co.,* 29 F.3d 292, 294–95 (7th Cir.1994); *Kelton Arms Condominium Owners Ass'n, Inc. v. Homestead Ins. Co.,* 346 F.3d 1190, 1193 (9th Cir.2003); *Whole Health Chiropractic & Wellness, Inc. v. Humana Med. Plan, Inc.,* 254 F.3d 1317, 1319–21 (11th Cir.2001).

[19]   *See also Air–Shields, Inc. v. Fullam,* 891 F.2d 63, 65 (3d Cir.1989) (removal petition was untimely, but plaintiff's failure to timely object waives this defect); *In re Shell Oil Co.,* 932 F.2d 1523, 1528–29 (5th Cir.1991) (case was improperly removed because of fraudulent joinder; defect waived for failure to timely object); *Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 516 (6th Cir. 2003) (one defendant objected to removal, which automatically disqualifies removal, but the plaintiff's failure to timely object waived this defect); *Maniar v. FDIC,* 979 F.2d 782, 784–85 (9th Cir.1992) (removal petition was untimely, but the plaintiff's failure to timely object waives this defect);

Lower courts within the Tenth Circuit have repeatedly held, consistent with *Farmland National* and the other circuits cited above, that the court has no power to remand on procedural grounds unless the plaintiff makes a timely motion to remand, even if the removal was clearly procedurally defective.[20] They have also held, consistent with *Farmland National*, that the district court has no power to extend the 30-day deadline.[21]  The Magistrate Report, at 21-30, nonetheless recommends remand *sua sponte*, on procedural grounds not raised by plaintiff.  This is beyond the district court's power.

Even if Plaintiff did not waive procedural objections, this case is still properly removed, as all statutory procedural requirements are satisfied. See Section VI, *infra*.

---

*In re Bethesda Mem. Hosp., Inc.*, 123 F.3d 1407, 1410 (11th Cir.1997) (several defendants did not join the removal; defect waived by plaintiff's failure to timely object).

[20] See, e.g., *Nguyen v. Est. of Bingel*, 2021 WL 2431906, at *2 (D. Colo.) ("If a motion for remand is not filed within the thirty days after the notice of removal, the district court lacks discretion under 28 U.S.C. § 1447(c) to remand based on a procedural defect… That is, the thirty-day period binds the district court as well as the party opposing removal… Thus, though the notice of removal is defective, the Court may not *sua sponte* remand the case."); *Bachman v. Fred Meyer Stores, Inc.*, 402 F. Supp. 2d 1342, 1346–47 (D. Utah 2005) ("even though defendants' consent to removal was untimely, plaintiff's motion to remand was also untimely. The Court lacks discretion to order remand based upon such procedural defect. Therefore, this Court denies plaintiff's Motion to Remand, and leaves the parties where they are, i.e. within the jurisdiction of this court notwithstanding defective removal."); *Beatty v. Frontier Int'l Trucks, Inc.*, 2012 WL 1454862, at *2 (N.D. Okla.) ("As removal in violation of § 1445(c) does not deprive this Court of subject matter jurisdiction, Plaintiff's Motion for Remand must comport with the thirty-day timing requirements of 28 U.S.C. § 1447(c). Here Plaintiff did not object to this violation [within 30 days], therefore . . . this Court is without authority to remand Plaintiff's claim, despite Defendant's removal in violation of the procedural requirements."); *SpiritBank v. McCarty*, 2009 WL 1606535, at *1 (N.D. Okla.) ("the notice of removal was defective… However, this is a procedural defect under the removal statutes and plaintiff did not file a motion to remand. As this issue does not affect the Court's subject matter jurisdiction over the case, the Court may not *sua sponte* remand the case to state court."). See also *Park v. McGowan*, No. 11- 2011 WL 4963759, at *5 (E.D.N.Y.) ("a court cannot substitute its judgment for the plain text of a statute.  *See Farmland National,* 98 F. Appx. at 756.").

[21] See, e.g., *Roche Constructors, Inc. v. One Beacon Am. Ins. Co.*, 2012 WL 1060000, at *2 (D. Colo.); *Bordertown, LLC v. AmGUARD Ins. Co.*, 2022 WL 17538186, at *2 (D. Colo.); *Hernandez v. Cope*, No. CIV-19-436-G, 2019 WL 4534024, at *1 (W.D. Okla. Sept. 19, 2019); *Scott v. Est. of Hershel*, 2016 WL 4921428, at *1 (E.D. Okla.); *Evans v. Liberty Nat. Life Ins. Co.*, 2013 WL 5637032, at *2 (N.D. Okla.); *Smith v. Smart Buy Homes*, 2008 WL 5122840, at *2 (W.D. Okla.); *Nguyen v. Est. of Bingel*, 2021 WL 2431906, at *2 (D. Colo.); *Kier v. Lowery*, 2017 WL 1015319, at *3 (N.D. Okla.); *Bachman v. Fred Meyer Stores, Inc*., 402 F.Supp.2d 1342, 1346-47 (D. Utah 2005); *Beatty v. Frontier Int'l Trucks, Inc.*, 2012 WL 1454862, at *2 (N.D. Okla.); *SpiritBank v. McCarty*, 2009 WL 1606535, at *1 (N.D. Okla.).

**C. The Magistrate Report Erred in Concluding that Plaintiff's Failure to Timely Object Did Not Waive Procedural Objections**

If this Court is satisfied that Plaintiff's failure to timely object waives all procedural challenges to removal, then, it does not need to read this section II.C. If the Court has doubts, this section II.C engages with specific arguments and cases in the Magistrate Report related to this issue, showing why they are erroneous, and reviews the legislative history.

*1. Summary of Magistrate Report's Arguments on Waiver of Procedural Objections*

The Magistrate Report cites none of the circuit court decisions listed above, not even the directly relevant Tenth Circuit decision, *Farmland National*. Nor does the Magistrate Report cite any of the district court cases in the Tenth Circuit that cite and follow *Farmland National* and unanimously state that the court has no power to extend the 30-day rule.

The Magistrate Report recognizes that *sua sponte* removal is not permitted after 30 days. The Magistrate Report continues, however, at 28-29:

> But in this case, within the 30 days mandated by section 1447(c), this Court issued its show cause order identifying potential procedural and jurisdictional problems with Mr. Black's removal attempt. . . .

> Thus, within the requisite 30 days, procedural and jurisdictional improprieties of the removal were teed-up for briefing by the Court's Order to Show Cause. Joanne can hardly be deemed to have waived those procedural deficiencies. Questions about the procedural propriety of the removal were before the Court via the show cause order within the 30 days mandated by § 1447(c), the Court believes it proper to consider procedural defects of the removal effort. *See, e.g.*, *Tengler v. Spare*, 1995 WL 705142, at *5 n.3 (N.D. Cal.) (concluding that where an Order to Show Cause addressing procedural problems with removal is issued within the 30 day period, the Order to Show Cause should be treated as motion for purposes of § 1447(c)); *In re Gold Messenger, Inc.*, 221 B.R. 259 (D. Colo. 1998) (rejecting the notion that a Court cannot act *sua sponte* within the 30-day period based on procedural defects in the removal notice, but recognizing that a *sua sponte* remand for procedural defects after 30 days is not appropriate); *Corry v. City of Houston*, 832 F. Supp. 1095, 1096–97 (S.D. Tex. 1993) (explaining that "Congress' purpose in amending § 1447(c) was not to altogether limit district courts' *sua sponte* remands but only to require that remands based on procedural defects be addressed within thirty days of removal").

The Magistrate Report then recommends remand based on defects in removal procedure.

The Magistrate Judge's reasoning to support power to remand is unclear, but seems to be that:

(i)     The Court has the power to extend the 30-day deadline in § 1447(c), and did so by issuing the Order to Show Cause (even though the Order said nothing about extending any deadlines);

(ii)    The Court would have had the power to remand *sua sponte* within 30 days; and

(iii)   It does not matter that Plaintiff did not raise procedural objections, *ever*, because: (i) the Magistrate Judge did so; and (ii) Plaintiff showed up after the 30-day deadline and objected to subject matter jurisdiction; and

(iv)    The Court has the power to remand after 30 day, *sua sponte* based on procedural objections not raised by the Plaintiff, because the Order to Show Cause was issued before this period expired.

Each of these steps is incorrect.

### 2. No Power to Extend 30-Day Deadline for Plaintiff to Raise Procedural Objections

All circuit courts that considered the issue have ruled that the 30-day deadline for the state court plaintiff to raise procedural objections in 28 U.S.C. § 1447(c) is absolute, and the district court cannot extend it. This includes the Tenth Circuit, which ruled in *Farmland National*, 98 F. Appx. at 756, that an objection filed 31 days after the removal petition was untimely. The 10th Circuit wrote (emphasis added):

> Because appellee's motion to remand was not filed within thirty days after the notice of removal was filed in the district court, the district court <u>lacked discretion under § 1447(c) to remand based on a procedural defect</u>. *See Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 516–17 (6th Cir. 2003); *In re Bethesda Mem. Hosp., Inc.,* 123 F.3d 1407, 1410 (11th Cir. 1997); *Hamilton v. Aetna Life & Cas. Co.,* 5 F.3d 642, 643–44 (2d Cir. 1993) (per curiam); *In re Shell Oil Co.,* 932 F.2d 1523, 1528–29 (5th Cir. 1991). <u>All of the circuit courts to have addressed the question have held that the thirty-day period binds the district court as well as the party opposing removal.</u> *See Loftis,* 342 F.3d at 516–17; *Bethesda Mem. Hosp.,* 123 F.3d at 1410; *In re Continental Cas. Co.,* 29 F.3d 292, 294–95 (7th Cir. 1994); *Hamilton,* 5 F.3d at 643–44; *Maniar v. FDIC,* 979 F.2d 782, 784–85 (9th Cir. 1992); *FDIC v. Loyd,* 955 F.2d 316, 322 (5th Cir.1992); *Air–Shields, Inc. v. Fullam,* 891 F.2d 63, 65 (3d Cir. 1989).

### *3. No Power To Remand Sua Sponte Even Within 30 Days*

To support relying on its own Show Cause Order to extend the 30-day deadline for plaintiff

to object to removal, the Magistrate Report cites no appellate cases, only three district court cases.

Before addressing these cases, we review the appellate cases, from <u>seven circuits</u>, holding that the

district court lacks power to remand *sua sponte* on procedural grounds at any time.  The Fifth

Circuit reversed *sua sponte* removal within 30 days in *In re Allstate Ins. Co.*, 8 F.3d 219, 223 (5th

Cir. 1993), writing:

> [Section 1447(c) leaves] no room for inherent authority; either the statute confers upon
> the court power to remand on its own initiative, or the court has no such power.  Given
> *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1975); and [the Fifth
> Circuit's prior decision in] *FDIC v. Loyd,* 955 F.2d 316 (5th Cir.1992)*,* moreover, we
> are persuaded that the better reading precludes the existence of discretion in the district
> court to remand for procedural defects on its own motion.  Section 1447(c)'s second
> sentence assigns to the court concern for its jurisdictional prerequisites; the first
> consigns procedural formalities to the care of the parties. We believe this to be a wise
> and warranted distribution. . . . [W]e can discern no basis, in either the language of the
> amended statute or in policy, for conferring upon the district courts discretion *sua
> sponte* to remand for purely procedural defects,

The Seventh Circuit, in *In re Continental Cas. Co.,* 29 F.3d 292, 294 (7th Cir. 1994), also

reversed *sua sponte* removal within 30 days, as beyond the district court's power under § 1447(c):[22]

> Ever since *Ayers v. Watson,* 113 U.S. 594 (1885), it has been accepted that non-
> jurisdictional objections to removal may be waived. The plaintiff has a right to remand
> if the defendant did not take the right steps when removing, but the plaintiff also may
> accept the defendant's choice of a federal forum. Procedural defects in removal are in
> this respect similar to the lack of personal jurisdiction and other shortcomings that may
> be waived or forfeited. Fed.R.Civ.P. 12(h)(1).

So did the Sixth Circuit, in *Page v. City of Southfield,* 45 F.3d 128, 133 (6th Cir. 1995):

> We also agree with the Fifth Circuit's reasoning in *In re Allstate* that the two sentences
> of § 1447(c) distribute different roles to the court and the parties. Not only did Congress
> incorporate the word "motion" in the 1988 amendments where it had previously been

---

[22]  See also *Pettitt v. Boeing Co*., 606 F.3d 340, 342-43 (7th Cir. 2010).

> absent, but it did so only in the first sentence, i.e., for procedural defects. The first sentence of § 1447(c) requires that a "motion" must be made "within 30 days after the filing of the notice of removal" to remand a case on the basis of a procedural defect. The second sentence, however, without mentioning "motion," requires that if the district court lacks subject matter jurisdiction, "the case shall be remanded." Thus, the court can, in fact must, dismiss a case when it determines that it lacks subject matter jurisdiction, whether or not a party has filed a motion. The inclusion of the term motion with respect to procedural defects, however, implies that a court must wait for a "motion" by a party before it is authorized by § 1447(c) to remand.

See also *Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 516–17 (6th Cir. 2003) (emphasis added ("technical defects in the removal procedure . . . may not be raised *sua sponte* and must be raised by a party within 30 days of removal or they are waived.").  The Third, Ninth, and Eleventh Circuits concur.  See *Kelton Arms Condominium Owners Ass'n, Inc. v. Homestead Ins. Co.,* 346 F.3d 1190, 1193 (9th Cir. 2003):

> [F]ive other circuits have addressed the question [of whether sua sponte remand is permitted within 30 days]. Each has held that the district courts have no authority to remand a case *sua sponte* for procedural defects. *Whole Health Chiropractic & Wellness, Inc. v. Humana Med. Plan, Inc.,* 254 F.3d 1317 (11th Cir. 2001); *In re FMC Corp. Packaging Sys. Div.,* 208 F.3d 445 (3d Cir. 2000); *Page v. City of Southfield,* 45 F.3d 128 (6th Cir.1995); *In re Cont'l. Cas. Co.,* 29 F.3d 292 (7th Cir. 1994); *In re Allstate Ins.,* 8 F.3d 219 (5th Cir. 1993). . . . [W]e hold that the district court cannot remand *sua sponte* for defects in removal procedure.

*See also Ellenburg v. Spartan Motors Chassis, Inc.,* 519 F.3d 192, 197-98 (4th Cir. 2008) (emphasis added) ("defect must be asserted by a party's motion to remand filed within 30 days.").

Against the background of circuit court unanimity, we turn to the three lower court cases cited in the Magistrate Report.  *Corry* (S.D. Tex.) and *Tengler* (N.D. Cal.) assert that *sua sponte* remands on procedural remands are permissible within 30 days.  These views were subsequently rejected by the Fifth Circuit in *In re Allstate*, and by the Ninth Circuit in *Kelton Arms*.

*In re Gold Messenger* predates the Tenth Circuit decision in *Farmland National*; to the extent it departs from *Farmland National*, it is not good law.  In dicta, *In re Gold Messenger* states

that the court disagrees with the appellate decisions in *Page*, *Continental Casualty*, and *In re Allstate*, which held that *sua sponte* remands are <u>never</u> permitted, and opines that to say "never" is too extreme. But its holding is consistent with these cases. The *Gold Messenger* court continues:

> A plaintiff has a right to remand if the defendant removed improperly, but also may accept the defendant's choice of a federal forum and want to stay there. A *sua sponte* remand is inappropriate as it could deprive both parties of their preferred forum. *See, e.g., Page,* 45 F.3d at 134 ("*sua sponte* remands on nonjurisdictional grounds run contrary to the goals of the statute"). *A fortiori,* where, as in the instant case, the bankruptcy judge makes a *sua sponte* remand for a procedural defect after the thirty day period from the filing of the notice of removal, such remand is based on a waived defect.

In the present case, too, the Magistrate Judge *sua sponte* recommended remand for procedural defects after 30 days. The issuance of the Order to Show Cause, within the 30-day period, was not a remand.

In short, none of the cases cited in the Magistrate Report supports district court's power to remand *sua sponte* on procedural grounds.

### 4. The Magistrate Judge Acted Sua Sponte, But Had No Power to Remand Sua Sponte on Procedural Grounds

It is clear from the record that the Magistrate Judge acted *sua sponte*, in recommending remand for procedural reasons. He raised procedural concerns in his Show Cause Order. Then, he held a "telephonic Show Cause hearing."[23] The Magistrate Judge clarified that the sole purpose of the hearing was oral argument on the Show Cause Order:[24]

> [T]he Court notes that the purpose of the telephonic Show Cause hearing is oral argument on Mr. Black's Response (Dkt. #[11]) to the Court's Order to Show Cause (Dkt. #[5]). [Respondent's] letter indicates that Mr. Black would like to file a reply brief to Joanne Black's response, but no reply is necessary.

---

[23] Minute Order re [5] Order to Show Cause (Jan. 30, 2022) (doc. 20).

[24] Minute Order (Jan 31, 2023) (doc. 23).

Moreover, only the Magistrate Judge raised procedural concerns with removal. Plaintiff, in her untimely motion, sought remand solely on grounds of federal subject matter jurisdiction.[25] Yet *sua sponte* remand on procedural grounds is beyond the district court's power.

### 5. *Procedural Objections are Waivable and Were Waived*

The Magistrate Judge erred in concluding that in light of the procedural issues raised by the Show Cause Order, Plaintiff "can hardly be deemed to have waived those procedural deficiencies." Plaintiff can absolutely be deemed to have waived procedural objections. Plaintiff was the only party who could raise these objections, and did not do so, either within the 30-day period or in her untimely response. As the Fifth Circuit explained in *In re Allstate*, 8 F.3d at 223:

> Section 1447(c)'s second sentence assigns to the court concern for its jurisdictional prerequisites; the first consigns procedural formalities to the care of the parties. We believe this to be a wise and warranted distribution. . . .

Accord, *Page v. City of Southfield,* 45 F.3d at 133 (6th Cir. 1995) (quoted above).

As the Magistrate Report says, at 29, procedural issues were "teed-up for briefing by the Court's Order to Show Cause." Plaintiff, however, walked away from the tee, did not take a swing for more than 30 days, and never raised procedural concerns with the removal.

### 6. *The Legislative History of § 1447(c)*

This section summarizes the legislative history behind the current version of 28 U.S.C. § 1447(c), which confirms that *sua sponte* remand on procedural grounds is not permitted.

Congress passed two amendments to § 1447(c), in 1988 and in 1996, each time reducing the court's power to remand. The 1988 amendment: (i) removed removal procedure as a basis for

---

[25] See Plaintiff's motion for remand (doc. 19) at 1 (emphasis added) ("Protected Person Joanne Black ("Joanne") submits her response to Bernard's Response to Order to Show Cause and Motion to Transfer Venue, and believes this Court should remand this matter to the Denver Probate Court <u>for lack of subject matter jurisdiction</u>.").

remand, unless a motion for remand was filed within 30 days; and (ii) clarified that a motion for remand (on grounds other than lack of subject matter jurisdiction) had to come from the plaintiff; the court could not remand sua sponte. The first two sentences of § 1447(c) read, after this amendment (emphasis added):

> A motion to remand the case on the basis of *any defect in removal procedure* must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

The House Report accompanying this change explained:[26]

> So long as the defect in removal procedure does not involve a lack of federal subject matter jurisdiction, there is no reason why either State or Federal courts, or the parties, should be subject to the burdens of shuttling a case between two courts that each have subject matter jurisdiction.

Congress then amended § 1447(c) again in 1996, to clarify its intent in 1988, that the only permitted basis for remand after 30 days is that the case could not have been brought in federal court in first instance. The first two sentences now read, after this further amendment:

> A motion to remand the case on the basis of *any defect other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

The accompanying House Report explains:

> The intent of this amendment was to impose a 30-day limit on all motions to remand except in those cases where the court lacks subject matter jurisdiction. The intent of the Congress is not entirely clear from the [1988] wording of 28 U.S.C. § 1447(c), and it has been interpreted differently by different courts. S. 533 clarifies the intent of Congress that a motion to remand a case on the basis of any defect other than subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under 28 U.S.C. § 1446(a).

---

[26] H.R. Rep. 100-889, (1988), § 1009 (discussing changes to removal law).

### D. Conclusion: Procedural Concerns Cannot Justify Remand

Remand for procedural issues without a timely motion from Plaintiff is beyond the district court's power. All procedural objections are waived.

Once the 30-day period has expired, the only issue is federal subject matter jurisdiction for the removed claims. Another way to state the issue before this Court: Could the claims in the DPC Pleading have been filed in federal court in first instance? See *Ariel Land Owners, Inc. v. Dring,* 351 F.3d 611, 614 (3d Cir.2003) ("an irregularity in removal of a case to federal court is to be considered 'jurisdictional' only if the case could not initially have been filed in federal court.").

### III. Federal Subject Matter Jurisdiction Exists for All Claims Because Each Claim Could Have Been Brought in Federal Court, and None Is Covered by the Probate Exception.

### A. Diversity Jurisdiction Exists and Is Not Disputed

Removal was based on diversity, which is not contested, either as to complete diversity of parties or jurisdictional amount. Respondent alleged complete diversity of parties, and an amount in controversy exceeding the statutory minimum. Plaintiff has not disputed these prerequisites for diversity jurisdiction. Thus, they are now deemed established.[27] The sole question for this Court is whether the probate exception applies.

### B. The Federal Court Must Exercise Jurisdiction If It Exists

The cases discussed *supra* in Part II establish that the district court must accept the removed case if federal subject matter jurisdiction exists. This is not discretionary. The same principle applies to the probate exception. Unless this exception applies, the federal court must retain

---

[27] When, as here, diversity jurisdiction is not contested, then "[i]t must appear to a legal certainty that the [facts on which diversity is based do not exist] to justify dismissal." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Moreover, "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991).

jurisdiction; this is not discretionary. *Marshall* stresses that if federal jurisdiction exists, it must be exercised. See 547 U.S. at 298-99, where Justice Ginsburg begins the *Marshall* opinion by quoting from *Cohens v. Virginia*:

> We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821).

Two hundred years of the Supreme Court precedents support this position. See, e.g., *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996) ("federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."); *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 818 (1976) (commenting on the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"); *England v. Louisiana Bd. of Med. Exam'rs,* 375 U.S. 411, 415 (1964) ("`When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.'" (quoting *Wilcox v. Consol. Gas Co. of N.Y.,* 212 U.S. 19, 40 (1909)); *Kline v. Burke Const. Co.,* 260 U.S. 226, 234 (1922) ("[the federal court [is] bound to take the case and proceed to judgment. It [cannot] abdicate its authority or duty in favor of . . . state jurisdiction."); *Chicot County v. Sherwood,* 148 U.S. 529, 534 (1893) ("[T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends.").

## C.  The Probate Exception Must Be Construed Narrowly

*Marshall* makes clear that the probate exception, as a judicially created exception to the Congressional grant of jurisdiction, cannot be extended beyond its historical basis, and has a "distinctly limited scope," 547 U.S. at 296. Circuit courts have accordingly construed the exception narrowly: "because of our unflagging obligation to exercise our jurisdiction, we must apply the

probate exception narrowly." *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1356 (11th Cir. 2021). *See also Georges v. Glick*, 856 F.2d 971, 973 (7th Cir. 1988) ("The [probate] exception is created by the judiciary, not by Congress. Consequently, we must construe the exception narrowly."); *Sianis v. Jensen*, 294 F.3d 994, 999 (8th Cir. 2002).

**D.  This Court Must Conduct a Claim-by-Claim Analysis of the Probate Exception**

The removed action contains eight claims. To assess whether the probate exception applies, the Court must conduct a claim-by-claim analysis. The claims to which the probate exception does not apply must stay removed, and any claims to which the probate exception does apply must be remanded.  The requirement that the court must review each claim separately to decide whether the probate exception applies is simply a specific instance of the general requirement that federal courts review each claim separately and decide whether the court has federal subject matter jurisdiction for each claim.

Many post-*Marshall* cases on the probate exception illustrate this principle: the courts analyze each claim separately to determine whether the probate exception applies. *See, e.g., Lefkowitz v. Bank of New York*, 528 F.3d 102, 106 (2d Cir. 2007) (claim by claim analysis; five claims are within probate exception because "the federal court  would have to assert control over property that remains under the control of the state courts," but four other claims seeking damages are outside the probate exception); *Three Keys Ltd. V. SR Utility Holding Co.*, 540 F.3d 220, 230 (3d. Cir. 2008) (claim by claim analysis of whether probate exception applies)**;** *Wisecarver v.*

*Moore*, 489 F.3d 747 (6th Cir. 2007) (claim by claim analysis; four claims were not barred by the probate exception, but three claims were barred).[28]

The Magistrate Report does not engage in a claim-by-claim analysis. Moreover, for the one claim it considers separately, the damages claim against Samuel, the Magistrate Report recommends remand, on the improper grounds that "Claims against Samuel are supplemental to the ongoing conservatorship proceeding." Magistrate Report at 34. However, removal is not discretionary. The damages claim against Samuel must remain in federal court unless the probate exception applies. The Magistrate Report does not cite, and Respondent was not able to find, any support for the proposition that a court can remand claims for which it has subject matter jurisdiction, because they are "supplemental" to other claims. Moreover, there are no other open claims between the parties in the DPC; all claims were removed.

## E.  The Much Narrower Scope of the Probate Exception After *Marshall*

*Marshall*, after stressing that the federal courts must exercise jurisdiction when given, greatly and expressly narrows prior scope of the probate exception in three principal ways:  (i) it limits the probate exception to property in the custody of a probate court; (ii) it requires that both the probate court and the state court exercise *in rem* jurisdiction over the same assets; and (iii) it

---

[28]  *See also Lebron-Yero v. Lebron-Rodriguez*, 2022 WL 611589 (1st Cir.) (of four claims, probate exception applies to only one claim); *Pelczar v. Pelczar*, 833 F. Appx. 872 (2d Cir. 2020) (damages claim against executor is not barred by the probate exception, but claim involving transfer of an estate asset, is barred); *McKie v. Kornegay*, , 2022 WL 4241355, at *3 (2d Cir. Sept. 15, 2022) (separate analysis of each claim; some are barred by the probate exception, others not); *Applebaum v. Fabian*, 2022 WL 17090172, at *2 (3d Cir. 2022) (only one claim out of five is barred by the probate exception); *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 802-803 (6th Cir. 2015) (separate analysis of each of the six raised claims finding that only the sixth involved *in rem* jurisdiction; then further analyzing that claim); *Jones v. Brennan*, 465 F.3d 304. 307-308 (7th Cir. 2006) (claim for misadministration of probate estate by probate court is barred by probate exception, but claim for damages is not barred); *Bedree v. Bedree*, 396 F. Appx. 312, 315 (7th Cir. 2010) (claim-by-claim analysis, with only one claim of many barred by the probate exception).

stresses that, while federal courts cannot dispose of property in a probate court's custody, they can take a broad range of actions that may affect rights to that property.

*Marshall* clarifies that the probate exception is of "distinctly limited scope", 547 U.S. at 296, 310. The probate exception reflects "the general principle that, when one court is exercising *in rem* jurisdiction over a *res,* a second court will not assume *in rem* jurisdiction over the same *res.*" *Id. at 311.* It then states that the probate exception applies only in three specific circumstances, id. at 296, 311-12:

> The probate exception reserves to state probate courts [1] the probate or annulment of a will and [2] the administration of a decedent's estate; it also [3] precludes federal courts from endeavoring to dispose of property that is <u>in the custody of a state probate</u> <u>court</u>. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

In this and almost all other probate exception cases, only the third is relevant.

*Marshall's* new rule – "dispose of property that is in the custody of a probate court" – significantly narrows down the scope of prior cases, including *Markham v. Allen,* 326 U.S. 490, 494 (1946) and *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939). *Markham* allowed federal courts to invoke the probate exception not only where the federal action would "dispose of property" within state court custody, but also when it would "interfere with the probate proceedings", in claims like suits against fiduciaries. *Marshall* calls this broad approach "incoheren[t]" and expressly rejects it. 547 U.S. at 311.

*Marshall* lists a number of circuit court opinions that were issued under the prior, broader probate-exception rule, which include cases involving suits for breach of fiduciary duties, and rejects them. *Id.* Post-*Marshall* circuit courts have unanimously held that claims for breach of fiduciary duties and other claims for damages against trustees and estate administrators are outside

the probate exception.[29]  To the extent *Markham*, *Princess Lida*, and their progeny imply a broader scope for the probate exception than *Marshall*, they are overruled.

In sum, *Marshall* holds that the probate exception applies when all of the following elements are met: (1) a state court has custody of assets; and (2) the state court is exercising *in rem* jurisdiction over those assets; and (3) the federal court would have to itself exercise *in rem* jurisdiction over the same assets, and could not resolve the claim by exercising *in personam* jurisdiction, and (4) the federal court would have to dispose of assets in the custody of state court, as opposed to merely adjudicate parties' rights with respect to those assets.  Thus, the federal courts can hear all claims, including the tort claim at issue in *Marshall*, that do not require disposal of assets in the custody of a state court, and do not require the <u>federal court</u> to act based on *in rem* jurisdiction with respect to assets already under state court custody.

Several circuit courts have separated the *Marshall* standard into two steps.  *See Three Keys Ltd. V. SR Utility Holding Co.*, 540 F.3d 220, 2278 (3d. Cir. 2008), *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6ᵗʰ Cir. 2015); *Curtis v. Brunsting,* 704 F.3d 406, 409 (5th Cir. 2013):

> *Marshall* requires a two-step inquiry into (1) whether the property in dispute is estate property within the custody of the probate court and (2) whether the plaintiff's claims would require the federal court to assume *in rem* jurisdiction over that property.

---

[29] See *Lefkowitz v. Bank of New York*, 528 F.3d 102, 108 (2d Cir. 2007) (The probate exception can no longer be used to dismiss 'widely recognized tort[s]' such as breach of fiduciary duty . . . merely because the issues intertwine with claims proceeding in state court.); *Glassie v. Doucette*, 55 F.4th 58, 68-69 (1st Cir. 2022) (damages claim against executor is outside probate exception); *Three Keys Ltd v. SR Utility Holding Co.*, 540 F.3d 220, 229 (3d Cir. 2008); Wisecarver v. Moore, 489 F.3d 747, 750 (6th  Cir. 2007); *Jones v. Brennan,* 465 F.3d 304, 307–308 (7th Cir.2006)**;** *McAninch v. Wintermute*, 478 F.3d 882, 890 (8th Cir. 2007); Critchlow v. Critchlow, 617 F. Appx. 664, 665 (9th Cir. 2015) (claim for breach of fiduciary duty is outside probate exception); *Curtis v. Brunsting,* 704 F.3d 406, 409 (5th Cir. 2013) (same); *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1356 (11th Cir. 2021).

The first step (whether the probate court has custody over assets) is straightforward. The second step (whether plaintiff's claims require the federal court to assume *in rem* jurisdiction) is more involved. Circuit courts, including the Tenth Circuit, have developed several approaches to determining whether the second step is met.

One approach (*Approach A*), employed in the Tenth Circuit and several other circuits, flows directly from *Marshall*, and focuses not on the *in rem* versus *in personam* labels, but on the substance of the relief sought -- whether the relief requested from the federal court would require it to actually "dispose of assets"[30] in probate court custody, (which triggers the probate exception), as opposed to merely adjudicating rights with respect to property in probate court custody (does not trigger the probate exception).[31]

A second approach (*Approach B*) is to ask whether the federal claim seeks to add assets to those already in state court custody; if so, the claim is outside the probate exception.[32]  This approach is only relevant for claims that seek to move assets, and can be seen as the converse of *Approach A*:  actions to dispose of assets in state court custody trigger the probate exception; actions to add assets to that custody do not.

A third approach is to ask whether the federal court would be <u>required</u> to rely on *in rem* jurisdiction to resolve the claim, or could resolve the claim by relying on in *personam* jurisdiction.[33]  We will call this *Approach C.*

---

[30] See *Marshall*, 547 U.S. at 292; *Dunlap*, 771 F. Appx. at 850; *Fisher*, 2 F.4th at 1356; *Lee Graham Shopping Ctr., LLC*, 777 F.3d at 681; *Lefkowitz*, 528 F.3d at 106.

[31] *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237 (9th Cir. 2017).

[32]  *See Jiminez v. Rodriguez-Pagan*, 597 F.3d at 24; *Gustafson*, 546 F.3d at 400.

[33] See *Three Keys Ltd. V. SR Utility Holding Co.*, 540 F.3d 220, 2278 (3d. Cir. 2008), *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015); *Curtis v. Brunsting,* 704 F.3d 406, 409 (5th Cir. 2013).

We consider first the requirement that the probate court have custody of the relevant assets, and then, the three approaches to the second step.

**F  The First Prong of the Marshall Test Is Not Satisfied: The DPC Has No Custody over Disputed Assets**

### 1.  *Actual State Court Custody of Assets is Required*

The probate exception applies only where there would be an active conflict between two courts, where the federal court would be "endeavoring to dispose of property that is <u>in the custody of a state probate court</u>." 547 U.S. at 292 (emphasis added).  *Marshall* repeatedly stresses that the relevant assets must already be in the state court's custody.  *See, e.g., Marshall,* 547 U.S.  at 296 and at 310 (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)).  *Marshall* specifically states that an old, broader standard from *Markham*, "interfere[nce] with the probate proceedings" is "incoheren[t]" and is overruled. 547 U.S. at 311.

> *See also Marshall,* 547 U.S. at 296 and at 310 (emphasis added, again quoting *Markham*):
>
> [W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property <u>in the custody of a state court</u>, ... it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

And yet again, 547 U.S. at 296 and at 311-12 (emphasis added):

> [T]he probate exception . . . precludes federal courts from disposing of property that is <u>in the custody of a state probate court</u>. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

And at 312 (emphasis added), where *Marshall* allowed a tort claim to proceed, even though related to an ongoing probate proceeding, because:

> [Plaintiff] seeks an *in personam* judgment against Pierce, not the probate or annulment of a will. . . .  Nor does she seek to reach a *res* <u>in the custody of a state court</u>.

Subsequent decisions in multiple circuits have confirmed that the state court must have actual custody of assets, not merely jurisdiction over assets, for the probate exception to apply. See, e.g., *Three Keys Ltd. V. SR Utility Holding Co.*, 540 F.3d 220, 227-28 (3d. Cir. 2008) (carefully analyzing whether relevant property was "in the custody of the probate court"); *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015); and *Curtis v. Brunsting,* 704 F.3d 406, 409 (5th Cir. 2013)), all adopting the two-part test quoted above, with actual state court custody of assets as the first step. *See also Struck v. Cook County Public Guardian*, 508 F.3d 858, 860 (7th Cir. 2007)**;** *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1356 (11th Cir. 2021) ("Fisher is not asking the district court to dispose of property that is in the custody of a state probate court."). See also James Pfander and Michael Downey, *In Search of the Probate Exception*, 67 Vand. L. Rev. 1533, 1574 (2014):

> This principle of deference to prior custody explains why federal courts cannot "dispose of property that is in the custody of a state probate court." (quoting *Marshall*, 547 U.S. at 312).

And *id.* at 1578:

> Probate exception decisions in [*Curtis v. Brunsting*] and other circuits have similarly turned on whether a state probate court already had control over the property at the center of the dispute.

The Tenth Circuit has recognized the narrow scope of the probate exception after *Marshall*, and the need for actual probate court custody over assets. *Dunlap v. Nielsen*, 771 F. Appx. 846, 850 (10th Cir. 2019), holds that a breach of contract claim against an estate can be brought in federal court, even though the federal court's "decision would likely be binding in the Probate Case." The court explained:

> [W]here diversity jurisdiction exists, federal courts retain jurisdiction to decide matters that are probate-related or that may impact the state probate court's performance of the three

tasks reserved to it [by *Marshall*], so long as the federal court itself does not engage in these tasks. *See, e.g.*, [*Marshall*] at 299-300 (holding claim did not fall within probate exception even though it raised "questions which would ordinarily be decided by a probate court in determining the validity of the decedent's estate planning instrument" (internal quotation marks omitted)); *Markham v. Allen*, 326 U.S. 490, 494 (1946) (declaring federal courts have jurisdiction to adjudicate rights in property, even though the state probate court may be bound by the federal court's judgment); *Lee Graham Shopping Ctr., LLC v. Estate of Kirsch*, 777 F.3d 678, 681 & n.4 (4th Cir. 2015) (holding federal court had jurisdiction to decide contract interpretation issue though it could affect the state court's distribution of estate assets); *Lefkowitz v. Bank of New York*, 528 F.3d 102, 106 (2d Cir. 2007) ("[W]here exercise of federal jurisdiction will result in a judgment that does not dispose of property in the custody of a state probate court, even though the judgment may be intertwined with and binding on those state proceedings, the federal courts retain their jurisdiction.").

The Tenth Circuit further cited *Lee Graham* for the proposition that the probate exception applies only to claims that seek actual distribution of estate assets, not claims whose resolution will bind the probate court and affect how the probate court distributes assets. *See id.*:

> [R]esolving a question that may affect the distribution of estate assets does not constitute a distribution of estate assets subject to the probate exception.

### 2. *The DPC Does Not Have Custody of the Trust Assets*

The DPC does not have custody over the relevant trust assets. Instead, a federal court, the NDIL, has had custody since the Interpleader Case was filed in May 2018. The NDIL obtained custody through the interpleader statute, but this is not relevant for the probate exception: the relevant question, under *Marshall*, is which court has custody of assets, not how that custody was obtained. As discussed in the Introduction, the NDIL has actively exercised custody over the trust assets, including issuing multiple orders on asset freezes, instructions on asset management, decisions on whether assets can be sold, and whether assets can be claimed by third parties. Conversely, the DPC has not had custody over assets at least since the NDIL obtained custody in 2018.

Plaintiff already argued before the NDIL that the DPC had *in rem* jurisdiction over the trust assets and sought dismissal, claiming that the NDIL could not exercise *in rem* jurisdiction over the same assets. The NDIL rejected this claim, determined that the probate exception did not apply, retained its own jurisdiction, and, most critically, retained custody over assets.[34] Moreover, the NDIL issued an order, expressly banning all parties from trying to manufacture competition for control over the trust assets in another court by seeking in other courts any orders related to transfer of assets without prior approval from the NDIL.[35] The NDIL allowed two claims to be brought before the DPC only because doing so would not impair the NDIL's own custody, explaining: "the DPC can issue a decision . . . without going so far as touching the interpleader assets."[36]

The entire point of Claim #7 of the current case is to bring trust assets from the custody of the NDIL to the custody of the DPC – relief that that the NDIL already denied. By filing this claim, Plaintiff concedes that the DPC has no custody of disputed assets.

In short, there cannot be a dispute today as to who has actual custody of the assets – it is only the NDIL. Federal action with respect to the removed claims cannot dispose of assets within the DPC's custody, because DPC lacks custody. Necessarily, then, all of the removed claims are outside the probate exception.

### 3. All Claims in the Current Case Fail to Meet the Custody Requirement

All of the claims are outside the probate exception, because none involve property in DPC custody.

---

[34] *JPMorgan Chase Bank, N.A. v. Black*, 2021 WL 4459482, at *7.

[35] Minute Order (June 19, 2019) (doc. 69); *see also* 2021 WL 4459482, at at *10-*11, *13.

[36] NDIL Order in Interpleader Case (Sept. 27, 2021) (doc. 251).

*Claim #1* seeks damages against a trustee; it seeks to obtain personal assets that belong to the trustee; these assets are not currently in the custody of the DPC.

*Claims #2-6* seek trustee suspension. They do not involve disposal of assets at all. In any case, the relevant assets are the trust assets, which are in custody of the NDIL, not the DPC.

*Claim #7* seeks an order to compel Respondent to transfer trust assets that are in NDIL custody to DPC custody. This claim shows, on its face, that these assets are not in DPC custody.

*Claim #8* seeks to reverse a disclaimer. This involves only adjudication of legal claims, not disposal of assets, and moreover, the underlying assets are the trust assets, which are in NDIL custody.[37]

In sum, none of the eight claims survive the first step ("custody" requirement) of the two-step *Marshall* test. Because *Marshall* requires that both steps be met for the probate exception to apply, this alone is enough to defeat the probate exception for all claims.

### 4. The Magistrate Report Ignores the Custody Requirement

The Magistrate Report ignores the *Marshall* requirement that the probate court must already have custody over the relevant assets. The Report never mentions that the NDIL expressly asserted its custody over assets and banned any party from asking other courts for orders that would move the assets from the NDIL custody (as claim #7 does), without advance permission from the NDIL. The Report does not cite *Dunlap* or the other post-*Marshall* circuit court cases emphasizing the need for actual probate court custody of disputed assets. Instead, as discussed below, the

---

[37] The conclusion that the probate exception does not apply, because the trust assets are in the NDIL's custody, is consistent with the NDIL's decision to allow the DPC to hear a challenge to the disclaimer. The NDIL found that the probate exception did not apply, and then exercised discretion under the interpleader statute to allow Plaintiff to bring a claim in the DPC concerning the disclaimer. The interpleader statute expressly gives such discretion to the NDIL, but the removal statute expressly does not give discretion to this Court. The question before this Court is only whether each claim can be remanded based on the probate exception. The Magistrate Report, at 17, 32, ignores the difference between: (i) the NDIL's *discretionary* decision to let the DPC consider a challenge to the disclaimer, while retaining jurisdiction to make a final determination over this claim; and (ii) the existence of federal subject matter jurisdiction to hear this claim, a question that the NDIL has already answered affirmatively.

Report cites two pre-*Marshall* cases from the Tenth Circuit, which are no longer good law, neither of which involves issues of custody of assets.

### G. The Second Prong of the Marshall Test, *Approach A*, Is Not Satisfied: The Removed Claims Do Not Require the Federal Court to "Dispose of Property that Is in the Custody of a State Probate Court"

#### 1. The Probate Exception Applies Only where the Federal Court Would Have to Dispose of Estate Assets

This requirement comes directly from *Marshall*, 547 U.S. at 311-312 emphasis added):

> The probate exception… precludes federal courts from <u>endeavoring to dispose of property</u> that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

This requirement has been elaborated on in multiple circuit court decisions, including the Tenth Circuit in *Dunlap*, which explains that a claim "that does not dispose of property in the custody of a state probate court" is not subject to the probate exception "even though the federal judgment would be intertwined with and binding on those state proceedings." *Dunlap*, 771 F. Appx. at 850 (quoting *Lefkowitz*, 528 F.3d at 106). *See also id.*:

> [R]esolving a question that may affect the distribution of estate assets does not constitute a distribution of estate assets subject to the probate exception.

Other circuits have reached the same conclusion. See *Lee Graham Shopping Ctr., LLC*, 777 F.3d at 681 (4th Cir. 2015) (federal court can decide contract interpretation issue even though its decision could affect the state court's distribution of estate assets); *Lefkowitz v. Bank of New York*, 528 F.3d at 106 (quoted in *Dunlap*); *U.S. v. Tyler*, 528 F. Appx. 193, 197 (3d Cir. 2013) (probate exception is not implicated because "[t]he district court's judgment did not remove any property from the probate court's control"); *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1253 (9th Cir. 2017) (probate exception does not

apply: dispute over subrogation rights in removed medical malpractice action does not dispose of property in state court's control); *Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008) (probate exception is not implicated because there is no disposition of property).

Adjudication of rights to property is not considered disposal of that property, and thus is outside the probate exception, even if that adjudication will bind the probate court and thus affect how the probate court distributes property. *Dunlap*, 771 F. Appx. at 850. The federal court is permitted to act when the plaintiff seeks "merely to establish ... a right to share in [the settlement funds]." *United States v. Bank of N.Y. & Tr. Co.*, 296 U.S. 463, 478 (1936). "[T]he principle ... that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other ... has no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right of his interest as a basis of a claim against a fund in the possession of a state court." *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939). See also *Dunlap*, 771 F. Appx. at 850; *Goncalves*, 865 F.3d at 1254; *Lefkowitz v. Bank of New York*, 528 F.3d at 106

### 2. None of the Eight Claims Would Require the Federal Court to Dispose of Assets in the Conservatorship Estate

None of the eight claims would require the federal court to dispose of assets in the conservatorship estate. Thus, all would be outside the probate exception, even if the DPC had custody of the trust assets.

*Claims #1, 7, and 8.* As discussed further in the next section, these claims seek to add assets to the conservatorship estate. None of them seeks to dispose of assets in the conservatorship estate.

Moreover, Claim #7 seeks to move assets <u>into</u> the custody of the probate court <u>from</u> the federal court custody; this is the opposite of *Marshall*'s concern that the federal court

should not dispose of assets in probate court custody.[38]  The probate exception only covers attempts to move assets from state court custody to federal court custody, not in reverse, as is happening here.

*Claims 2-6 (*suspend-trustee claims).  These would not move assets at all. *Marshall* requires "dispos[al] of property that is in the custody of a probate court", and "disposal" requires the movement of assets. *Marshall*, 547 U.S. at 312.

## H.  The Second Prong of the Marshall Test, *Approach B,* Is Not Satisfied for the Three Claims That Would Bring Assets into the Probate Estate

### 1.  Claims that Bring Assets into an Estate Are Outside the Probate Exception

A series of post-*Marshall* cases hold that the probate exception does not apply to claims that would bring assets <u>into</u> the state court's custody.  This is a natural consequence of the *Marshall* requirement that the disputed assets must already be in probate court custody. Assets that the plaintiff wants to bring into the state court's custody are not currently in the state court's custody; thus, the federal court action cannot dispose of assets within that custody.

This principle has been broadly recognized at both the circuit and district court levels.  *See Jiminez v. Rodriguez-Pagan*, 597 F.3d 18, 24 (1st Cir. 2010):

> [N]either the money nor the apartment are yet part of the decedent's estate, neither are yet in the custody of a Puerto Rico probate court. Indeed, the very relief sought here is enlargement of the decedent's estate through assets not currently within it.  While divvying up an estate falls squarely within the probate exception, merely increasing it does not.

Likewise, in *Gustafson v. zumBrunnen,* 546 F.3d 398, 400 (7th Cir. 2008), the court held that the probate exception did not apply because "the judgment sought would just add assets to the decedent's estate."  Many lower courts apply this rule.[39]

---

[38]  As noted above, this claim is also barred by an NDIL order.

[39]  *In re Emerald Casino, Inc.*, 223 F. Supp. 3d 740, 746 (N.D. Ill. 2016) ("the cases do appear to establish as a general principle that the court's jurisdiction extends to any matter that would add assets to [an] estate," as long as how the estate is then distributed is left to the probate court); *Capponi v. Murphy*, 772 F.Supp. 2d 457, 466 (S.D.N.Y. 2009) (probate exception does not apply "because plaintiff seeks 'new money to be paid into the Estate"); *Est. of Brown v. New York Life Ins. Co.*, 2018 WL 1630958, at *7 (W.D. La.), *report and recommendation adopted*, 2018

### 2. All Eight Claims Either Seek to Bring Assets into the Probate Estate, or Have Nothing to Do with Estate Assets

Of the eight claims, claims 1, 7, and 8 seek to add assets to the conservatorship and thus are outside the probate exception for this reason; the other five claims do not involve any movement of assets, and thus are outside the probate exception because they do not dispose of assets in probate court custody.

*Claim #1* seeks personal damages against a trustee for the breach of fiduciary duties. If this claim succeeds, it would at best add money to the probate estate (here, conservatorship). Thus, it's outside of the probate exception.

*Claims #2 through #6* (trustee-suspension claims) do not involve adding assets to the conservatorship. But neither do they involve disposal of estate assets. Thus, they are outside the probate exception.

*Claim #7* seeks an order against Respondent to transfer the custody of the disputed assets from the NDIL to the DPC. This claim explicitly seeks to add assets to the estate (conservatorship), and thus, it is not covered by the probate exception. This claim also seeks to move assets <u>into</u> the custody of the probate court <u>from</u> the federal court custody; this is the opposite of *Marshall*'s concern that the federal court should not dispose of asset in probate court custody.

---

WL 1630947 (W.D. La.) (probate exception does not apply to "a suit that seeks to add assets to the decedent's estate"); *Groman v. Cola*, 2007 WL 3340922, at *5 (S.D.N.Y.) (distinguishing instances in which the probate exception would not apply because plaintiff seeks " 'new money' to be paid into the Estate," from those where the probate exception would apply because the plaintiff seeks "existing money to be distributed out of the Estate"); *Browder v. Browder,* 2022 WL 2116577, at *3 (S.D. Ind.) ("Both of Ms. Browder's legal theories seek to add property to the estate … so the probate exception doesn't apply on that basis." (quotations omitted)); *Popple v. Crouse,* 2007 WL 2071627, at *2 (D. Conn.) (probate exception does not apply where a plaintiff seeks to recover assets to add them to the estate); *Sinclair v. Sampson*, 2017 WL 758486, at *2 (D.R.I.), *report and recommendation adopted,* 2017 WL 750479 (D.R.I.) ("divvy up an estate falls squarely within the probate exception, merely increasing it does not" (quotations omitted)); *Wolfram v. Wolfram*, 78 F. Supp. 3d 758, 764 (N.D. Ill. 2015) ("fiduciary-breach claims are safe from the probate exception"; federal courts may "take jurisdiction over claims that would add assets to an estate currently undergoing probate"); Est. of *Maier v. Goldstein*, 2017 WL 5569809, at *5 (N.D. Ill.) ("If … the assets need to be added to the estate they are, of course, not currently a part of the estate and so not (yet) under control of the probate court."); *Popple v. Crouse*, 2007 WL 2071627, at *2 (D. Conn.) (claims for breach of fiduciary duty, conversion, and theft were outside the probate exception because they sought to add assets to the estate); *Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 215 (D.S.C. 2019) (claims that add assets to estate do not implicate the probate exception); *Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 534 (S.D.N.Y. 2010) ("Requests to return property to an estate or trust, rather than to dispose of property currently part of an estate or trust, do not fall within the probate exception"); *Abercrombie v. Andrew Coll.,* 438 F.Supp.2d 243, 255–56 (S.D.N.Y.2006) (claim did "not ask the [c]ourt to decide how to distribute any assets of [decedent's] estate, but only to determine whether additional assets ... should be added to the estate, thus making the probate exception inapplicable").

*Claim #8* seeks to reverse the disclaimer. If this succeeds, the assets would be added to the estate (conservatorship).  Thus, it is outside the probate exception.

## I.  The Second Prong of the Marshall Test, *Approach C*, Is Not Satisfied: The Removed Claims Do Not Require the Federal Court to Exercise *In Rem* Jurisdiction, Because They Can Be Resolved via *In Personam* Jurisdiction

### 1.  The Probate Exception Applies Only when the Federal Court Cannot Use In Personam Jurisdiction to Resolve Claims

The second prong of the two-step *Marshall* test asks whether, to resolve a claim, the federal court is required to exercise *in rem* rather than *in personam* jurisdiction. If a claim could have been brought under *in personam* jurisdiction, the probate exception does not apply. This rule also comes directly from *Marshall*, 547 U.S. at 311-31: "the general principle [behind the probate exception] is that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*.". *See also Goncalves*, 865 F.3d at 1253.

### 2.  Federal Law Determines Which Claims Are In Personam versus In Rem

To determine whether the federal action could be filed *in personam* (and thus is outside the probate exception), or only *in rem* (and thus potentially within the probate exception, if it involves property in the state court's custody), some pre-*Marshall* cases apply state law.  *Marshall* rejects this approach and clarifies that state court determinations as to the nature of their own jurisdiction do not affect federal jurisdiction, which turns on federal law.  See Marshall, 547 U.S. at 314:

> Directly on point, we have held that the jurisdiction of the federal courts, "having existed from the beginning of the Federal government, [can]not be impaired by subsequent state legislation creating courts of probate." *McClellan v. Carland,* 217 U.S. 268, 281 (1910).

Thus, a state court's decision to treat a claim as *in personam* versus *in rem* has no effect on how a federal court resolves this issue.  A clear example of this principle, where state jurisdiction was *in rem* but federal jurisdiction was held to be *in personam* even though it affected probate assets, is *U.S. v. Tyler*, 528 F. Appx. 193, 197 (3d Cir. 2013), where the government sought to enforce a tax

claim against property within a decedent's estate. The Third Circuit ruled that this claim was a judgment *in personam* against the executors. *See also Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6t<sup>th</sup> Cir. 2015):

> *[Marshall]* firmly rejected the proposition that a federal court's subject-matter jurisdiction is dependent upon state law. . . . We therefore look to only federal law to determine whether the probate exception to federal diversity jurisdiction applies.

### 3. All Claims in the Current Case Seek to Determine Personal Rights and Obligations of Parties, Thus All Can Be Resolved Based on In Personam Jurisdiction

"[W]here a party initiates an action merely to 'determine the personal rights and obligations of the [parties],' the court asserts *in personam* jurisdiction." *Hanover Ins. Co.*, 68 F.Supp.3d at 1109 (quoting *Pennoyer v. Neff*, 95 U.S. 714, 727, (1877)). See also *United States v. Bank of New York & Tr. Co.*, 296 U.S. 463, 478 (1936) (suits seeking "to establish … a right to share in property, and thus to obtain an adjudication which might be had without disturbing the control of the state court" are *in personam*); *Commonwealth Tr. Co. of Pittsburgh v. Bradford*, 297 U.S. 613 (1936) (determination of rights to trust funds was not *in rem* because it sought "only to establish rights" rather than dispose of property); *Goncalves*, 865 F.3d at 1254 ("It is well settled that [actions seeking to establish a right with respect to assets] are properly classified as *in personam*. *See Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466…").[40] A federal court "may proceed to judgment *in personam*, adjudicating rights in the *res* and leaving the *in personam* judgment to bind as *res judicata* the court having jurisdiction of the *res*." *Id.* at 1253.

Each claim in the current case involves only establishing parties' rights with respect to assets, not distribution of assets out of the probate court custody (and the probate court has no

---

[40] See also *see also* In Personam, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining an action *in personam* as one "brought against a person" that "can be enforced against all the property of the judgment-debtor").

custody in the current case anyway). Numerous Supreme Court decisions make it clear: these claims can be brought as *in personam* claims; they are therefore outside the probate exception.

The Magistrate Report does not address this line of the Supreme Court decisions. Instead, it repeatedly says that the DPC has *in rem* jurisdiction over trust assets. But this is irrelevant. It is also irrelevant whether some of the claims could be brought in federal court via *in rem* jurisdiction.[41] The question, under *Marshall*, is whether the federal court is <u>required</u> to exercise *in rem* jurisdiction to resolve each claim, or whether it <u>can</u> exercise *in personam* jurisdiction. The Magistrate Report does not list a single reason for why *in personam* jurisdiction is not available for any claim, and concludes for Claim #1, that it is available.

### 4. All Claims Can Be Brought Under In Personam Jurisdiction

All of the removed claims can be brought based on *in personam* jurisdiction and thus are outside of the probate exception, even if some could also be brought *in rem*.

*Claim #1* seeks personal damages against a trustee for breach of fiduciary duties. *Marshall* holds that a claim for damages is *in personam* and outside the probate exception.[42] Many circuit courts expressly held that claims for damages for breach of fiduciary duty against trustees and executors are *in personam*.[43]

---

[41] For example, as discussed below, the trustee suspension claims can be based on *in personam* jurisdiction over the trustees. It is thus not relevant whether they could also be based on *in rem* or *quasi in rem* jurisdiction.

[42] *Marshall*, 547 U.S. at 312 ("Vickie seeks an *in personam* judgment against Pierce")

[43] See *Lefkowitz v. Bank of New York*, 528 F.3d 102, 108 (2d Cir. 2007) (The probate exception can no longer be used to dismiss 'widely recognized tort[s]' such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court.); *Glassie v. Doucette*, 55 F.4th 58, 68-69 (1st Cir. 2022) (damages claim for breach of fiduciary duty against executor is outside probate exception); *Three Keys Ltd v. SR Utility Holding Co.*, 540 F.3d 220, 229 (3d Cir. 2008); Wisecarver v. Moore, 489 F.3d 747, 750 (6th Cir. 2007); *Jones v. Brennan,* 465 F.3d 304, 307–308 (7th Cir.2006)**;** *McAninch v. Wintermute*, 478 F.3d 882, 890 (8th Cir. 2007); Critchlow v. Critchlow, 617 F. Appx. 664, 665 (9th Cir. 2015) (claim for breach of fiduciary duty is outside probate exception); *Curtis v. Brunsting,* 704 F.3d 406, 409 (5th Cir. 2013) (same); *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1356 (11th Cir. 2021).

*Claims #2-6* seek suspension of trustees. Trustee removal/suspension claims are routinely based on personal jurisdiction over the trustees.[44] Trustee suspension is an action "to determine the personal rights and obligations of the [parties]", *Hanover Ins. Co.*, 68 F.Supp.3d at 1109 (quoting *Pennoyer v. Neff*, 95 U.S. 714, 727, (1877)); and therefore is the type of action for which "the court asserts *in personam* jurisdiction." *Id.* Indeed, Plaintiff or her conservator have already brought claims to remove Bernard and Samuel as SNT trustees multiple times outside the DPC, based on *in personam* jurisdiction.[45]

*Claim #7* seeks an order to compel Respondent to transfer custody of the trust assets from the NDIL to the DPC. This claim seeks to compel action from Respondent, and thus relies on *in personam* jurisdiction over Respondent, and is outside the probate exception. Moreover, the requested relief would bring money into the estate, such an action cannot be based on *in rem* jurisdiction over that estate; and requires *in personam* jurisdiction.

*Claim #8* seeks to reverse the disclaimer. This is an *in personam* action, despite its appearance. Reversal of the disclaimer does not move any assets. It only "determine[s] the personal rights and obligations of the [parties]" with respect to assets. *Hanover Ins. Co.*, 68 F.Supp.3d at 1109 (quoting *Pennoyer v. Neff*, 95 U.S. 714, 727, 5 Otto 714, 24 L.Ed. 565 (1877)). *Pennoyer* held that such actions are *in personam*.

In sum, all of the claims are outside the probate exception because all can be brought based on *in personam* jurisdiction.

## J. The Magistrate Report Relies on Pre-*Marshall* Doctrine on the Probate Exception

The Magistrate Report does not cite *Dunlap* or other post-*Marshall* circuit court cases that develop the two-step test. Instead, it cites two pre-*Marshall* cases from the Tenth Circuit, *Beren v. Repfogel*, 24 F.3d 1226, 1228-29 (10th Cir. 1994) and *Cassity v. Pitts*, 995 F.2d 1009, 1011 (10th Cir. 1993), which are no longer good law.

*Beren* applies the probate exception to a fraud claim against trustees. It relies on the old rule from *Markham v. Allen,* 326 U.S. 490, 494 (1946) that federal courts should "not interfere

---

[44] See *Chevalier v Estate of Barnhart*, 803 F.3d 789, 802 (6th Cir. 2015) (*in personam* action is "[a]n action brought against a person rather than property."); Bogert's, *The Law of Trusts and Trustees* § 523 ("The jurisdiction of the court to remove a trustee may be predicated on power over either the trust property or the parties.").

[45] See discussion of these prior efforts in Part IV.B *infra*.

with the probate proceedings"; *Marshall* called that rule "incoheren[t]" and expressly overruled it. *Marshall*, 547 U.S. at 311. Likewise, *Cassity* bars a tort action, brought personally against trustees for fraud. This too is directly contrary to *Marshall*, which held that the probate exception allows damages claims against trustees and executors, and only bars actions that "dispose of property that is in the custody of a state probate court." 547 U.S. at 296. Both cases also rely on a unique Oklahoma statute to determine whether federal jurisdiction would be *in rem*. *Marshall* rejects that approach too, 547 U.S. at 314, holding that federal law determines this issue.[46]

The Magistrate Report cites only two post-*Marshall* circuit cases on the probate exception, neither from the Tenth Circuit: one for the proposition that the probate exception may potentially apply to conservatorships and can bar removal of a guardian, *Struck v. Cook County Public Guardian*, 508 F.3d 858, 860 (7th Cir. 2007), and the other applying the probate exception to a request for an accounting for a testamentary trust which was within probate court custody and was being actively managed by that court as part of a decedent's probate proceeding, *Mercer v. Bank of N.Y. Mellon, N.A.*, 609 F. Appx. 677, 678–79 (2d Cir. 2015). Neither is relevant here. The removed claims do not seek to replace Joanne's conservator, nor do they seek an accounting. The Magistrate Report does not cite the many post-*Marshall* circuit court cases, discussed above, which define the boundaries of the probate exception.

## K. Summary of Removed Claims and Probate Exception Requirements

Table 1 summarizes each claim and indicates how the four requirements for the probate exception discussed above would apply to it. Per *Marshall*, the probate exception does not

---

[46] Both cases are also distinguishable. *Beren* involved a challenge to will validity, which was within the probate exception. *Cassity* involves an action seeking to distribute "various trust properties" from the probate court's custody; there is no similar claim here.

apply, unless: (1) the state court already has custody of assets, and (2) the federal court must endeavor to dispose of assets in state court custody;  and (3) the federal court must act *in rem* and cannot resolve the claim *in personam*; and (4) the federal action must not merely add assets to the estate. Each of the eight claims fails to satisfy at least three of the four requirements.

### Table 1.  Summary of the Probate Exception for the Removed Claims

Table lists the 8 claims brought in the current case and aspects of each relevant to whether remand is proper: (1) does the DPC have custody of the relevant assets (here, the assets of the SNT and the Issue Trust); (2) would the claim require the federal court to dispose of assets in probate court custody; (3) would the federal court be required to exercise *in rem* jurisdiction to resolve the claim, or could act *in personam*; and (4) would the claim merely add assets to the conservatorship estate.  The probate exception would apply only for claims for which columns (1)-(3) are "yes" and column (4) is "no" or "n.a."

| | | (1) | (2) | (3) | (4) |
|---|---|---|---|---|---|
| Claim | Against | DPC Has Custody Over Relevant Assets | Requires Federal Court to Dispose of Estate Assets | Requires Federal Court to Use *In Rem* Jurisdiction | Would Add Assets to Conservatorship |
| 1. Damages against Samuel as SNT trustee | Samuel as SNT trustee | No | No | No | Yes |
| 2. Suspend Bernard as Issue Trust Trustee | Bernard as Issue Trust Trustee | No | No | No | n.a. |
| 3. Suspend Samuel as Issue Trust trustee | Samuel as Issue Trust trustee | No | No | No | n.a. |
| 4. Suspend Samuel as SNT trustee | Samuel as SNT trustee | No | No | No | n.a. |
| 5. Suspend Samuel as 2013 Trust trustee | Samuel as 2013 Trust trustee | No | No | No | n.a. |
| 6. Suspend Bernard as 2013 Trust trustee | Bernard as 2013 Trust trustee | No | No | No | n.a. |
| 7. Order Bernard to deposit trust assets with DPC | Bernard and Samuel as SNT and Issue Trust trustees | No | No | No | Yes |
| 8. Reverse disclaimer | Unclear | No | No | No | Yes |

## IV. Additional Claim-by-Claim Analysis to Decide Whether the Probate Exception Applies

This section IV provides additional support, including factual details, for why the probate exception does not apply to each of the removed claims, and engages with statements made and cases cited in the Magistrate Report. To the extent that the Court is satisfied that the probate exception does not apply to any of the claims, it does not need to read this section.

### A. Claim #1 –Damages Claim Against Samuel Black

#### *1. Summary of Why Probate Exception Does Not Apply*

For damages claim against Samuel Black, as SNT Trustee, none of the four *Marshall* requirements is satisfied. For all claims, the DPC lacks custody over relevant assets. Even if the DPC had custody, this claim would not require the federal court to dispose of any assets in the custody of the DPC. Further, any damages would add assets to the conservatorship, rather than remove assets. Finally, a damages claim can be brought *in personam*, as *Marshall* directly holds. The damages award will be paid personally by the trustee.

The damages claim against Samuel is similar to the tortious interference claim in *Marshall*, which sought damages based on the defendant's actions in a probate proceeding. In the current case, Plaintiff's damages claim asserts that she had to incur legal fees to defend against actions brought in Illinois by Bernard and Samuel, as majority SNT trustees.[47] This will not do. As stated by the Second Circuit in *Lefkowitz v. Bank of New York*, 528 F.3d 102, 108 (2d Cir. 2007), following *Marshall*'s narrowing of the probate exception:

> The probate exception can no longer be used to dismiss 'widely recognized tort[s]' such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court.

---

[47] Plaintiff's Motion before DPC (Nov. 4, 2022) (doc. 1, att. 1), at 20-22.

Other circuits are unanimous in following *Marshall* and holding that a breach of fiduciary duty claim seeking damages against a trustee or executor is not covered by the probate exception.[48]

Plaintiff and her conservator have already sought unsuccessfully sought damages in Illinois state court against Bernard and Samuel as SNT trustees, for breach of fiduciary duty, invoking only personal jurisdiction.[49] Manifestly, the conservator did not believe that this was an *in rem* claim, or that only the DPC could address it.

In a related case in the EDNY, Issue Trust beneficiaries sued minority SNT trustee Anthony Dain for breach of fiduciary duties. Dain argued that the probate exception barred a claim for damages against him for breach of fiduciary duty. He lost. The EDNY ruled that an action seeking personal damages against a trustee was not within the probate exception, citing *Marshall*.[50] So too here. The only difference is that here the damages claim is against a different SNT trustee, Samuel.

### 2. Removal is Not Discretionary: the Federal Court Cannot Remand this Claim Because Federal Subject Matter Jurisdiction Exists

The Magistrate Report, at 33, basically concedes that the damages claim against Samuel is outside the probate exception:

> This [claim] could be characterized as an independent, *in personam*, claim against Samuel for breach of fiduciary duty causing damage to the conservatorship estate which, under the logic of *Marshall*, would not necessarily implicate the probate

---

[48] See, e.g., *Glassie v. Doucette*, 55 F.4th 58, 68-69 (1st Cir. 2022) (damages claim against executor is outside probate exception); *Three Keys Ltd v. SR Utility Holding Co.*, 540 F.3d 220, 229 (3d Cir. 2008); Wisecarver v. Moore, 489 F.3d 747, 750 (6th Cir. 2007); *Jones v. Brennan,* 465 F.3d 304, 307–308 (7th Cir.2006)**;** *McAninch v. Wintermute*, 478 F.3d 882, 890 (8th Cir. 2007); Critchlow v. Critchlow, 617 F. Appx. 664, 665 (9th Cir. 2015) (probate exception does not apply to claims for breach of fiduciary duty); *Curtis v. Brunsting,* 704 F.3d 406, 409 (5th Cir. 2013) (claim for breach of fiduciary duty outside probate exception); *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1356 (11th Cir. 2021).

[49] *Goodwin v. Black*, Case 2018-CH-00563 (Circuit Court for Cook County, Illinois, Chancery Division). See Complaint ¶ 4 ("This Court has personal jurisdiction over Defendants . . . .").

[50] Black v. Dain, Case 1:16-cv-01238 (E.D.N.Y.), Order on Motions to Dismiss at 14-17 (Aug. 16, 2018).

exception. The federal court arguably could retain jurisdiction over such a claim if it were filed independently.

This is not just "arguable" – it is required by *Marshall* and confirmed by decisions of multiple circuit courts. This claim must stay in federal court. The Magistrate Report, at 34, develops prudential and procedure arguments for remanding. Those arguments are irrelevant. The federal court has no discretion to remand a removed claim for which it has subject matter jurisdiction. The <u>only relevant question</u> is whether the probate exception applies to this claim, assessed separately from the other removed claims.

The first reason offered by the Magistrate Judge for remand is that Samuel's actions:

> are intimately related to the ongoing conservatorship. Samuel's actions as trustee of the trusts that contain conservatorship assets arguably damaged the conservatorship. Removing just a discrete claim against Samuel from an ongoing conservatorship proceeding runs counter to the principle that parties may not parse out certain claims for removal while leaving other parts of a case behind. Claims against Samuel are supplemental to the ongoing conservatorship proceeding.

Respondent did not "parse out certain claims for removal.". The removal petition includes all eight claims in the DPC Pleading; there are no other active claims before the DPC against anyone. Moreover, whether removal was procedurally proper is no longer relevant; procedural objections to removal have been waived. This quote also invokes prudential considerations – the damages claim is related to other claims before the DPC. The *Marshall* court rejected such considerations, and adopted a hard, narrow rule as to when the probate exception applies. When the exception does not apply, the federal court lacks discretion; it must hear all claims within its jurisdiction.

### 3. Samuel Consented to Removal, and Procedural Challenges to Removal Are Waived

The second reason the Magistrate Report offers for remand of Claim #1 is that:

Samuel has not appeared. . . . [Respondent] is not authorized to act as an attorney on behalf of Samuel. Thus, there is no basis to treat the purported claim against Samuel as having been properly removed.

This objection goes to removal procedure. Respondent removed, on behalf of all defendants, *with their consent*, in a manner he believes was procedurally proper. But in any case, procedural objections to removal have been waived. Co-defendant consent to removal is a procedural issue, as the Tenth Circuit stated in *Farmland National*, 98 F. Appx. at 755. Other circuits concur.[51]

In sum, the damages claim against Samuel Black is an *in personam* claim, does not dispose of any assets in the custody of a state probate court; all procedural objections are waived, and the claim must remain removed.

## B. The Trustee Suspension Claims (Claims #2 through #6)

### 1. Summary of Why the Suspend-Trustees Claims Are Outside the Probate Exception

For these claims, one of the probate exception requirements discussed above is irrelevant (does the claim add assets to the probate estate). None of the other three are satisfied. As is the case for all claims, the DPC lacks custody over relevant assets. Even if it had custody, these claims manifestly would not require the federal court to dispose of estate assets. Moreover, they can be brought based on *in personam* over the trustees, and thus do not require the federal court to exercise *in rem* jurisdiction.

---

[51] *See. e.g.*, *Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3rd Cir.1994) ("[f]ailure of all defendants to join is a 'defect in the removal procedure' within the meaning of 1447(c), but is not deemed to be jurisdictional."); *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 423 (5th Cir.1990) ("failure to join all the defendants in a removal petition is not a jurisdictional defect"); *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 455 (7th Cir. 2005) ("The requirement [that all defendants join in removal] is not a jurisdictional defect and hence is waivable."); *In re Ocean Marine Mut. Protection & Indem. Ass'n, Ltd.*, 3 F.3d 353, 356 (11th Cir.1993) (failure to comply with rules requiring all defendants to join in removal constitutes a defect in removal procedure).

***2. The Suspend-Trustee Claims Can Be Brought In Personam; Plaintiff Is Precluded from Arguing that These Claims Can Only Be Brought In Rem Because Plaintiff Repeatedly Brought them In Personam in the Past***

There is no reason why hearing the claims against trustees, either for damages or for suspension, would require the federal court to exercise *in rem* jurisdiction over the trust corpus, as opposed to *in personam* jurisdiction over the trustees. It is irrelevant whether such claims <u>could</u> be brought *in rem*. If a claim can be brought *in personam*, it is outside the probate exception. The Magistrate Report never addresses this issue.

Plaintiff and her conservator have already sought trustee removal several times in other courts, relying each time on *in personam* jurisdiction. She sought removal in New York state court in 2016,[52] and again in Illinois state court in 2018.[53] These claims failed, for a good reason – there is no evidence that Bernard and Samuel ever harmed the family trusts. Plaintiff sought yet again to suspend Bernard and Samuel as SNT trustees before the NDIL; this claim is pending.[54] Plaintiff's current action is thus her fourth attempt to get the same remedy.

The DPC has recognized that trustee removal (and thus, trustee suspension) can be sought based on *in personam* jurisdiction. In 2017, the DPC ordered that an action be brought in another court seeking to remove Bernard as SNT Trustee.[55] The DPC repeated this demand in 2019.[56]

---

[52] Motion by Joanne Black (March 14, 2016) in *In the Matter of the Application of Bernard Black for the Appointment of a Guardian of the Person and Property of Joanne Black*, Index No. 80253/2014 (N.Y. Supreme Court for Richmond County) (seeking "an Order removing Bernard Black and Samuel Black as [SNT] trustees").

[53] Complaint, Jeanette Goodwin, as Conservator for Joanne Black, v. Bernard Black et al., Case 2018 CH-00563 (Chancery Court for Cook County, Ill. (Jan. 16, 2018).

[54] Answer and Counterclaim by Anthony Dain and Jeanette Goodwin in Interpleader Case at 45 (Aug, 18, 2018) (doc. 32) , and similar First Amended Counterclaims and Crossclaims (Dec. 30. 2021) (doc. 219).

[55] DPC Order (Nov. 3, 2017), ("The Court further ORDERS that it shall be advised regarding all actions that are pending regarding removal of Bernard Black as [SNT] trustee and if none are pending, an explanation as to why no such actions have been initiated").

[56] Transcript of DPC hearing (Oct. 3, 2019), at 11.

In the Interpleader Case, Dain and Joanne's conservator has sought an order declaring that minority SNT trustee Dain has the sole right to access or control over the funds in the SNT."[57] Manifestly, they view this relief, equivalent to suspension, as within the *in personam* jurisdiction exercised by the NDIL. The NDIL permitted Plaintiff to seek to suspension of Samuel as SNT trustee in the DPC because "the DPC can issue a decision . . . without going so far as touching the interpleader assets."[58] For the same reasons, a federal court can address trustee suspension without "touching the interpleader assets." This takes these claims outside the probate exception.

For purposes of the probate exception, as explained in *Chevalier v Estate of Barnhart*, 803 F.3d 789, 802 (6th Cir. 2015), an *in personam* action is "[a]n action brought against a person rather than property." The trustee-suspension claims are clearly brought against the trustees. Bogert's, *The Law of Trusts and Trustees* § 523, confirms that a decision to suspend or remove a trustee can be based on personal jurisdiction over the trustee.

> The jurisdiction of the court to remove a trustee may be predicated on power over either the trust property or the parties. . . . [I]f personal service is obtained on the trustee-defendant, the fact that the trust property is in another state does not interfere with the court's jurisdiction.

Similarly, a review of jurisdiction over trusts and trustees, for the American College of Trusts and Estates Counsel, states that actions seeking trustee removal are considered *in personam*:[59]

---

[57] Dain and Goodwin Answer and Counterclaim (Aug. 17, 2018), Claim for relief (b); Dain and Goodwin First Amended Counterclaims and Crossclaims (Dec. 30, 2021), claim for relief (b).

[58] NDIL Order in Interpleader Case (Sept. 27, 2021) (doc. 251).

[59] Rohan Kelley, *Jurisdiction for Probate and Trust Proceedings* (2020), at 3, https://floridafellowsinstitute.org/wp-content/uploads/2020/01/ACTEC-Florida-Institute-Jurisdiction-Estates-and-Trusts-min.pdf ( ("Some examples of trust-related actions that are *in personam* include those: . . . To remove a trustee.".)

To be sure, as stated in Bogert's § 523, trustee removal can also be sought based on *in rem* jurisdiction over trust assets. But the probate exception only bars federal courts from acting if, from the two-part test quoted above (emphasis added), this "would <u>require</u> the federal court to assume *in rem* jurisdiction over that property." Respondent is not aware of any post-*Marshall* cases that apply the probate exception where the federal court could act based on *in personam* jurisdiction, because the court might have also relied on *in rem* jurisdiction over assets.

### 3. *Response to the Magistrate Report*

The Magistrate Report, in its brief discussion of the probate exception at 32-33: (i) fails to address whether the DPC has custody of the trust assets; (ii) fails to conduct a claim-by-claim analysis; (iii) does not discuss the suspend-trustee claims separately from the other claims; and (iv) offers no argument and cites no cases for why the <u>federal court</u> could not suspend trustees based on *in personam* jurisdiction over the trustees.

The Magistrate Report cites a related case of this family saga, *Black v. Dain*, 2017 WL 11696660 (E.D.N.Y.). Magistrate Report at 18. In that case, other beneficiaries of the Black family trusts brought a case against SNT trustee Anthony Dain, seeking, among other things, (1) damages against Anthony Dain for the breach of fiduciary duties, (2) the removal of Dain as an SNT trustee; and (3) to use trust assets to pay trusts' legal fees. Judge Amon allowed the claim for damages against trustee Dain to go forward, but held that the probate exception prevented her from removing a trustee or accessing trust assets, writing that "The key issue in the jurisdictional analysis is whether plaintiffs' claims concern the *res* that another state controls." *Id.* at *9.

First, there is a critical difference between the EDNY decision and the current case. The EDNY decision was issued in 2017, before the NDIL acquired custody of the trust assets in 2018.

Perhaps the EDNY assumed that the DPC had custody over the trust assets; more likely it never addressed this issue. In any event, the DPC clearly lacks custody today. The probate exception does not apply where there are no assets in the custody of a state probate court.

Second, the EDNY erred. It used the broad standard, "concern the *res*", which is overruled by *Marshall*. Under *Marshall*, 547 U.S. at 312, the federal court action must seek to "<u>dispose of</u> property in the <u>custody</u> of a state probate court." Suspending trustees does not dispose of property. The EDNY decision also did not address the *Marshall* requirement that the <u>federal court</u> would need to exercise *in rem* jurisdiction over assets in probate court custody. Yet the removal claim against Dain was based on *in personam* jurisdiction.

The Magistrate Report cites *Struck v. Cook County Public Guardian*, 508 F.3d 858 (7th Cir. 2007), but *Struck* is inapposite. *Struck* involves an action by a son to remove a guardian appointed for his mother by a state court; the action was a de facto attempt to overrule a state court decision. In contrast, the claims brought before this Court are not seeking to uproot any decisions made by a state probate court. There are also no claims currently pending before the DPC, except this removed action. Further, in *Struck*, the *res* was the mother; the state court's only exercise of custody over *res* was the appointment of a guardian. It was impossible to remove the guardian without de facto overruling the state court's exercise of custody over that *res*. But the trustee suspension claims in this case are independent from the DPC's custody over trust assets (which it does not have anyway). Thus, the normal *Marshall* rule applies: claims that do not require a federal court to dispose the assets in state court custody are outside the probate exception.[60]

---

[60] The analogy to *Struck* in this case would be a federal court action seeking to remove Jeanette Goodwin as Joanne's conservator. The Magistrate Report also cites *Mercer v. Bank of New York Mellon N.A.*, 609 F. Appx. 677 (2d Cir. 2015). This case did not involve removal or suspension of trustees.

## C. Claim #7 (Seeking Order to Turn Over Assets)

### 1. Summary of Why The Asset-Turnover Claim Is Outside the Probate Exception

As discussed above, the probate exception applies only to assets in state court custody. The claim for asset turnover, however, involves assets in NDIL custody.  Indeed the whole point of this claim is for the DPC to obtain that custody.  This claim would also not dispose of assets in state court custody, even if the DPC had custody. And the probate exception does not apply to claims that would bring additional assets into an estate, which asset turnover would do.

The claim for asset turnover is also an *in personam* claim, directed to Bernard Black.  Any action to move trust assets can be taken only by the trustees of these trusts.  As Bogert's, the Law of Trusts and Trustees § 292 explains (emphasis in original):

> *Personal* jurisdiction over the trustee or other party defendant will be necessary to impose a personal liability or obligation on the defendant by an in personam decree.

There is a strong analogy to claims for specific performance.  See *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 802 (6th Cir. 2015) (claim for specific performance involving an estate asset is outside the probate exception because it is *in personam*).  So too here, because the transfer-assets claim seeks to compel performance by Bernard Black.

Even if this claim could have been brought *in rem*, it can clearly be brought *in personam*. The availability of *in personam* jurisdiction defeats the probate exception.

### 2. Remand is Improper because the Asset Turnover Claim Violates an NDIL Order

Chase Bank filed the Interpleader Case in the NDIL in 2018 in response to the conflict between DPC orders and orders by other courts.  This filing placed the trust assets in the NDIL's custody.  To block efforts to move assets from its custody, the NDIL also issued an order that:

preclude[s] any party from seeking to enforce any court order requiring, or otherwise seek to effectuate, any turnover or withdrawal of the interpleader assets from the accounts held by [Chase Bank], without *first* filing a motion with this Court seeking approval for such withdrawal.[61]

Plaintiff filed the current action without seeking or obtaining NDIL approval, in direct violation of this. The asset-turnover claim violates a commitment made by Joanne's Illinois counsel to the NDIL that no such relief had been or would be sought.[62] This Court should not reward Plaintiff for violating a federal order by returning her to her preferred forum, the DPC.

### 3. *Response to the Magistrate Report*

The Magistrate Report states, at 32, that the NDIL "recognized that the Denver Probate Court has subject matter jurisdiction over the conservatorship and issues that concern the conservatorship *res*". This is both irrelevant and misleading. It is irrelevant because DPC's jurisdiction over the conservatorship does not preclude federal jurisdiction over the removed claims. It is misleading because in this same opinion, the NDIL specifically confirmed its own jurisdiction and held that the probate exception does not apply.[63]

The Magistrate Report, at 32-33, says that the NDIL "has already abstained from deciding, and elected not to enjoin the Denver Probate Court from addressing, precisely the issues raised in the disputed motion." This misstates what the NDIL decided, and implies that the NDIL decision was based on the probate exception, when it was not. The NDIL decision addressed only two of the eight claims in the removed state action, claims #7 and #8, and concluded that the probate

---

[61] Minute order in Interpleader Case (N.D. Ill. June 19, 2019) [doc. 69] (emphasis added).

[62] Memorandum Opinion and Order (Sept. 29, 2021), 2021 WL 4459482, at *21 ("Joanne's counsel later made clear—repeatedly—that she did not seek any turnover of the Trusts' assets").

[63] *JPMorgan Chase Bank, N.A. v. Black*, 2021 WL 4459482, at *7.

exception did not apply, and that the NDIL had subject matter jurisdiction. The NDIL allowed

claim 8 (disclaimer reversal) to be brought before the DPC, and barred bringing claim 7 (turnover

of assets to the DPC).

The NDIL exercised its <u>discretion</u> under the interpleader statute to allow the DPC to

consider the disclaimer-reversal claim.[64]  It did so only because this would not impair the <u>NDIL's

own custody</u> of the trust assets: "the DPC can issue a decision . . . without going so far as touching

the interpleader assets."[65]  But in the same decision. the NDIL reiterated its prior decision not to

allow the transfer-assets claim to proceed.  The NDIL had this discretion under the interpleader

statute.  Removal, in contrast, is not discretionary.  The standard is solely whether the federal court

has subject matter jurisdiction to hear the removed claim.

For all of the foregoing reasons, the asset-turnover claim is outside the probate exception.

The NDIL has already considered and rejected a challenge to its jurisdiction based on the probate

exception. This decision should be treated here as "law of the case."

**D.  Claim #8 (Seeking to Reverse the Disclaimer)**

The eighth removed claim seeks to reverse the Disclaimer.  The basis for this claim is an

assertion that *New York law* required that the Disclaimer be filed with the New York probate court

overseeing Renata Black's will within 9 months of her death, but the Disclaimer was not filed.

DPC Pleading ¶¶ 8-22 (doc. 1, attach. 1).   The estate of Renata Black is a New York estate,

---

[64]  See 2021 WL 4459482, at *12 ("federal interpleader courts have discretion to dismiss or stay the case and "defer to state court proceedings for the sake of judicial administration and efficiency") (quoting *NY Life Distribs., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 380–81 (3d Cir. 1995)).

[65]  NDIL Order in Interpleader Case (Sept. 27, 2021) (doc. 251).

completely unrelated to the DPC. Manifestly, nothing ties this claim to the Colorado conservatorship or to the DPC's expertise in conservatorship matters.

### 1. *Summary: The Reverse-Disclaimer Claim is Outside the Probate Exception*

Joanne's challenge to the Disclaimer is pending before the NDIL in the Interpleader Case.[66] Joanne previously brought this claim in a New York guardianship proceeding, unsuccessfully.[67] Manifestly, this claim cannot <u>require</u> the federal court to exercise *in rem* jurisdiction, or else Joanne could not have brought it in these other courts. The NDIL has already determined that the probate exception does not apply to this claim. This decision should be treated here as law of the case: federal subject matter jurisdiction over the claim to invalidate the Disclaimer exists. The probate exception does not apply to the reverse-disclaimer claim for the following reasons:

(i) This claim does not involve assets within the custody of the DPC; instead, the relevant trust assets are within the NDIL's custody.

(ii) Similar to the transfer-assets claim, the reverse-Disclaimer claim does not seek to dispose of assets in the custody of a state court. Instead, it seeks to bring additional assets into the conservatorship estate.

(iii) This claim can be brought *in personam*, and Plaintiff already repeatedly brought it *in personam* in other courts. Plaintiff is now precluded from asserting that this claim can only be brought *in rem*.

(iv) the NDIL permitted Joanne to seek reversal of the disclaimer "because "the DPC can issue a decision regarding those matters without going so far as to touching the interpleader assets.""[68] But for the same reasons, a federal court can address the disclaimer issue "without . . . touching the interpleader assets." This takes this claim outside the probate exception.

---

[66] The relief sought in the Interpleader Case by Joanne's Colorado conservator, Jeanette Goodwin includes: "Order Bernard and Samuel (or Chase Bank and JPMS LLC) to deliver the assets of the SNT and IT to the Denver Probate Court's Registry for further proceedings, pursuant to the DPC's orders." First Amended Counterclaims and Crossclaims by Anthony Dain and Jeanette Goodwin (Dec. 30, 2021), request for relief (d).

[67] Motion by Joanne Black (March 14, 2016) in *In re Application of Bernard Black for the Appointment of a Guardian of the Person and Property of Joanne Black*, Index No. 80253/2014 (N.Y. Supreme Court, Richmond County) ("NY Guardianship Case") (seeking "a determination on whether or not there was a valid disclaimer").

[68] NDIL Order in Interpleader Case (Sept. 27, 2021) (doc. 251).

A decision on the Disclaimer will affect which assets are included in the conservatorship estate. But this is insufficient to trigger the probate exception. Even before *Marshall* narrowed the probate exception, it was "well settled that . . . adjudicat[ing] whether certain assets belong to the Estate" does not trigger the probate exception because the probate court would continue to administer the assets in the estate. *Est. of Genecin ex rel. Genecin v. Genecin*, 363 F. Supp. 2d 306, 312 (D. Conn. 2005) (citing and quoting *Ashton v. Josephine Bay Paul & C. Michael Paul Found.,* 918 F.2d 1065, 1072 (2d Cir.1990).

### 2. *Response to the Magistrate Report*

For the reverse-disclaimer claim, the Magistrate Report, at 32-33, cites the NDIL decision, exercising its discretion and allowing the DPC to hear this claim. That decision recognizes that the DPC has jurisdiction. However, the NDIL also held that the probate exception does not apply.[69] The NDIL decision on the probate decision should be treated as law of the case.

## V. Removal Is Necessary to Protect Out-of-State Defendants from DPC Hostility

The removal petition was filed because Respondent has faced hostility from the DPC toward Respondent and his family, and seeks a fair forum. That is what removal is about – providing for a fair federal forum for an out-of-state defendant.

The DPC appointed Joanne's current attorney (Ms. DiPonio). In 2017, the DPC *sua sponte* instructed Ms. DiPonio to seek removal of Bernard Black as SNT trustee in another court.[70] After that did not succeed, the DPC ordered Mr. Dain in 2019 to seek trustee removal in another court.[71]

---

[69] See Part IV.C *supra*.

[70] DPC Order (Nov. 3, 2017).

[71] Transcript of DPC hearing (Oct. 3, 2019), at 11.

Dain did not do so, presumably because there is no basis for such a claim. The DPC then ordered Ms. DiPonio to bring trustee suspension claims in the DPC; this is the core of the removed action before this Court.[72] The result of the DPC "litigation" of the removed action is predetermined. The DPC has not only expressed her views on how she will resolve claims that have not been brought, but instructed a court-appointed attorney to bring the case to her court. The DPC has also opposed settlement efforts.[73]

The DPC has issued orders, advising other courts on how to resolve claims before them.[74] Despite the DPC's views, the New York state court issued a restraining order against the DPC's preferred parties in this litigation, including Dain's sister Wrigley, for witness tampering and other misconduct.[75] The DPC responded to the TRO by issuing her own order reiterating her praise for Wrigley, and calling the New York judge to discuss the case pending before him.[76] Despite this phone call, the New York judge ruled against the DPC's preferred parties.[77]

With regard to Samuel Black, the DPC has previously *sua sponte* suspended him as SNT trustee,[78] declared that it has jurisdiction over him and ordered him to deposit trust assets with the DPC,[79] even though Samuel has never been a party to any proceedings before the DPC, received

---

[72] DPC Order (May 10, 2021).

[73] DPC Order (Sept. 28, 2020)

[74] DPC order (Sept. 28, 2015), at 13 (praising Wrigley).

[75] Order to Show Cause with Temporary Restraining Order, in NY Guardianship Case (Jan. 29, 2016).

[76] DPC order (March 17, 2016) at 2 (reiterating praise for Wrigley because it was "pertinent to these pending matters [the then upcoming guardianship hearing]").Order in NY Guardianship Case (June 7, 2016), at 4 (disclosing the call).

[77] *Id.*

[78] DPC Order (Jan. 4, 2018)

[79] DPC Order (April 27, 2018).

no notice of the DPC proceedings, and there is no basis for personal jurisdiction over him in Colorado; and ordered Dain to seek his removal as SNT trustee.[80]  Samuel appealed the DPC's 2018 orders; these orders were voided as to him for lack of notice.[81]

Bernard's wife, Katherine Black, has lent money to the SNT and the Issue Trust to enable them to pay legal fees to defend against the ongoing efforts by Plaintiff to defund them.  Those loans are entirely proper; the trusts are entitled to defend against defunding.  Parallel loans by her cousin, Olga Dal, have been found valid in Illinois at trial and upheld on appeal.[82] Katherine's loans have yet to be assessed at a similar hearing, but are also valid loans.  Yet the DPC, without notice or discovery, and without hearing any evidence, has declared that the trustees' conduct in borrowing funds to defend the trusts "are shocking to the conscience of the court," as was Katherine's conduct in making them.[83]  These statements have affected both Bernard's and Katherine's professional reputation and led other courts,[84] and now the Magistrate Judge, to repeat them, even though there were no underlying factual findings and Katherine was never a party before the DPC. It is surely improper for a judge to castigate a non-party, non-witness, let alone to do so *sua sponte* without hearing any evidence.

---

[80]  Transcript of DPC hearing (Oct. 3, 2019), at 11.

[81]  *Black v. Black*, 482 P.3d 460, 484 (Colo. App. 2020).

[82]  *Dal v. Black*, Case 2017 L 9744 (Circuit Court for Cook County, IL) (June 3, 2019), aff'd , No. 1-19-1348 (Ill. App. 2020);

[83]  DPC Order (Jan. 4, 2018)

[84]  *Litvak v. Black*, 147 N.E.3d 835 (Il. App. 2019)**.**

The DPC has also prejudged the reverse-disclaimer claim. It announced in 2021, having as yet heard no evidence, that a filing before it "exposes that the disclaimers Mr. Black used were void instruments under New York law."[85]

The DPC is currently ignoring 28 U.S.C. § 1446(d), which says that, after the filing of a notice of removal, the state court "*shall proceed no further* unless and until the case is remanded." Instead of standing down, the DPC has *sua sponte* scheduled a hearing on the removed claims, over Bernard Black's objection.[86]

All this provides many red flags for apparent bias.

Notice too that none of the parties to this litigation lives in Colorado, and Joanne was found legally competent in New York in 2016.[87] In New York, Joanne objected to a conservatorship over her. And yet, the DPC refuses to dissolve the conservatorship and cede control over further proceedings to New York, even though Colorado has no jurisdiction to continue the conservatorship, under a uniform guardianship jurisdiction act which both states have adopted.

Respondent and his family are entitled to a fair decision at the trial level.

## VI. Removal Was Procedurally Proper

Removal of the DPC Pleading was procedurally proper. The DPC Pleading was styled as a "motion," and was filed in a conservatorship case. That this was improper; that pleading needed to be filed as a complaint. But the name of the pleading is irrelevant; it's the substance that matters. The removal statute, 28 U.S.C. § 1441, allows removal of a "civil action." It does not use the term

---

[85] DPC order (May 10, 2021).

[86] DPC Scheduling Order (Feb. 14, 2023).

[87] *In the Matter of the Application of Bernard Black for the Appointment of a Guardian of the Person and Property of Joanne Black*, Index No. 80253/2014 (N.Y. Supreme Court for Richmond County, June 7, 2016).

"complaint." Per Black's Law Dictionary, a civil action is "[a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation." ACTION, Black's Law Dictionary (11th ed. 2019).

The DPC Pleading constitutes a new civil action. It names new parties, who were not before the DPC before;[88] new parties cannot be added to a case via a mere motion. It also brings new claims[89] that have not been before the DPC; new claims also cannot be added via a mere motion. It seeks new remedies that were not raised before the DPC before, except for Claim #8. New parties, new claims, and new remedies constitute a new civil action.

There were no claims pending before the DPC when the DPC Pleading was filed; there are still no claims there, except the current removed action. Thus, the removal petition included all claims that were before the DPC. It does not include the conservatorship itself because the conservatorship was not part of the new civil action, begun through the DPC Pleading.

28 U.S.C. § 1446(b)(1) refers to removal of a "civil action or proceeding.". If Congress had wanted to allow removal only of "complaints," it could have said so. Moreover, under Colorado law, a court filing styled as a motion, but containing new causes of action, can constitute a complaint; substance matters, not form. *Black v. Black*, 422 P.3d 592, 606 (Colo. App. 2020).

The district court case within the Tenth Circuit that is most closely on point, *Stark-Romero v. National Railroad Passenger Company*, 763 F.Supp.2d 1231, 1270 (D.N.M. 2011), supports removal. *Stark-Romero* frames the relevant question as "whether the proceeding that was removed

---

[88] Samuel Black has never been before the DPC, and the DPC has no personal jurisdiction over him. Bernard Black, in his capacity as Issue Trust Trustee, is not a party to the underlying conservatorship case, and has never been before the DPC in that legal capacity.

[89] All claims, except Claim #8, have not been raised before the DPC before. Claim #8 is fully adjudicated, and all appeals exhausted, so it cannot be reopened via a "motion."

involves an independent controversy, with distinct and separate issues" – to which the court answered in the affirmative. The court remanded claims involving one plaintiff but allowed removal of claims by a second plaintiff because "the Esquibels' claims are entirely separate and independent from Stark–Romero's claims . . . and [involve] a separate civil action"). *Id.* at 1261-62. As support, *Stark-Romero* cites two earlier Tenth Circuit cases, *Adriaenssens v. Allstate Ins. Co.*, 258 F.2d 888 (10th Cir. 1958) and *London & Lancashire Indemnity Co. of America v Courtney*, 106 F.2d. 277 (10th Cir. 1939).[90]

Further support comes from Wright and Miller, *Federal Practice and Procedure* § 3721.1. This treatise recites the general rule that "proceedings that are ancillary to an action pending in state court cannot be removed separately from the main claim." But it goes on to explain that "supplemental proceedings that involve an independent controversy with a new and different party . . . are removable." As support, Wright and Miller cite *Stark-Romero*, as well as cases from the Seventh and Eleventh Circuits.[91]

The Magistrate Report, at 22-23, argues that only an entire "case" can be removed. *Stark-Romero* considers and expressly rejects this position, explaining that if Congress had wanted to allow removal only of entire cases, it could have used that term in the removal statute, but instead used "civil action." 763 F.Supp.2d at 1273.

---

[90] The Magistrate Report, at 23, miscites *Stark-Romero* as not allowing removal of one civil action without the other.

[91] *GE Betz, Inc. v. Zee Co., Inc.*, 718 F.3d 615 (7th Cir. 2013) (allowing removal of a new claim against a new party); *Jackson-Platts v. General Elec. Capital Corp.*, 727 F.3d 1127, 1134 (11th Cir. 2013) (allowing removal of a new claim against a new party, based on a new theory of liability). The Magistrate Report, at 22-23, cites Wright and Miller for the general rule, but does not discuss the explanation, which immediately follows, which supports removal of "an independent controversy with a new and different party."

On policy grounds, calling a pleading that starts a new civil action a "motion", rather than a "complaint", must not be used to evade removal to federal court. Nor should Plaintiff be able to evade removal of new claims, brought against new parties, by the artifice of bringing them as a "motion" in an existing conservatorship proceeding. If we allow plaintiffs to bring unlimited new actions, with new defendants, new causes of action, and new remedies, via mere "motions" filed in a prior case, this will defeat the removal regime.

## VII. Attorney Fees and Sanctions

A court may award fees in removal proceedings "only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005).

In the Tenth Circuit, the lack of "an objectively reasonable basis" is interpreted very narrowly. Fees are not awarded when the removing party advances a novel legal theory but loses that argument. "While [defendant's] interpretation of procedural misjoinder law is incorrect, it had an objectively reasonable basis for seeking removal." *Ullman v. Safeway Ins. Co.*, 995 F. Supp. 2d 1196, 1251 (D.N.M. 2013) (internal quotations removed). See also *Vetro, Inc. v. Active Plumbing & Heating, Inc.*, 403 F. Supp. 2d 1033, 1040 (D. Colo. 2005) ("Although I have determined that Plaintiff's contract based claims do not implicate a federal question, I also conclude that Defendant's contention that federal question jurisdiction was present … was not clearly without merit warranting the award of attorney fees to Plaintiff.")

The award of fees is improper when the Tenth Circuit does not have an opinion squarely addressing the issues raised in the removal petition. *Mem'l Health Sys. v. Aetna Health, Inc.*, 730 F. Supp. 2d 1289, 1298 (D. Colo. 2010). See also *Johnson v. Labs, Inc.*, No. 16-CV-00718-MEH,

2016 WL 9735765, at *9 (D. Colo. Sept. 8, 2016) (because the Tenth Circuit's substantive doctrine relevant to the removal is not fully developed, the award of fees is impermissible); *Fed. Nat. Mortg. Ass'n v. Sechrist*, 2012 WL 3778288, at *4 (D. Colo.). (award of fees is appropriate only when the removal is clearly impermissible under "substantial and uniform … case law … in this Circuit").

The current case involves no facts that justify the award of fees. This Objection includes a detailed explanation for the existence of federal subject matter jurisdiction for all claims in the removed action. Diversity plainly exists and is not contested. There are many reasons why the probate exception does not apply, discussed above, based on precedent from the Supreme Court, the Tenth Circuit, and other circuits. This Objection also discusses why any procedural issues with removal have been waived, based on the removal statue and precedent from the Tenth Circuit and other circuits. It cannot be proper to award fees based on objections that Plaintiff waived.

Even if procedural objections to removal had not been waived, the DPC Pleading was removable, as a new civil action that brought new causes of action against new parties not previously before the DPC. Removability is supported by precedent from both the Tenth Circuit and lower courts within the Tenth Circuit. As explained in *Stark-Romero v. National Railroad Passenger Company*, 763 F.Supp.2d 1231, 1270 (D.N.M. 2011), the relevant question is "whether the proceeding involves an independent controversy, with distinct and separate issues" – to which the court answered in the affirmative.[92] *Stark-Romero* is the only Tenth Circuit lower court case

---

[92] See also *Stark-Romero* at 1261-62 (remanding claims involving one plaintiff but allowing removal of claims by second plaintiff because "the Esquibels' claims are entirely separate and independent from Stark–Romero's claims . . . and [involve] a separate civil action"). As support for allowing removal of the Esquibel claim, the district court cited *Adriaenssens v. Allstate Ins. Co.*, 258 F.2d 888 (10th Cir. 1958) and *London & Lancashire Indemnity Co. of America v Courtney*, 106 F.2d. 277 (10th Cir. 1939).

with the Magistrate Reports cites for non-removability. The Magistrate Report mischaracterizes its holding; *Stark-Romero* supports removability.

Procedural issues have been waived, so this Court need not resolve them. But it is apparent that procedural issues have <u>not</u> been conclusively resolved against removal by clear Tenth Circuit precedent, and cannot be the basis for awarding fees.

Finally, plaintiff did not seek the award of attorneys' fees.

If an award of attorney fees is unjustified, then sanctions, including bar referral, are even more unjustified. Moreover, it is improper in the same case to both award fees and impose sanctions. *Midlock v. Apple Vacations West, Inc.*, 408 F.3d. 453, 455 (7th Cir. 2005).

## VIII. Conclusion

The U.S. Supreme Court has expressly stated that the district courts lack authority to "remand[ ] cases on grounds that seem justifiable to them but which are not recognized by the *controlling statute.*" *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 346 (1975) (quoted with this emphasis in *Air-Shields, Inc. v. Fullam*, 891 F.2d 63, 66 (3d Cir. 1989). Federal jurisdiction, if it exists, must be exercised. Objections to any procedural defects in removal have been waived. Diversity jurisdiction exists. The probate exception does not apply to any of the claims in the DPC Pleading. The removed claims should stay removed.

## Appendix: The Loans to the Trusts and Other Illinois Litigation

The Magistrate Report devotes great effort to criticizing the conduct of Bernard and Samuel Black as SNT and Issue Trust trustees. In so doing, it presents a severely incomplete and one-sided picture. Since 2015, a relative of the Black family, Anthony Dain, (a minority trustee of the SNT) and his sister Cherie Wrigley have been engaged in an ongoing effort to defund both trusts

and transfer trust assets to their own control and use. For the SNT, Dain and Wrigley (unsuccessfully) asked several courts to extract assets from the trust and transfer them to the mentally ill Joanne, who has no understanding of money, cannot manage it, and whom Dain and Wrigley control. To propel his asset-funneling effort, Dain used his position as a trustee, and assigned his massive legal bills to the SNT, even as he was spending money to defund the SNT itself in breach of his fiduciary duties. After years of litigation, Dain and Wrigley will likely spend much if not all of the SNT funds to repay the massive legal bills they have run up, leaving little or nothing for Joanne.

Dain has simultaneously attacked the second family trust, the Issue Trust, asking several courts (unsuccessfully) to remove all assets from that trust and, again, transfer them to the mentally ill Joanne, whom he controls.

The basis for the effort to defund both trusts was the claim that Bernard, as his sister's conservator, did not sufficiently disclose that a disclaimer that he carried out on her behalf would lead to two-thirds of the disclaimed assets going to Joanne's SNT and one-third to the Issue Trust. Dain and allies claimed that they thought that all of the disclaimed assets would go to the SNT, despite clear written language of the proposed order for the disclaimer to the contrary, and persuaded the DPC to award damages based on the amount that went to the Issue Trust.

The obvious remedy for this harm to the SNT would be to transfer the Issue Trust funds to the SNT, thus remedying the asserted harm. Bernard and Samuel Black have repeatedly proposed this, but Dain and Wrigley have refused to consider settling on this or any other basis.[93] They are

---

[93] See the discussion of the failed settlement overtures in the motion for summary judgment filed by trust beneficiaries in a fiduciary duty suit against Dain and Wrigley in the EDNY, Black v. Dain, Case No. 1:16-cv-01238 (Apr. 29, 2022) (doc. 306).

not interested; this would provide more money for the SNT, but would not achieve their goal, which is to defund the trusts and control their assets directly, for personal gain.

Trust beneficiaries have sued Dain and Wrigley for breach of fiduciary duties in the EDNY; this case is ongoing. The beneficiaries recently filed a Motion for Partial Summary Judgment; it provides a sense for the scale, scope, and relentlessness of Dain's efforts to defund the trust where he is a trustee, and failing that, to spend SNT assets to pay his own litigation expenses.[94]

The beneficiaries' EDNY Motion also details the majority trustees' failed settlement efforts. If the Issue Trust assets were truly stolen, as the DPC found, one might think the offer to return those assets to the SNT would be an attractive opportunity. It has not been. Dain, Wrigley, and collaborators have instead launched a multiyear, multistate, endless litigation war against the Black family, which has consumed far more in legal fees than the roughly $1 million the Issue Trust received as a result of the disclaimer. They refuse to settle; they refuse to mediate; but they are happy to bring new rounds of litigation, preferably before the DPC; hence the DPC Pleading. Dain and his associates can do so because litigation is free fun for them: they expect to charge all of their legal fees to the SNT.

Bernard and Samuel Black, as trustees of the SNT and the Issue Trust, have defended the trusts as best they could. To pay the trusts' legal expenses, Bernard and Samuel had to borrow money from two lenders – Bernard Black's wife, Katherine Black, and her cousin, Olga Dal. These loans are well documented; the money moved from the lenders' accounts to the trusts' attorneys. The asset trail is entirely transparent. Defending the trusts against an attack is not only proper –

---

[94] Plaintiffs' Motion for Partial Summary Judgment in Black v. Dain, Case No. 1:16-cv-01238 (Apr. 29, 2022) (doc. 306)

the trustees have a fiduciary duty to do so.  All the more so when a central attacker is a minority SNT trustee, Anthony Dain, whose attacks are in flagrant breach of his own fiduciary duties.

The Magistrate Report repeatedly attacks these loans – both the borrowers (Bernard and Samuel Black, as trustees) and the lenders.  The attacks are unjustified.  First, while Dain and his associates have levied allegations of fraud and collusion, there has never been any proof thereof, or any finding of fact.  The lenders and the trustees have produced all documentation for the loans, for the payments made by the lenders, and for the bills from the law firms that received the loan funds as payment for legal work. The lawyers unquestionably provided work.  The defensive litigation has succeeded – the trusts have not been defunded. These lawyers are not related to anyone in the Black family; they charged normal market rates. The rhetoric about these loans, from the DPC and now in the Magistrate Report, has far outrun the facts.  These loans are entirely legitimate, made for legitimate purposes, and have so far enabled the trusts to fend off the efforts to defund them.

For one of the two lenders, Olga Dal, her loans were challenged by Dain and Joanne's conservator; at trial, the loans were found to be proper and nonfraudulent, and upheld on appeal.[95] Katherine's loans have yet to be assessed at a similar hearing, but they are virtually identical to Olga's, valid loans; the only difference is the specific legal bills that were paid.  The loans are supported by unassailable documentation from financial institutions and law firms.  Real loans, real dollars, and a valid purpose.

---

[95] *Dal v. Black*, Case 2017 L 9744 (Circuit Court for Cook County, IL) (June 3, 2019), *aff'd*, *Dal v. Black*, 2020 WL 7046887 (Il. App.).

The DPC issued dicta about these loans, in an unrelated proceeding, without notice, without any discovery, without a fact-finding hearing, and without any evidence, without giving any chance for the parties to appear or respond. As dicta, this language is not appealable. Dain has falsely presented this improperly-obtained DPC dicta to several courts as "factual findings"; most courts could see through it, but one Illinois court wrote an opinion that sounds as if these were actual findings, which they were not. The Magistrate Report repeats these accusations in his Report as if they were factual findings, without inquiring about their origins. Yet no fact finder has ever found either the lenders or the trustees to have committed any wrongdoing with the respect to these loans.

The only factual finding to date concerning these loans is for the Olga Dal loans, which were found valid and enforceable. There has been <u>no factual finding</u> of any wrongdoing, by either the trustees or the lenders. The Magistrate Report cites an Illinois appellate decision, *Litvak v. Black*, 147 N.E. 3d 835 (Il. App. 2019). But this was an appeal from the grant of a motion to dismiss in Katherine's favor. On appeal, the Illinois appellate court applied the motion-to-dismiss standard; it assumed as true the same allegations of fraud and collusion made by Dain and conservator Goodwin that were found to be entirely unsupported in the Olga Dal hearing. These are not "findings of fact" by any fact-finder.

In connection with the Dain fiduciary duty case, the plaintiffs had the loans to the trusts from both Dal and Katherine reviewed by a top, Colorado-based forensic accounting firm, Harper and Hofer. Name partner Melinda Harper then wrote an expert report documenting the loans as valid.[96]

---

[96] Harper expert report in *Black v. Dain* (May 21, 2019).

Thus, on one side, there are allegations of fraud and collusion made by Dain and Goodwin, devoid of any specific facts. On the other side, there is the forensic accounting review by Harper and Hofer, which documents each loan and which bill it was used to pay, and the trial outcome for Dal's loans from an Illinois state court, which found these loans to be valid. The rhetoric in the Magistrate Report about fraud ("fraud" or "fraudulent" appears 10 times) and collusion ("collusion" or "collusive" appears 8 times) does not match reality. The trustees expect that a future hearing on Katherine's loans will show them to also be validly incurred.[97]

The SNT trustees also brought a declaratory judgment action in Illinois, seeking a declaration that the Disclaimer was valid under Illinois law.[98] This should not have been necessary, but for Dain's ongoing efforts to defund the trusts. This particular effort failed, because of an unusual provision in the Illinois Code of Civil Procedure § 2-619(a)(3), under which a motion to dismiss can be filed if a similar action is pending elsewhere. But the filing was made in good faith, with advice of experienced trusts counsel, Strauss, Malk and Feder in Northbrook, Illinois. It could have succeeded – and Respondent believes it should have -- because when it was filed, there was no similar other claim – only the threat of one. The fact that this effort did not succeed reflects: (i) the discretionary decision by an Illinois judge to interpret §2-619(a)(3) broadly; and

---

[97] In the Dal loan case, Dain and Goodwin's counsel "Essentially acknowledge[ed] that he had presented no affirmative evidence of fraud and collusion." *Dal v. Black*, 2020 WL 191348 at *6. With good reason, since "On cross-examination, Mr. Dain acknowledged that he had never spoken to Ms. Dal. Nor had he ever spoken to Bernard or Samuel about the loans Ms. Dal made to the trusts. He was aware of no conversations between Ms. Dal and defendants prior to those loans being made. When asked by the court what evidence he had that the agreed judgment in this case was the product of fraud and collusion, Mr. Dain stated [only] that Ms. Dal was Ms. Litvak's cousin." *Id.* at *4.

[98] *Bernard Black and Samuel Black, as SNT Trustees, v Joanne Black and Anthony Dain*, Case 2021 CH 06049 (Circuit Court for Cook County, Ill., Chancery Div.) (Dec. 6, 2021).

(ii) opposition by trustee Dain, to a declaratory judgment that would have protected the SNT against his own efforts to defund it.[99] Dain wears the black hat here, not the majority trustees.

The DPC Pleading seeks damages against Samuel Black, for bringing the declaratory judgment action in an effort to protect the SNT against Dain's efforts to defund it.[100] This is an astonishing claim, that would be seen as frivolous if brought anywhere other than the DPC. Not only was Samuel's effort to defend the trust proper – it was his fiduciary duty to act to defend the trust.

There have been two other instances in which the family feud has reached an evidentiary hearing. Both resulted in a win for the Black family, and a loss for Dain and Wrigley. First, in a guardianship hearing in New York, Wrigley was found "unfit" to be Joanne's guardian, despite Joanne's consent based on her conduct in attacking Bernard and Katherine at their place of work.[101]

Second, Bernard and Samuel persuaded a FINRA arbitration panel to freeze the trusts against litigation spending, thus blocking Dain from continuing to deplete the SNT to support his litigation war against the Black family and the trusts.[102] The SNT has still suffered severe harm from Dain's pre-freeze spending; the Joanne Black 2013 Trust, which once held $300,000 in assets, has been completely spent on Dain's litigation and conservator fees. The Harper expert report computes this spending as $761,000 through early 2019 – with additional spending since

---

[99] See Dain's 2-619 Motion to Dismiss (April 7, 2022).

[100] DPC Pleading ¶¶ 38-41.

[101] *In the Matter of the Application of Bernard Black for the Appointment of a Guardian of the Person and Property of Joanne Black*, Index No. 80253/2014 (N.Y. Supreme Court for Richmond County) (June 7, 2016).

[102] FINRA Arbitration Award (March 23, 2018), at 6 item 1.

and harm to Joanne's trusts about double this, or $1.5 million due to lost appreciation on the spent funds.[103]

To summarize, the score in actual factual hearings is Black family (3); Dain and Wrigley (1). The dicta in the Magistrate Report, concerning fraud and collusion for the loans and unjustified litigation, lacks support in either facts or law.

Respectfully submitted,

Date: April 7, 2023                                    Bernard S. Black, pro se
                                                      As Issue Trust Trustee

                                                      /s/ Bernard S. Black
                                                      _____

---

[103] Harper expert report Schedule 1.

**CERTIFICATE OF SERVICE**

    I hereby certify that I served a true and correct copy of the foregoing document on April 7, to the following individual(s) by the method(s) indicated below.  I have confirmed that the email addresses below are correct.

Via ECF
Counsel for Joanne Black
DiPonio and DiPonio LLC
Lisa ReneeMarie DiPonio
7931 S. Boradway # 348
Littleton CO 80120
diponiolawfirm@comcast.net

Via first-class mail:
Guardian-ad-litem for Joanne Black
Gayle Y.L. Young
PO Box 307
Littleton CO 80160
d.zen@q.com

Via e-mail
Counsel for Bernard Black as Conservator and SNT Trustee
The Pearman Law Firm, P.C.
Shaun Pearman, Esq.
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
shaun@pearmanlawfirm.com

/s/ Bernard S. Black

Bernard S. Black
Pro se, as Issue Trust Trustee