**United States District Court for the District of Colorado**

Joanne Black                                    :          United States District Court
                                                            District of Colorado
                                                            Case No.  22-cv-3098-DDD-nrn
v.                                               :

Bernard Black


**RESPONDENT'S MOTION TO VACATE ORDERS ISSUED BY THE DENVER PROBATE COURT WITH RESPECT TO THE REMOVED PLEADENG AFTER NOVEMBER 30, 2022**

**RESPONDENT'S MOTION FOR INJUNCTION AGAINST FURTHER ACTIONS BY JOANNE BLACK AND THE DENVER PROBATE COURT WITH RESPECT TO THE REMOVED PLEADING UNLESS AND UNTIL THE PLEADING IS REMANDED**

Bernard Black ("Respondent"), acting *pro se*, in his capacity as trustee of the Irrevocable

Trust for the Benefit of the Issue of Renata Black (the "Issue Trust"), hereby moves for orders to:

(1) pursuant to Fed.R.Civ.P. 60(b)(4) and 28 U.S.C. § 1450, vacate and set aside as void all actions

taken by the Denver Probate Court ("DPC") with respect to the new civil action filed by Plaintiff

with the DPC on November 4, 2022 ("DPC Pleading"), after November 30, 2022, the date when

Respondent notified the DPC that the DPC Pleading had been removed to federal court; (2) enjoin

the DPC from taking any further actions with respect to the DPC Pleading and the matters

contained therein unless and until the DPC Pleading is remanded; (3) enjoin all parties to the DPC

Pleading and their representatives from participating in any DPC proceedings related to the DPC

Pleading and the matters contained therein unless and until the DPC Pleading is remanded.

Respondent is separately moving for a temporary restraining order barring the DPC from taking

any actions with respect to the DPC Pleading and barring all parties to the DPC Pleading and their

representatives from participating in any proceedings related to the DPC Pleading unless and until the DPC Pleading is remanded.

This Court should, indeed must vacate all DPC rulings issued with respect to the removed DPC Pleading, even if this Court were to later remand some or all of the removed claims to the DPC. The statutory command and case law are clear: the DPC has no subject matter jurisdiction after the case was removed;[1] all DPC orders issued while the DPC Pleading was removed are void, even if the DPC Pleading is ultimately remanded. [2]  It would be an abuse of discretion for this Court not to vacate these void DPC rulings.[3]

This Motion is substantially similar to the Memorandum of Law supporting Respondent's Application for Temporary Restraining Order, filed by Respondent concurrently with this Motion. The main difference is that this Motion also seeks to set aside as void the DPC orders related to the DPC Pleading, entered after November 30, 2023; the Application for Temporary Restraining Order only seeks interim and prospective relief.

## Contents

Introduction ........................................................................................................................... 1

  A.  The DPC Is Refusing to Cede Jurisdiction over the DPC Pleading, in Violation of 28 U.S.C. § 1446(d) ............................................................................................................... 1

  B.  The DCP Has Repeatedly Issued Unlawful Orders against Respondent in the Past............ 2

  C.  The DCP's Current Control Over This Family Litigation Is Unlawful ................................ 6

  D.  The DPC's Manifest Prejudice Against Bernard ................................................................ 9

  E. The DPC's Attacks on Bernard Are Unjust and Are the Main Force Preventing This Case from Being Settled ............................................................................................................. 11

---

[1] See Part I, *infra*.

[2] See Part II *infra*.

[3] *Id*.

F. Requested Relief ................................................................................................................. 12

I. The DPC Has Had No Subject Matter Jurisdiction Over the DPC Pleading After It Was Notified of Removal ............................................................................................................... 13

II. This Court Should Enjoin the DPC from Taking Any Further Actions with Respect to the Removed Pleading, Unless and Until It Is Remanded ................................................................. 24

    A.  The Anti-Injunction Statute Does Not Apply to Removed Cases ...................................... 24

    B.  Respondent Meets the Legal Standard for Granting an Injunction ..................................... 26

    C.  Likelihood of Success on the Merits Is Very High: Once the DPC Pleading Was Removed, the DPC Lacks Subject Matter Jurisdiction ................................................................................. 26

    D.  Irreparable Injury to Respondent Is Virtually Certain ....................................................... 26

        1.  The DPC Is Virtually Certain to Issue Unlawful Orders to Strip Bernard and Samuel Black of Their Rights to Manage Family Trusts Because the DPC Itself Ordered Joanne's Court-Appointed Attorney to Bring These Claims Before the DPC .................................... 26

        2.  The Loss of the Power to Manage Family Trusts Constitutes Irreparable Harm ............ 28

        3.  The DPC's Issuance of Unlawful Orders Has Already Irreparably Harmed, and Will Continue to Irreparably Harm, Respondent's Ability to Litigate on Other Matters ............. 31

    E.  The Balance of Equities Tips Strongly in Favor of Respondent ......................................... 33

    F.  An Injunction Is in the Public Interest ................................................................................. 33

III. This Court Should Enjoin All Parties to the DPC Proceedings and Their Agents from Taking Any Further Actions Before the DPC with Respect to the Removed Pleading, Unless and Until the Pleading Is Remanded ........................................................................................................... 33

**Introduction**

**A. The DPC Is Refusing to Cede Jurisdiction over the DPC Pleading, in Violation of 28 U.S.C. § 1446(d)**

On November 4, 2022, Joanne Black filed a new civil action ("the DPC Pleading") in the Denver Probate Court ("DPC"). Respondent filed a notice of removal in this Court on November 30, 2022. The same day, he filed with the DPC a copy of the removal petition. Under 28 U.S.C. § 1446(d), filing the removal petition with the DPC makes removal immediately effective, and the DPC "*shall proceed no further* unless and until the case is remanded." (emphasis added).

The DPC has ignored this statutory command. On February 1, 2023, the DPC, acting *sua sponte* and without notice, issued a surprise order stating that it will not cede control over the removed case and that "until this Court receives an Order from the Federal Court, this matter may move forward."[4] There is no statutory basis under § 1446(d) for the DPC to require such an instructional order from a federal court before ceasing to act on the removed action. On February 14, also *sua sponte* and without notice, the DPC issued another surprise order, scheduling a hearing on the removed case.[5]

On February 14, 2023, Bernard[6] moved in the DPC for reconsideration of the DPC's order to continue proceedings in the DPC while the case is removed, arguing lack of subject matter jurisdiction.[7] Joanne responded on February 16, 2023,[8] and Bernard replied on February 23,

---

[4] DPC Order (Feb. 1, 2023), Exhibit 1.

[5] DPC Order (Feb. 14, 2023), Exhibit 2.

[6] Bernard has appeared before the DPC with respect to the DPC Pleading, in his capacity as former conservator for Joanne Black and as trustee of the Supplemental Needs Trust for the Benefit of Joanne Black ("SNT"). These are different legal capacities than the capacity, as Issue Trust Trustee, in which he removed the DPC Pleading.

[7] Bernard Black motion (Feb. 14, 2023), Exhibit 3.

[8] DiPonio Response (Feb. 16, 2023), Exhibit 4.

2023.[9]  The DPC has not ruled on Bernard's motion, and apparently intends to continue to improperly assert jurisdiction, hold the hearing, and issue orders.[10]

As of now, the DPC is highly likely to issue any order at any time with respect to the broad range of matters covered in the removed DPC Pleading, and can again do so *sua sponte* and without notice.  It has already done so twice in the last two months.  The defendants named in the DPC Pleading must comply with all DPC orders, even when orders are issued without jurisdiction, until they are reversed on appeal, which takes years. Having to comply with clearly unlawful orders for years causes irreparable harm.[11]

## B.  The DCP Has Repeatedly Issued Unlawful Orders against Respondent in the Past

The DPC has repeatedly issued unlawful orders directed at Bernard and his family.  The Colorado Court of Appeals has already reversed multiple DPC orders in this family saga because they were issued: (a) without subject matter jurisdiction;[12] (b) without establishing the basis for

---

[9] Bernard Black reply (Feb. 23, 2023), Exhibit 5.

[10] In the past, the DPC repeatedly has failed to rule on motions that Bernard submitted, or else did not rule until Bernard's motions became irrelevant due to passage of time, and then denied them. For example, Bernard requested additional time to respond to the DPC pleading.  His response was otherwise due on Friday November 25, the day after Thanksgiving.  Plaintiff agreed to an extension of time.  The DPC failed to rule on the motion for additional time.  The DPC has also failed to rule on Bernard's demand for a jury trial, filed on Nov. 25, 2022.  A jury trial is as of right because the DPC Pleading includes a claim for damages against Samuel Black, but the DPC appears to be planning to hold a bench hearing.

[11] See Part III.D *infra*.

[12] DPC Order (Apr. 27, 2018) (deciding *sua sponte* to reverse disclaimer and order trust assets to be deposited with the DPC, *vacated* for lack of subject matter jurisdiction).

DPC jurisdiction,[13] and (c) without notice to persons subject to its orders.[14]  Many DPC orders were issued *sua sponte* with no statutory basis for *sua sponte* action.[15]  Another DPC order granted a request expressed for the first time in a reply brief, after denying Bernard an opportunity to reply.[16] Many DPC orders contain surprise rulings on critical, substantive issues that were not raised in advance, not briefed, and were decided without hearing any evidence from the defendants or allowing the defendants to respond.[17]

As shown below,[18] this is not mere bickering about technicalities: the DPC's unlawful actions have caused terrible damage to Respondent and his family, which would not have occurred if the DPC had limited itself to matters for which it had jurisdiction, or to rulings on individuals who were parties before it. The lopsided pattern of DPC's unlawful actions is striking: the DPC

---

[13] See DPC orders (Feb. 25, 2016; Oct 27, 2016; Oct. 23, 2017; Jan. 4, 2018) (all approving requests by minority trustee to spend trust assets on litigation, without addressing basis for jurisdiction over the trust and its trustees), *vacated and remanded* in *Black v. Black*, 16CA0625 (Colo. App. 2018); *Black v. Black II*, 480 P.3d at 480-81; DPC orders (Jan. 4, 2018; April, 27, 2018) (issuing orders directed to trustee without establishing jurisdiction over trust or trustee), vacated in *Black v. Black*, 480 P.3d 460, 472 (Colo. App. 2020) (*Black v. Black II*).

[14] DPC orders (Jan. 4, 2018; April 27, 2018) (issuing orders directed to trustee without notice to trustee), vacated in *Black v. Black*, 480 P.3d 460, 472 (Colo. App. 2020) (*Black v. Black II*); DPC order (May 10, 2021) (declaring that Bernard Black is no longer an interested person in his sister's welfare).

[15] See, e.g., Part III.D(1) *infra* (discussing numerous DPC orders directing Joanne and her representatives to bring lawsuits against Bernard); fn. 13 *supra* (citing DPC orders approving SNT spending); and the orders issued by the DPC with respect to the DPC Pleading after removal (DPC Order (Feb. 1, 2023) and DPC Order (Feb. 14, 2023)),

[16] DPC order (Apr. 27, 2018) (reversing disclaimer based on request made in footnote in reply brief).  A separate order issued on the same day denies Bernard's request to reply.

[17] DPC Order (Apr. 27, 2018) (*sua sponte* reversing disclaimer, *vacated* in *Black v. Black II* for lack of subject matter jurisdiction); DPC orders (Jan. 4, 2018; April, 27, 2018) (sua sponte orders directed to trustee Samuel Black without notice to him), vacated in *Black v. Black II*); DPC order (May 10, 2021) (declaring *sua sponte* that Bernard Black is no longer an interested person in his sister's welfare; issued without subject matter jurisdiction, as determined on appeal in Case 21CA0787 (Colo. App., Apr. 28, 2022), ¶ 30).

[18] See Part III.D(3) (showing how the DPC, in violation of numerous procedural rules, made an unlawful, improper, and false statement against a non-party, Bernard's wife Katherine, and how several courts later copied this DPC statement through chain citations from each other, because they misunderstood the DPC language to be a real finding of fact against a party, conducted through normal litigation procedure).

has repeatedly violated rules of civil procedure and basic constitutional protections of litigants, and every time, the targets were Respondent and his family, never his opponents.

Some of the unlawful DPC orders were appealable; the defendants appealed them, and the Colorado Court of Appeals reversed them.[19]  Even there, the victory was Pyrrhic: appeals took years, and the defendants had to comply with the unlawful DPC orders during this time, which caused irreparable harm by affecting their ability to litigate in other fora.

But many of the unlawful DPC orders were not appealable, because they were not final dispositions, or because the defendants were not the parties at whom these orders were directed, or because they were dicta. As discussed below, the DPC has repeatedly ordered Bernard's opponents in this litigation to bring new lawsuits against Bernard and his family members elsewhere, and even ordered them to seek specified remedies.[20] This is clearly unlawful: a judge has no power to <u>order</u> an attorney or a party to bring a new civil lawsuit: judicial orders carry an implicit threat of contempt and jail, and yet, a private party has a right not to sue. Even in the conservatorship context, the decision to bring a new lawsuit belongs to the protected person's counsel and guardian-ad-litem, not to the judge. And yet, Bernard could not appeal these DPC orders because they were not issued against him. Bernard fought that litigation successfully, in New York and Illinois,[21] but at substantial expense, and the fact that such orders were outstanding significantly affected his litigation position, causing irreparable harm.[22]

---

[19] See discussion above of prior appellate reversals of DPC orders.

[20] See Part III.D(1) *infra (*discussing DPC orders demanding that trustee removal litigation be brought in other courts*)*.

[21] *Id.*

[22] See Part III.D(3) (showing how a series of chain citations caused several courts to incorrectly interpret the DPC's factually unsupported dicta, issued in violation of numerous procedural rules, as a binding factual finding).

After the DPC's preferred parties failed in litigation against Bernard elsewhere, the DPC ordered them to bring virtually identical claims before itself.[23] The DPC Pleading responds to that order. This is manifestly unlawful and improper: a judge cannot de facto act as a plaintiff in her own courtroom. The DPC judge decided which claims should be brought, ordered an attorney to bring those claims in her own court, plans to hear those claims herself, and now plans to do so despite clear lack of subject matter jurisdiction.[24] The DPC lacks subject matter jurisdiction over the DPC Pleading not only due to removal, but also due to a fundamental constitutional command: both the US Constitution[25] and the Colorado Constitution[26] allow courts to hear only cases and controversies; a judge cannot create a "controversy" for her own court, and determine its essential claims, by ordering an attorney to bring a case before her.

The DPC has also improperly telephoned a judge in another state to offer its opinions on a case before that judge; this too was *sua sponte* and without advance notice to Respondent. That judge nonetheless ruled against the DPC's preferred parties.[27]

---

[23] DPC Order (May 10, 2021).

[24] Whether the DPC Pleading is a new civil action and is therefore removable is a matter of removal procedure, and procedural objections to removal have been waived. Even if they were not waived, that the DPC ordered Joanne's counsel to bring the DPC Pleading is not relevant for whether the DPC Pleading is a new civil action. A new civil action is defined by new causes of action, not by the reasons for bring it. The Colorado Supreme Court considered exactly this issue in *Scott v. Scott*, 136 P.3d 892, 897 (Colo. 2006): when a probate process results in a series of orders over time, what constitutes a new action (a "proceeding" under the probate statute)? The Colorado Supreme Court held that the substance of the new claims congrols. The "petition outlines a set of claims and begins a proceeding. Subsequent pleadings which relate to that set of claims are part of the same proceeding." *Id.* at 897. It does not matter "whether [the submissions are] labeled motions or petitions"; the only relevant issue is whether the submission raises new claims. *Id.*

[25] U.S.Const., Art. III.

[26] *Wimberly v. Ettenberg*, 194 Colo. 163, 167, 570 P.2d 535, 538 (1977) ("Although state courts are not subject to the provisions of Article III of the United States Constitution, similar considerations operate to require state courts to apply the standing doctrine").

[27] Order *In the Matter of the Application of Bernard Black for the Appointment of a Guardian of the Person and Property of Joanne Black*, Index No. 80253/2014 (N.Y. Supreme Court for Richmond County, June 7, 2016)

## C. The DCP's Current Control Over This Family Litigation Is Unlawful

Not a single party to this litigation lives in Colorado or has any assets in Colorado. The sole ground for the DPC's ongoing involvement is the conservatorship that the DPC maintains over Joanne Black. This conservatorship is unlawful. Joanne is a lifelong New York resident, who briefly stayed in Colorado in 2012, but left in April 2013 and has not returned. During her stay in Colorado, Joanne suffered a psychotic episode, and the DPC established a conservatorship over her. Since leaving Colorado, Joanne has continuously lived in New York. In 2014, the DPC ruled that it lacks jurisdiction over Joanne.[28] In New York, Joanne has undergone treatment, and in March 2016, a New York state court found Joanne fully competent. It did so after a multi-day hearing where Joanne testified and was represented by attorneys and court-appointed personnel.[29]

Under the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act, which both Colorado and New York have adopted, this finding is binding on the DPC.[30] Yet, the DPC has not dissolved a conservatorship, as it was required to do both because of Joanne's competence and her residence in New York.

For seven years since the New York court found Joanne to be competent, the DPC has been maintaining a conservatorship over a legally competent non-resident, over whom, as the DPC ruled

---

("NY Guardianship Case"), at 4 (disclosing the phone call); id. at 5 (finding Cherie Wrigley, whom the DPC had praised in its own orders, "unfit to be appointed Guardian for Joanne Black"), and suspending Anthony Dain, whom the DPC had also praised, from his position as a trustee.

[28] DPC Order (Oct. 27, 2014) ("The Petition [by Bernard Black] for Appointment of Guardian [over Joanne] is DISMISSED for lack of jurisdiction.").

[29] *In the Matter of the Application of Bernard Black for the Appointment of a Guardian of the Person and Property of Joanne Black*, Index No. 80253/2014 (N.Y. Supreme Court for Richmond County, June 7, 2016).

[30] C.R.S. § 15-14.5-101 et seq. Under this Act, New York is Joanne's "home state" as defined in *id.* § 15-14.5-201. Under *id.* § 203, Colorado lacks jurisdiction because New York exercised jurisdiction and determined that Joanne has capacity.

in 2014, the DPC has no jurisdiction.[31] Joanne's current conservatorship team employs, in Colorado alone: (1) a guardian ad litem, (2) a conservator, (3) a court-appointed attorney for Joanne; (4) both trial level and appellate counsel for the conservator, with additional counsel retained in Illinois and Oregon. Each charges substantial fees. In the past, the conservatorship also employed two prior conservators and an accountant. All these individuals are paid from Joanne's assets, while providing little cognizable benefits. They have opposed Bernard's multiple offers, made from 2015 to the present, to settle through transfer of *all disputed assets* to Joanne's trust fund, as those offers did not include payments to them.[32]

Professional fees to the DPC-appointed conservatorship team and their agents have already consumed over $800,000, including completely depleting one of Joanne's trusts (the Joanne Black 2013 Trust) of the $300,000 in assets it once held. A multiple of these fees would have been paid out of Joanne's funds if Bernard had not succeeded in freezing the SNT against further spending in a FINRA arbitration proceeding.[33]

The DPC has refused to provide the Black family any information about how many hours these DPC-appointed individuals have worked, how much they have charged, how much of Joanne's funds they have already received, and the amounts of unpaid bills they accumulated. The

---

[31] DPC Order (Oct. 27, 2014) (The Petition for Appointment of Guardian is DISMISSED for lack of Jurisdiction.").

[32] These offers began in early 2015, prior to any DPC decision on liability and included transfer of all Issue Trust assets to the SNT. Bernard's settlement offers continue today.

[33] FINRA arbitration award (March 23, 2018), in Bernard and Samuel Black, as trustees v. JPMorgan Chase Bank, Cases 16-02822 and 16-03146. The SNT and the Issue Trust are now also frozen in a federal interpleader case, *JPMorgan Chase Bank NA v. Black*, 18-CV-03447 (N.D. Ill.). This order includes, at Bernard's request, an exception to permit spending "for the benefit of Joanne Black, including <u>her</u> personal needs, clothing, food, living arrangements, travel, and entertainment." Id. at 6 (emphasis in original).

DPC rejected Bernard's request that it appoint a third-party monitor to oversee conservatorship spending.[34] Bernard's partial information indicates that the conservatorship team accumulated at least $1.3 million in unpaid legal bills as of early 2020, and surely substantially more today, on top of the $800,000 already spent.[35] Again, none of this litigation was needed: Bernard offered to transfer *all disputed assets* to Joanne's trust before the DPC ruled on liability in 2015.[36]

The main barrier preventing millions of Joanne's and Black family's money to be transferred to the DPC-appointed conservatorship team and their agents is the freezes imposed by FINRA and by the Northern District of Illinois in a federal interpleader case. To remove that freeze, the DPC directed Joanne's DPC-appointed attorney, Ms. DiPonio, to bring a claim before the DPC to unwind the disclaimer and to transfer control over trust assets to the DPC. As soon as this happens, the DPC is virtually certain to order massive transfers from Joanne's trust to these professionals, even though the SNT instrument does not permit this spending. Joanne and the Black family will have most of their trust assets transferred to conservatorship personnel and their counsel.

This ten-year-old conservatorship disaster, involving a non-resident legally competent person, is not unique. The DPC is known for improper maintenance of needless conservatorships, and has been in the news for a long time.[37] Abuse of the conservatorship system even triggered a

---

[34] DPC Order (Sept. 28, 2020).

[35] Respondent Black's Response to Conservator's Motion for Instructions and Request for Appointment of Third-Party Monitor to examine Conservator's Estate Administration (Aug. 6, 2020) (detailing known expenses).

[36] See Plaintiffs' Motion for Partial Summary Judgement (Apr. 29, 2022) (doc. 306) in *Black v. Dain*, Case 1:16-cv-01238 (E.D.N.Y), § II.H (summarizing settlement offers).

[37] See, e.g., https://www.denver7.com/news/investigations/colorado-guardianships-can-bleed-estates-with-little-to-no-oversight?_ga=2.233069398.991741299.1680415612-1243716221.1680415612; https://www.denver7.com/news/investigations/former-denver-court-clerk-blew-whistle-10-years-ago-about-conservatorship-system.

legal reform effort in Colorado, seeking to restrict the ability of court-appointed personnel to maintain secrecy while spending down protected persons' funds on themselves, without family oversight.[38] The DPC's actions in this case come right from the secrecy playbook: when Bernard complained in 2020 about the level of legal bills, the DPC responded by barring him from seeing conservatorship reports.[39]

## D. The DPC's Manifest Prejudice Against Bernard

The DPC's prejudice against Bernard has a simple cause. The current DPC judge, J. Leith, was appointed by then-Governor Hickenlooper in 2011, after a scandal involving a prior DPC judge and accusations of cronyism in the probate bar. The governor sought a non-probate attorney for the job and selected Judge Leith, who had no probate experience. In 2013, Bernard, following advice of senior, experienced probate counsel, Carl Glatstein, Esq., managing partner of Glatstein and O'Brien, submitted proposed conservatorship powers to the DPC *three times*, with the relevant disclosure for the disclaimer *highlighted in yellow and bolded*.[40] This language plainly said that "two thirds of the estate… will be contributed to [Joanne's] trust". Bernard also informed the court-

---

[38] See https://www.denver7.com/news/investigations/colorado-bill-on-guardianship-protections-elicits-passionate-testimony. The reform failed due to opposition from the probate bar.

[39] DPC Order (Sept. 29, 2020).

[40] Bernard sought the power **"To disclaim Respondent's interest as beneficiary under all payable on death or transferable on death accounts owned by Respondent's mother, Renata Black, (DOD 5/1/2012) allowing Respondent's share to pass under Article Fourth of the Last Will and Testament of Renata Black, dated 12/19/1997, under which two thirds of the estate of Renata Black will be contributed to a *Supplemental Needs Trust for the Benefit of Joanne Black*."** See Proposed Conservatorship Powers (Nov. 13, 2012); email from Mr. Glatstein to DPC court clerk Sumi Lee (Dec. 11, 2012); Proposed Amended Conservatorship Powers (Jan. 29, 2013). The emphasis and highlighting is from Mr. Glatstein's email to the DPC court clerk.

appointed court visitor about the effects of the proposed disclaimer, and she reported this to the DPC in her visitor's report.[41]

Bernard and his counsel had no reason to think that they had to explain to a probate judge the legal consequences of a disclaimer, which is a basic probate document. Years later, when the disclaimer was challenged, the DPC stated that it did not fully understand the legal consequences of Bernard's submissions, and that she thought that three-thirds will be contributed to Joanne's trust, despite Bernard's repeated submissions stating that two-thirds would be. Rather than admit its own failure to understand basic probate documents, the DPC claimed that Bernard's disclosures were too complicated, and it was not the DPC's job to read a simple three-page will he submitted to the DPC, when doing so would have removed any ambiguity.[42]

After that, Bernard continued to cause the DPC's ire because he sought to freeze trust assets to prevent their dissipation to the DPC-appointed conservatorship team.

The DPC's hostility to Bernard and his attorneys was so overt that Bernard's then-attorney, Shannon Stevenson. Esq. (the current Colorado solicitor general), advised Bernard, following the DPC's January 4, 2018, hearing, that she was unwilling to attend future hearings before the DPC, and he needed to find new DPC-level counsel.[43]

---

[41]  Report of Court Visitor (Oct. 25, 2012) at 5 (quoting Bernard as explaining "My mother, in her will, left 2/3's of her estate to Joanne in a trust and 1/3 will go to me and my kids").

[42]  DPC Order (Sept. 28, 2015), at 7 (explaining that it was not the DPC's job to read Renata's will)

[43]  This is the hearing, discussed above, in which the DPC *sua sponte* suspended Bernard and non-party Samuel Black as SNT trustees without notice (Samuel's suspension was later vacated, as discussed above), and made scathing remarks about non-party Katherine (discussed above). Ms. Stevenson and her firm Davis Graham Stubbs, continued to represent Bernard as appellate counsel.

**E. The DPC's Attacks on Bernard Are Unjust and Are the Main Force Preventing This Case from Being Settled**

Bernard is a highly respected, highly cited scholar, who made significant contributions to the real world and public policy. He has a long-standing relationship with the Cato Institute, where he published a book in 2021, and with the American Enterprise Institute, where he participated in events.[44] So is his wife, Katherine, who had received research grants from organizations like the AEI and participated in policy-relevant research and events.

Bernard has never received any financial benefit from the Black family trusts, has refused to take the trustee fees that the trusts provide for, and financially supported Joanne prior to their mother's death in 2012.[45]

When an objection to the disclaimer was raised, Bernard promptly offered, prior to any DPC decision, to transfer *all disputed assets* to the Joanne's trust, the SNT, thus fully remedying the alleged harm. Joanne's conservatorship team has rejected this and similar offers, as well as proposals for mediation.[46] Instead, they, with overt support from the DPC, seek complete defunding of both trusts because they can only get paid if this happens.

---

[44] See Bernard's CV at https://www6.law.northwestern.edu/webfiles/faculty/assets/documents/cv-BlackBernard_v2022-05-16;192754.pdf. He has published over 200 academic articles and six books; most recently, Bernard Black et al., *Medical Malpractice: How It Works, What It Does, and Why Tort Reform Hasn't Helped* (Cato Institute 2021).

[45] During the period from 1985 until their mother's death in 2012, Bernard provided financial support for his sister. In 1985, he bought for Joanne an apartment in Hastings-on-Hudson, New York, near his own home. He paid the mortgage, the monthly maintenance, and utilities, and for apartment cleaning. After the co-op board evicted Joanne, Bernard and his mother arranged for her to move to another apartment in Tarrytown, New York, that they jointly owned. Bernard again paid the mortgage, maintenance, and utilities, and arranged for cleaning. He transferred his part ownership of the apartment to his mother as a gift. Joanne lived there until 2012, when she ran away from home to Colorado.

[46] See Plaintiffs' Motion for Partial Summary Judgement (Apr. 29, 2022) (doc. 306) in *Black v. Dain*, Case 1:16-cv-01238 (E.D.N.Y), § II.H (summarizing settlement offers).

**F. Requested Relief**

Bernard requests that this Court: (1) vacate the DPC orders concerning the DPC Pleading issued after the removal due to the DPC's clear lack of subject matter jurisdiction; (2) enjoin the DPC from taking additional actions with respect to this pleading unless and until it is remanded, on the same grounds; and (3) enjoin all parties to the DPC Pleading and their representatives from participating in any proceedings before the DPC, related to the DPC Pleading and the matters contained therein, unless and until this pleading is remanded. The harm from unlawful DPC orders is imminent; how the DPC will rule is nearly certain, and the harm is irreparable. For the DPC orders issued on Feb. 1 and Feb.14, 2023, it would be an abuse of discretion for this Court not to vacate them.

Removal is fundamentally about the defendant's right to obtain a fair hearing in federal court, when the defendant may be unable to do so in state court. The DPC's refusal to comply with a clear federal removal statute, which bars the DPC from acting, deprives Bernard of that right, and provides additional confirmation that without removal, Bernard will not receive a fair hearing.

Joanne could receive tomorrow, through settlement with Bernard, over $6 million in her SNT plus tax-free income from workers compensation and Social Security Disability Insurance, of around $85,000 annually. Instead, she receives only about half of her workers compensation (the balance is spent by her conservator); she has not received a penny from the SNT since 2015; and her conservatorship team accrues ever-increasing legal bills. Removal of the DPC Pleading to federal court offers a way out of this nightmare, for Joanne and the rest of the Black family.

**I. The DPC Has Had No Subject Matter Jurisdiction Over the DPC Pleading After It Was Notified of Removal**

Respondent filed a notice of removal in this Court on November 30, 2022. The same day, he filed with the DPC a copy of the removal petition. Under 28 U.S.C. § 1446(d), filing the removal petition with the DPC makes removal immediately effective, and the state court is directed that it "*shall proceed no further* unless and until the case is remanded." (emphasis added).

The statement that the state court "shall proceed no further" deprives the DPC of subject matter jurisdiction. It does not matter whether the case is ultimately remanded; all actions taken by a state court after receiving notice of removal and prior to a remand are without subject matter jurisdiction. The absolute nature of this rule has been clear since the U.S. Supreme Court decision in *National S.S. Co. v. Tugman,* 106 U.S. 118, 122 (1882):

> Upon the filing [of the removal petition], the jurisdiction of the state court absolutely ceased, and that of the circuit court of the United States immediately attached. The duty of the state court was to proceed no further in the cause. Every order thereafter made in that court was *coram non judice*, unless its jurisdiction was actually restored.

More recently, the US Supreme Court held that, once a case is removed, the state court

> los[es] all jurisdiction over the case, and, being without jurisdiction, its subsequent proceedings and judgment [are] not ... simply erroneous, but absolutely void.

*Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, – U.S. –, 140 S. Ct. 696, 700, (2020) (citing *Kern v. Huidekoper*, 103 U.S. 485, 493 (1881)). *See also Madisonville Traction Co. v. St. Bernard Min. Co.* 196 U. S. 253 (1905); *Anderson v. United Realty Co.*, 222 U.S. 164, 165–66 (1911); *Railroad Co. v. McLean*, 108 U. S. 212, 216 (1883); *Stone v. South Carolina*, 117 U. S. 430 (1886); *Crehore v. Railroad Co.*, 131 U. S. 240, 243 (1889); *Marshall v. Holmes*, 141 U.S. 589, 595 (1891).

The Tenth Circuit follows this rule. See *Coyle v. Skirvin*, 124 F.2d 934, 937 (10th Cir. 1942) ("The jurisdiction of the Federal Court over the instant action attached on the filing of the petition and bond on removal and no further proceedings should have been taken in the state court.") (citing *Madisonville*, 196 U.S. at 244; *Kern*, 103 U.S. at 491; *New Orleans, M. & T. Railroad Company v. Mississippi*, 102 U.S. 135, 141 (1880); *Tugman*, 106 U.S. at 122.) "The proceedings [in the state court after removal] were coram non judice." *Coyle*, 124 F.2d at 937 (citing *Colorado Wool Marketing Ass'n v. Monaghan*, 10 Cir., 66 F.2d 313, 315 (1933); *Duncan v. Gegan*, 101 U.S. 810, 812 (1879)).

The Wright and Miller treatise summarize this rule as follows:

> [A]ny post-removal proceedings in the state court are considered coram non judice and will be vacated by the federal court <u>even if the removal subsequently is found to have been improper and the case is remanded back to that state court</u>.

14C Wright & Miller, *Federal Practice and Procedure,* § 3736 (footnotes omitted, emphasis added). The A.L.R. concurs:

> It has been established that, generally, a state court is without jurisdiction to proceed in a matter once that matter has been removed to federal court.

38 A.L.R. Fed. 824 (listing numerous cases).

Other circuit courts concur:

> Because § 1446(d) explicitly states that "the State court shall proceed no further" once removal is effected ... the statute deprives the state court of further jurisdiction over the removed case and … any post-removal actions taken by the state court in the removed case action are void *ab initio.*

*Ackerman v. ExxonMobil Corp.,* 734 F.3d 237, 249 (4th Cir. 2013).

> Removal deprives a state court of jurisdiction and requires the state court to cease all actions in the case. *See, e.g., National S.S. Co. v. Tugman,* 106 U.S. 118 (1882) (explaining that once a case is removed to federal court, "the jurisdiction of the State Court absolutely ceased ... [and][t]he duty of the State Court was to proceed no further in the cause").

*Bryan v. BellSouth Commc'ns, Inc.*, 492 F.3d 231, 240–41 (4th Cir. 2007). *See also Sweeney v. Resol. Tr. Corp.*, 16 F.3d 1, 4 (1st Cir. 1994); *Hyde Park Partners, L.P. v. Connolly,* 839 F.2d 837, 841 (1st Cir.1988); *United States ex rel. Echevarria v. Silberglitt,* 441 F.2d 225 (2d Cir. 1971); *Barbiero v. Kaufman*, 580 F. App'x 107, 111 (3d Cir. 2014); *Yarnevic v. Brink's, Inc., 102 F.3d 753, 754 (4th Cir.1996)* ("A proper filing of a notice of removal immediately strips the state court of its jurisdiction."); *Bryan v. BellSouth Commc'ns, Inc.,* 492 F.3d 231, 240 (4th Cir.2007) ("removal deprives a state court of jurisdiction and requires the state court to cease all actions in the case."); *Meyerland Co. v. Fed. Deposit Ins. Corp.,* 910 F.2d 1257, 1263 (5th Cir.1990) (once an action is removed, the state court no longer has jurisdiction); *Murray v. Ford Motor Co.,* 770 F.2d 461, 463 (5th Cir.1985); *In re Brzowski*, 798 F. App'x 22, 23 (7th Cir. 2020) ("once a notice of removal is filed, the state court loses all jurisdiction over the case"); *Ward v. Resol. Tr. Corp*., 972 F.2d 196, 198 (8th Cir. 1992); *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*, 215 F.3d 1005, 1011 (9th Cir. 2000) ("The removal of an action to federal court necessarily divests state and local courts of their jurisdiction over a particular dispute."); *Resolution Trust Corp. v. Bayside Developers* (9th Cir. 1994) 43 F.3d 1230, 1238 ("the state court loses jurisdiction upon the filing of the petition for removal"); *Maseda v. Honda Motor Co.,* 861 F.2d 1248, 1254 (11th Cir. 1988) ("[A]fter removal, the jurisdiction of the state court absolutely ceases and the state court has a duty not to proceed any further in the case."); *Syntex Ophthalmics, Inc. v. Novicky*, 745 F.2d 1423, 1430 (Fed. Cir. 1984), *cert. granted, judgment vacated on other grounds,* 470 U.S. 1047 (1985) ( "any further proceedings in the state court subsequent to removal are *coram non judice* and will be vacated.").

Numerous circuits expressly held that state court action after removal is void <u>even if the case was not properly removed</u>:

> The language of 28 U.S.C. § 1446( [d] ) could not be clearer… The state court is deprived of jurisdiction to proceed with the removed action unless and until the case is remanded, irrespective of whether the action is removable.

*United States ex rel. Echevarria v. Silberglitt,* 441 F.2d 225 (2d Cir. 1971).

> Upon the filing of a notice of removal, "the jurisdiction of the state court absolutely ceases" and "[a]ny subsequent proceedings in state court on the case are void *ab initio*." *Maseda v. Honda Motor Co.*, 861 F.2d 1248, 1254-55 (11th Cir. 1988) (citing *Steamship Co. v. Tugman*, 106 U.S. 118, 122, 1 S. Ct. 58, 60, 27 L.Ed. 87 (1882)). This rule applies regardless of whether the case is in fact removable: "the filing of a removal petition [now designated a notice of removal] terminates the state court's jurisdiction until the case is remanded, <u>even in a case improperly removed</u>." *Id.* at 1254 n.11.

*Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1261 (11th Cir. 2021) (emphasis added).

> *See also Rossello–Gonzalez v. Calderon–Serra,* 398 F.3d 1, 9 n.23 (1st Cir. 2004) (the state supreme court lacked authority to enter an order after removal, even though the removal was later found to be invalid); *In re Diet Drugs,* 282 F.3d 220, 232 n. 6 (3d Cir. 2002) ("[E]ven if a case is later remanded, it is under the sole jurisdiction of the federal court from the time of filing until the court remands it back to state court."); *South Carolina v. Moore,* 447 F.2d 1067 (4th Cir. 1971) ("subsequent proceedings in the state court, before remand, are absolutely void" even if the "removal petition is subsequently found to be frivolous"); *E. D. Sys. Corp. v. Sw. Bell Tel. Co.*, 674 F.2d 453, 458 (5th Cir. 1982) ("even if a case is not properly removable, the filing of a removal petition in federal court ends the state court's jurisdiction until the case is remanded."); *Lowe v. Jacobs*, 243 F.2d 432, 433 (5th Cir. 1957) (same); *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States,* 215 F.3d 1005, 1011 (9th Cir.2000) ("[F]urther proceedings in a state court are considered *coram non judice* and will be vacated even if the case is later

remanded."); 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3737 (3d ed.1998).

As the Moore treatise put it:

> The state court is deprived of jurisdiction to proceed with the removed action unless and until the case is remanded, <u>irrespective of whether the action is removable</u>.

1A J. Moore *Federal Practice* P0.168(3.-8), at 1306 (2d ed. 1965) (emphasis added).

Several district courts within the Tenth Circuit have also addressed this issue. All but one held that the ban on state court action after removal is absolute. *See Bruley v. Lincoln Prop. Co., N.C.,* 140 F.R.D. 452, 453 (D. Colo. 1991) ("Removal of a state action to federal court immediately divests the state court of jurisdiction."); *Vigil v. Mora Indep. Sch.,* 841 F.Supp.2d 1238, 1240–41 (D.N.M. 2012) (the state hearing was "void *ab initio*," and "the party who removed the case is not obligated to appear in state court and litigate the suit on the merits if the state court exercises jurisdiction in defiance of the removal."); *Fed. Nat'l Mortg. Ass'n v. Milasinovich*, 161 F. Supp. 3d 981, 1008 (D.N.M. 2016) (removal immediately divests the state court of jurisdiction, regardless of the merits of removal) (collecting cases); *Est. of Gonzales v. AAA Life Ins. Co.*, No. CIV 11-0486 JB/WDS, 2012 WL 1684599, at *10 (D.N.M. May 8, 2012) ("removal divests a state court of jurisdiction"); *Gonzales v. Marcantel*, 2017 WL 4325742, at *4 (D.N.M.).

The sole district court case in the Tenth Circuit that deviated, *Direct Mortgage Corp. v. Keirtec, Inc.,* 478 F.Supp.2d 1339 (D. Utah 2007), is plainly erroneous on jurisdiction and involved highly unusual facts. A defendant filed a removal notice, but then "stood silently by while parties filed substantive pleadings in the state court and the state court judge issued orders." 478 F.Supp.2d at 1340. The federal court ruled that this deliberate inaction allowed the defendant to reap simultaneous benefits from both state and federal court. "[Defendant] cannot quietly and idly

let the state court action proceed, while waiting to see if a ruling of the state court will affect it favorably." 478 F.Supp.2d at 1341. By doing so, the defendant "effectively consented to the state court's jurisdiction". 478 F.Supp.2d at 341–42. First, the court's ruling is plainly erroneous: lack of subject matter jurisdiction is not waivable; the Supreme Court specifically held that a party cannot consent to jurisdiction of state court after removal. See *Nat'l S.S. Co. v. Tugman*, 106 U.S. 118, 122 (1882). Second, nothing remotely similar happened in the current case: Bernard immediately objected when the DPC asserted jurisdiction despite removal. There was no strategic delay.

This Court should follow the long line of the U.S. Supreme Court precedents cited above, the Tenth Circuit precedents, numerous other circuit courts that have since ruled on this issue, and the plain language of 28 U.S.C. § 1446(d), and hold that once a notice of removal is filed in the state court, the state court is without jurisdiction to act.

In deciding the scope of the DPC power to issue rulings in this case, this Court should be guided only by federal law. The Supreme Court repeatedly held that federal court, not state court, determines whether a civil action is removable. *See, e.g., Tugman,* 106 U.S. at 122.:

> [W]hether the circuit court of the United States should retain jurisdiction, or dismiss, or remand the action because of [an alleged defect in removal], was for it, not the state court, to determine.

See also *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 437 (1974) ("once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal."); *Wallace v. Microsoft Corp.,* 596 F.3d 703, 706 (10th Cir. 2010) ("After removal, federal rather than state law governs the course of the later

proceedings."); *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1126 (10th Cir. 2018); *Leiser v. Moore*, 903 F.3d 1137, 1139 (10th Cir. 2018).

> After the removal of an action from state court ... the case will proceed as if it originally had been brought in the federal court. Thus, it has been settled by numerous cases that the removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters.

14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman, *Federal Practice and Procedure* § 3738 at 692–98 (4th ed.2009) (citations and footnotes omitted).

Although federal case law controls, the Colorado Supreme Court has held, consistent with federal case law, that: "the law is clear that the removal to federal court divested the state court of jurisdiction." *Loctite Corp. v. Dist. Ct. In & For City & Cnty. of Denver*, 718 P.2d 252, 253 (Colo. 1986) (citing *Stratton's Indep. v. Sterrett*, 51 Colo. 17, 30, 117 P. 351, 355 (1911)).

## II. This Court Must Vacate All DPC Orders Related to the DPC Pleading

### A. DPC Orders Issued Without Jurisdiction Are Void

As discussed above, the filing of the removal petition with the DPC on November 30, 2022 deprived the DPC of subject matter jurisdiction and therefore renders all subsequent rulings related to the DPC Pleading void.[47] After that date, the federal court has sole jurisdiction over the removed proceedings.

This Court has the authority, and indeed is required, to vacate these void orders. *See* Fed. R. Civ. P. 60(b) ("[T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: ... the judgment is void.").

---

[47] See Part I, supra.

The Tenth Circuit has long recognized that the judgment entered without subject matter jurisdiction is void and must be vacated under Rule 60(b)(4):

> For a judgment to be void under Rule 60(b)(4), it must be determined that the rendering court was powerless to enter it. If found at all, voidness usually arises for lack of subject matter jurisdiction or jurisdiction over the parties. It may also arise if the court's action involves a plain usurpation of power or if the court has acted in a manner inconsistent with due process of law.

*V. T. A., Inc. v. Airco, Inc*., 597 F.2d 220, 224–25 (10th Cir. 1979). A judgment is void and must be vacated under Rule 60(b)(4) where:

> [the] judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.' " *Johnson v. Spencer*, 950 F.3d 680, 694 (10th Cir. 2020) …(quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271, (2010)).

*Wilson v. Reid*, 838 F. App'x 351, 354–55 (10th Cir. 2020). See also *Waltman v. Georgia-Pac., LLC*, 590 F. App'x 799, 806 (10th Cir. 2014) (a judgment or order is void under Rule 60(b)(4) when "the rendering court was powerless to enter it"); *Gschwind v. Cessna Aircraft Co.,* 232 F.3d 1342, 1346 (10th Cir. 2000) (same).

Other circuits concur. See, e.g., *Doe v. Lexington-Fayette Urban Cty. Gov't*, 407 F.3d 755, 761 (6th Cir. 2005); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995); *In re Edwards,* 962 F.2d 641, 644 (7th Cir. 1992)). *Pacurar v. Hernly,* 611 F.2d 179, 181 (7th Cir. 1979); *Combs v. Nick Garin Trucking,* 825 F.2d 437, 442 (D.C. Cir. 1987); 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2862, at pp. 198–200 (1973).

### B. This Court <u>Must</u> Vacate the Void DPC Orders; This Is Not Discretionary

Despite the permissive language of Rule 60(b) as a whole, when the district court faces a void order, it <u>must</u> vacate it:

> If the underlying judgment is void for lack of personal or subject matter jurisdiction or because entry of the order violated due process, the district court <u>must</u> grant relief [vacate the judgment under Rule 60(b)(4)].

*Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983) (emphasis added). "If voidness is found, relief is not a discretionary matter; it is mandatory". *V.T.A., Inc. v. Airco, Inc.,* 597 F.2d 220, 224 n. 8 (10th Cir. 1979). See also *Orner v. Shalala*, 30 F.3d 1307, 1310 (10th Cir. 1994) (when the judgment is void, vacating it is not discretionary, but mandatory); *Myzer v. Bush*, 750 F. App'x 644, 647 (10th Cir. 2018) ("where Rule 60(b)(4) is properly invoked, relief is not a discretionary matter but instead is mandatory."); *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011); *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008).

Other circuits agree:

> Although ordinarily a district judge has broad discretion in the application of Rule 60(b), … this is not true with respect to motions brought under Rule 60(b)(4). Because void judgments are legal nullities, district courts have little leeway… If the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4).

*United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1317 (7th Cir. 1995). See also *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995) (refusal to vacate a void judgment is *per se* abuse of discretion); *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 400 (7th Cir. 1986) ("[I]f the district court in the underlying action had no jurisdiction over the defendants it was a *per se* abuse of discretion to deny the defendants' rule 60(b)(4) motion."); *Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.,* 740 F.2d 1499, 1511 (11th Cir. 1984) (refusal to set aside default judgment is an abuse of discretion where personal jurisdiction issue was unresolved).

**C. After Removal, the Federal Court Treats Prior State Court Orders as It Would any Order It Might Itself Have Entered, and thus Can and Must Set Aside Void State Court Orders Under Rule 60(b)(4)**

As explained in *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988):

> Whenever a case is removed, interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed. The district court is thereupon free to treat the order as it would any such interlocutory order it might itself have entered.

The Tenth Circuit recognizes this rule. See *Jenkins v. MTGLQ Inv'rs*, 218 Fed. Appx. 719, 724 (10th Cir. 2007) (after a state-court action is removed, the district court can set aside, under Rule 60(b), default judgment issued by the state court).

Numerous district courts within the Tenth Circuit have followed this rule.

> [F]ederal courts may re-examine state court decisions—while the case is in federal court—even if they predate the removal notice. *See* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect *until dissolved or modified by the district court.*" (emphasis added)). In *Laney ex rel. Laney v. Schneider Nat. Carriers, Inc.,* 259 F.R.D. 562 (N.D.Okla.2009) [the court held] that "[a] prior state court order in essence is federalized when the action is removed to federal court . . . It added that "a federal court is free to reconsider a state court order and to treat the order as it would any interlocutory order it might itself have entered." 259 F.R.D. at 564.

*Fed. Nat'l Mortg. Ass'n v. Milasinovich*, 161 F. Supp. 3d 981, 1012–13 (D.N.M. 2016).

After removal, "the state court order is not entitled to deference in federal court, and because federal procedure governs the enforcement of a prior state court order removed to federal court, the federal court should ensure that the order is consistent with the federal rules." *Laney ex rel. Laney v. Schneider Nat. Carriers, Inc.*, 259 F.R.D. 562, 565 (N.D. Okla. 2009). See also *Brown v. K-MAC Enterprises*, 897 F. Supp. 2d 1098, 1103 (N.D. Okla. 2012) ("federal court is free to reconsider a state court order and to treat the order as it would any interlocutory order it might itself have entered"); *Farmlands Partners Inc. v. Fortunae*, 2019 WL 2436064, at *3 (D. Colo.);

*Phoenix Energy Mktg., Inc. v. Chase Oil Corp*., 2017 WL 2347188, at *3 (N.D. Okla.); *Batton v. BAC Home Loan Servicing, L.P.,* 2012 WL 13020812, at *3 (D. Wyo. Nov. 27, 2012).

Other circuits that have addressed this issue concur. See *In re Diet Drugs*, 282 F.3d 220, 232 (3d Cir. 2002) (when a case is removed, interlocutory state court orders are transformed into orders of the federal district court to which the action is removed; the district court is free to treat the order as it would any such interlocutory order it might itself have entered); *Resolution Trust Corp. v. Allen,* 16 F.3d 568, 573 (4th Cir.1994) (after removal, the judgment of a state court "is treated the same as other judgments entered by the district court and the parties would follow the ordinary rules regarding post-judgment remedies"); *Resolution Trust Corp. v. Northpark Joint Venture,* 958 F.2d 1313, 1316 (5th Cir.1992) ("A prior state court order in essence is federalized when the action is removed to federal court"); *Preaseau v. Prudential Ins. Co. of Am*., 591 F.2d 74, 79 (9th Cir. 1979) ("[T]he federal court ... treats everything that occurred in the state court as if it had taken place in federal court."); *Jackson v. American Savings Mortgage Corp.,* 924 F.2d 195, 198 (11th Cir.1991) (after removal, the district court can review a state court order or judgment); *Resolution Trust Corp. v. Bakker,* 51 F.3d 242, 244 (11th Cir.1995) (same). See also *Breedlove v. Cabou,* 296 F.Supp.2d 253, 267 (N.D.N.Y. 2003); *Nasso v. Seagal,* 263 F.Supp.2d 596, 608 n. 19 (E.D.N.Y. 2003); *Dunning v. Collecto, Inc.,* 2009 WL 1211263 (E.D.Mich.); 16, *Moore's Federal Practice* § 107.31 [3] (citing cases from the First, Second, Fifth, Seventh, and Ninth circuits).

To summarize, after the case is removed, the federal court:

> may redetermine… the propriety of state-court orders… and even may reconsider a default judgment entered by the state court prior to the removal, if the removal notice has been filed within the time period specified in the removal statute.

14C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3738 (Rev. 4th ed.).

In the current case, all orders entered by the DPC after the DPC Pleading was removed are void for lack of subject matter jurisdiction. They remain void and therefore must be vacated under Rule 60(b)(4), whether or not this Court would later decide to remand some or all claims included in the DPC Pleading. See *In re Diet Drugs,* 282 F.3d 220, 232 n. 6 (3d Cir. 2002) ("even if a case is later remanded, it is under the sole jurisdiction of the federal court from the time of filing until the court remands it back to state court."). See also 14A Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3737, at 551–52 (1985) (after the notice of removal is filed in the state court, "[a]ny further proceedings in the state court are coram non judice and will be vacated, <u>even if the removal subsequently is found to have been improper</u>.") (emphasis added).

Therefore, Respondent seeks a court order under F.R.C.P 60(b)(4) vacating all DPC orders related to the removed pleading, entered after November 30, 2022.

## II. This Court Should Enjoin the DPC from Taking Any Further Actions with Respect to the Removed Pleading, Unless and Until It Is Remanded

### A. The Anti-Injunction Statute Does Not Apply to Removed Cases

The Supreme Court has specifically listed "removal of litigation from state to federal courts" as one instance where federal courts may "enjoin state court proceedings, despite the anti-injunction statute." *Mitchum v. Foster,* 407 U.S. 225, 234 (U.S.1972). See also *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 640 (1977); *Madisonville Traction Co. v. St. Bernard Mining Co.,* 196 U.S. 239 (1905).

See  also *Bryan v. BellSouth Commc'ns, Inc.*, 492 F.3d 231, 240 (4th Cir. 2007); *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237 (4th Cir. 2013); *Matter of Meyerland Co.*, 910 F.2d 1257, 1263 (5th Cir. 1990), *on reh'g*, 960 F.2d 512 (5th Cir. 1992) ("The anti-injunction act… does not bar an injunction of a state court proceeding which purports to exercise jurisdiction over a removed case."); *Frith v. Blazon-Flexible Flyer, Inc.,* 512 F.2d 899, 901 (5th Cir .1975) (federal court may enjoin a second state court suit filed in attempt to subvert removal);  *Meyerland Co. v. Fed. Deposit Ins. Corp.,* 910 F.2d 1257, 1263 (5th Cir.1990) ("[a]n injunction is proper" to preclude a state court from moving forward on a removed case); *Newby v. Enron Corp.,* 302 F.3d 295, 301 (5th Cir.2002) (after the case is removed, the Anti-Injunction Act "does not preclude injunctions against a lawyer's filing of prospective state court actions."); *Kansas Pub. Employees Retirement Sys. v. Reimer & Koger Assoc., Inc.*, 77 F.3d 1063, 1069 (8th Cir. 1996) ("injunctions to stay state proceedings in removed cases come within the first exception to the Anti–Injunction Act."); *Lou v. Belzberg,* 834 F.2d 730, 740 (9th Cir.1987) ("It is thus clear that a federal court may enjoin the continued prosecution of the same case in state court after its removal."), citing *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 640 (1977); *Stoll v. Hawkeye Cas. Co. of Des Moines, Iowa*, 185 F.2d 96 (8th Cir 1950); *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1378 (9th Cir. 1997) ("the Supreme Court has held that the statute governing removal procedures, 28 U.S.C. § 1446, provides express authorization to enjoin state court proceedings in removed cases"); *Maseda v. Honda Motor Co.,* 861 F.2d 1248, 1254 (11th Cir. 1988).

As explained in *17 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4224,* pg. 521

"28 U.S.C.A. § 1446(d), providing that upon removal the "State court shall proceed no further unless and until the case is remanded," has always been regarded as an exception to the Anti-Injunction Act.

Respondent seeks a court order enjoining the DPC and Joanne Black from taking any new steps with respect to the removed DPC Pleading. This injunction is temporary; it will lapse if the DPC Pleading is remanded, or become permanent, if removal is upheld.

## B. Respondent Meets the Legal Standard for Granting an Injunction

A party "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). See also *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992).

## C. Likelihood of Success on the Merits Is Very High: Once the DPC Pleading Was Removed, the DPC Lacks Subject Matter Jurisdiction

As discussed in detail in Part I, *supra*, the DPC lost subject matter jurisdiction over the DPC Pleading after Bernard filed a notice of removal in this Court on November 30, 2022 and provided a copy to the DPC. All orders issued without subject matter jurisdiction are unlawful and void.

## D. Irreparable Injury to Respondent Is Virtually Certain

1.  The DPC Is Virtually Certain to Issue Unlawful Orders to Strip Bernard and Samuel Black of Their Rights to Manage Family Trusts Because the DPC Itself Ordered Joanne's Court-Appointed Attorney to Bring These Claims Before the DPC

The rulings by the DPC without jurisdiction will irreparably and significantly affect the ability of Bernard and Samuel Black to manage three family trusts. This harm is imminent and

virtually certain, and it is a harm that a monetary award cannot compensate. The DPC is highly likely issue an order to suspend or even remove Bernard and Samuel as trustees at any minute.

The removed DPC Pleading contains five claims asking the DPC to suspend Bernard and Samuel Black from their positions as trustees of three family trusts. The DPC's resolution of these claims is predetermined because the DPC itself previously ordered Bernard's litigation opponents to bring actions to remove Bernard and Samuel Black as trustees in other courts, before ordering that the trustee suspension claims be brought before the DPC.

In November 2017, the DPC *sua sponte* ordered Joanne's court-appointed attorney, Ms. DiPonio, whom the DPC itself appointed, to seek removal of Bernard Black as SNT trustee in another court.[48]  Such an order is per se unlawful and improper: a court has no legal power to *sua sponte* <u>order</u> a party to file a lawsuit with specific claims in another court. Both the US Constitution and the Colorado Constitution allow the courts to only hear cases and controversies; judges cannot create "controversies" by *sua sponte* issuing orders. Even within the conservatorship context, a decision to file a lawsuit belongs to the counsel and the guardian ad litem of the protected person, not to the court.

In January 2018, the DPC again ordered Joanne's attorney to file a lawsuit elsewhere to remove trustees.[49] To comply with this order, Joanne's counsel filed a lawsuit in Illinois. That lawsuit was so patently meritless that Joanne's counsel abandoned it rather than reply to a motion to dismiss.[50]

---

[48]  DPC Order (Nov. 3, 2017).

[49]  Transcript of DPC hearing (Jan. 4, 2018).

[50]  Joanne's Conservator, Jeanette Goodwin, brought an action to remove Bernard and Samuel as SNT trustees in Illinois in January 2018.  *Goodwin V. Black,* Case 2018-CH-00563 (Circuit Court for Cook County, Illinois,

In 2019, the DPC again ordered that an action be brought in another court to remove trustees.[51]  No such action was brought, presumably because there was no basis for it.

Bernard could not appeal these unlawful "shall-sue" orders because he was not a party who was required to do anything; Joanne's attorney or GAL was.

In January 2018, the DPC, *sua sponte* and without notice, suspended Bernard and Samuel as trustees of the SNT and the Joanne Black 2013 Trust.[52] The Colorado Court of Appeals vacated that order as to Samuel for lack of notice. [53]

In 2021, the DPC again ordered Joanne's counsel to bring trustee suspension claims – this time, in the DPC itself. These claims are five of the eight claims in the removed PDC Pleading.[54] This is manifestly improper: the DPC ordered a party to bring trustee suspension claims in her own court, and is now insisting on hearing those claims herself, despite the removal. The DPC is de facto a plaintiff and a judge at the same time.

Again, Bernard could not appeal any of this because he was not the party who was ordered to act. The DPC's repeated efforts to suspend or remove trustees, and to direct to itself litigation that has failed in other states, make the outcome predetermined, and confirms the DPC's broader bias in this family litigation.

## 2.  The Loss of the Power to Manage Family Trusts Constitutes Irreparable Harm

The loss of the ability to manage an entity is irreparable harm:

---

Chancery Division) (Jan. 16, 2018).  The trustees moved to dismiss.  Goodwin then dismissed her own claim.  *Id.*, Order Granting Motion to Dismiss (May 30, 2018).

[51]  Transcript of DPC hearing (Oct. 3, 2019), at 11.

[52]  DPC Order (Jan. 4, 2018).

[53]  Black v. Black, 482 P.3d 460 (Colo. App. 2020).

[54]  DPC Order (May 10, 2021).

> [The] loss of a contractual right to manage and control a business may constitute irreparable harm; … monetary damages are an inadequate remedy for such a loss; and … a contractual right to participate in the management and control of a business has intrinsic value in and of itself that may not be adequately compensated by monetary damages.

*Gitlitz v. Bellock*, 171 P.3d 1274, 1280 (Colo. App. 2007) (collecting cases). See also *Bray v. QFA Royalties LLC,* 486 F.Supp.2d 1237, 1248 n. 6 (D. Colo. 2007) (the loss of the right to exercise one's veto power in the decision-making of an entity constitutes a separate and distinct harm that may not be adequately remedied by a monetary award).

Colorado courts repeatedly held that the loss of a right to control an entity constitutes irreparable harm. *See Anderson v. Applewood Water Ass'n, Inc.*, 409 P.3d 611, 617 (Colo. App. 2016) (loss of a contractual right to control an organization constitutes irreparable harm); *DeJean v. Grosz*, 412 P.3d 733, 737 (Colo. App. 2015) (the right to prevent a homeowners association from engaging in contested practices during the pendency of litigation is a proper subject of an injunction); *Gitlitz*, 171 P.3d at 1280 (loss of a contractually negotiated right to management and control of an organization creates irreparable harm for injunctive purposes).

Numerous other courts have held that loss of the power to manage an entity constitutes irreparable harm. See, e.g.,*Wisdom Import Sales Co. v. Labatt Brewing Co.,* 339 F.3d 101, 115 (2d Cir. 2003) ("minority right to participate in corporate management has value in and of itself and a denial of that right, without more, can give rise to irreparable harm."); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,* 427 F.Supp.2d 491 (S.D.N.Y. 2006) (dilution of a party's loss of control or influence of an entityis irreparable harm), *aff'd,* 2007 WL 2492139 (2d Cir. 2007); *Woods v. Boston Scientific Corp.,* 2006 WL 4495530 (S.D.N.Y. 2006) (magistrate's recommendation) (loss of right to joint management is irreparable harm), *adopted,* 2006 WL

4495530, 2007 WL 754093 (S.D.N.Y. 2007); *Alcatel Space, S.A. v. Loral Space & Communications Ltd.,* 154 F.Supp.2d 570, 584 (S.D.N.Y. 2001) (loss of minority rights in entity governance is irreparable harm), *aff'd* 25 Fed. Appx. 83 (2d Cir. 2002); *Davis v. Rondina,* 741 F.Supp. 1115, 1125 (S.D.N.Y.1990) (excluding a party from management of an entity constituted irreparable harm); *Street v. Vitti,* 685 F.Supp. 379, 384 (S.D.N.Y.1988) (infringement of a minority decisionmaker's "voice in management" constituted irreparable injury); *Oracle Real Estate Holdings I LLC*, 582 F. Supp. 2d at 625 (S.D.N.Y. 2003) (the loss of "the right to meaningful control" of the entity was an "injury [that] would constitute irreparable harm"); *Audubon Levy Inv'rs*, 698 F. Supp. 2d at 332 (E.D.N.Y 2010) (taking steps to limit the manager's ability to manage causes additional irreparable harm); ; *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, 2003 WL 22090149, at *4 (S.D.N.Y. Dec. 10, 2003) (("[A] party's loss of control of [an entity] constitutes irreparable harm.") (collecting cases); *Canwest Global Commc'ns Corp. v. Mirkaei Tikshoret Ltd.,* 9 Misc.3d 845, 804 N.Y.S.2d 549 (Sup.Ct. 2005) (loss of right to participate in management of an entity is irreparable harm); *Telestrata, LLC v. NetTALK.com, Inc.,* 126 F. Supp. 3d 1344, 1354 (S.D. Fla. 2015) (loss of control over an entity constitutes irreparable harm; collecting cases from numerous jurisdictions); *Beztak Co. v. Bank One Columbus, N.A.*, 811 F.Supp. 274, 284 (E.D.Mich.1992) (a controlling interest in an entity is an important and unique interest); *Solar Cells, Inc. v. True North Partners, LLC,* 2002 WL 749163 at *7–8 (Del.Ch.) ( "[t]he right to participate in [an entity] is a valuable right whether or not that participation includes control"); *Vitoria Telecom, LLC v. MET One LLC*, 2021 WL 10257113, at *4 (S.D. Fla. May 17, 2021); *Coxon v. GS Eng'g, Inc.*, 2021 WL 5496406, at *2 (W.D. Mich. Apr. 2, 2021) ("the loss of control of [an entity] constitutes irreparable harm").

The DPC's imminent rulings, made without subject matter jurisdiction, will irreparably and significantly harm the ability of the SNT and Issue Trust trustees to litigate in other fora, even if these DPC decisions are later reversed on appeal. Bernard and Joanne are currently embroiled in a multi-year, multi-state litigation. If the DPC issues adverse orders against Bernard, as is expected, this itself will cause judges in other courts to treat the DPC's comments as binding, even if they are issued without jurisdiction and therefore void. Even if these decisions are appealed and later reversed and vacated, other courts will have finalized their decisions.

As an example: in 2018, the DPC, acting *sua sponte*, issued an order, castigating Bernard's wife, Katherine.[55] Katherine was never a party before the DPC; the DPC has no jurisdiction over her; she was not informed about the upcoming hearing, was not informed of any accusations against her; she was not present at the hearing, not represented, had no chance to present her own evidence, to conduct discovery of her accusers, or cross-examine them. The accusations against her were false, which is easily shown with documents from financial institutions.[56] Yet, she had no chance to defend herself.

---

[55] DPC Order (Jan. 4, 2018).

[56]  Katherine has lent money to the trusts, to pay legal fees to defend against Dain's efforts to defund the trusts and to spend trust assets on litigation.  The DPC assumed the loans were fraudulent because Joanne claimed they were, and Katherine had no chance to respond because she did not receive notice.  Her loans were entirely proper, and are meticulously documented by a Colorado forensic accounting firm, Harper Hofer and Associates.  So far, only one trial court considered the merits of the loans to the trusts (made by Olga Dal, whose loans were made for the same purposes as Katherine's, and were made through the same procedure). Olga's loans were upheld, both at trial and on appeal.  *Dal v. Black*, Case 2017 L 9744 (motion to vacate by Dain and Goodwin denied after hearing (Oct. 12, 2017), *affirmed*, 2020 IL App. 191348-U. Because Katherine's loans are substantively the same as Olga's (except for exact dates and amounts), there are no reasons to consider them improper, much less "fraudulent".

The DPC's surprise statements against Katherine were dicta and thus not appealable, and yet had tremendous effect on her life and on litigation in other courts. The Illinois appellate court misunderstood the DPC's castigation of Katherine as a fact established against a party by the DPC, quoted this DPC statement in its own decision, and ruled against Katherine expressly on that basis.[57] From there, the DPC statement has metastasized further through chain citations: the Colorado Court of Appeals relied on it in 2020;[58] Magistrate Judge Neuriter relied on it in his recommendation for remand, and the Eastern District of New York has now relied on Magistrate Judge opinion.[59] We now have four courts (Illinois COA, Colorado COA, Magistrate Judge Neuriter, EDNY) copying from each other and relying on a single demonstrably false statement by the DPC, issued against a non-party, without notice and without hearing evidence. These courts assumed that they were quoting an adverse finding against a party after a normal litigation process. That DPC statement was improper, issued in gross violation of litigation procedure, false in substance, deeply harmful to Katherine – and yet not appealable.

This is a classic case of the bell that cannot be unrung. Once the DPC issues rulings that will be followed by other courts, the damage will be done, and the harm will be irreversible.

---

[57] *Litvak v. Black*, 147 N.E.3d 835, 838 ¶ 10 (Ill. App. 2019).

[58] *Black v. Black II*, 480 P.3d at 487 (a chain quotation of the DPC's statements about Katherine: the 2020 decision of the Colorado Court of Appeals quotes and relies on the 2019 decision of the Illinois Court of Appeals, which quoted and relied on the 2018 DPC statements about Katherine; from this, erroneously concluding that the DPC's statements about Katherine were based on independent fact-finding by the Illinois court. Causation obviously ran the other way because the DPC decision came first).

[59] *Black v. Dain*, Case 1:16-cv-01238 (E.D.N.Y. March 31, 2023), at 43.

**E. The Balance of Equities Tips Strongly in Favor of Respondent**

As shown above, Respondent's success on the merits of whether the DPC has jurisdiction is virtually certain: the DPC plainly has no jurisdiction to act. The harm to Respondent is imminent, irreparable, and severe. The core problem is that even a ruling that is clearly beyond the DPC's power will require years to reverse on appeal, and some potential orders will not be appealable at all due to lack of finality.

Meanwhile, there is no legitimate harm to Plaintiff. As shown above,[60] all DPC orders issued with respect to the DPC Pleading after November 30, 2022 are void. As such, they must be vacated pursuant to Fed.R.Civ.P. 60(b)(4). Losing an opportunity to obtain a void order is not a cognizable loss for Joanne.

**F. An Injunction Is in the Public Interest**

The public interest prong also points in favor of granting a stay. Courts must not act without jurisdiction, especially when the lack of jurisdiction is as patently obvious as it is here, and especially when the court has repeatedly acted without jurisdiction in the past, as it has here. Doing so violates litigants' constitutional rights and damages public trust in the court system.

**III. This Court Should Enjoin All Parties to the DPC Proceedings and Their Agents from Taking Any Further Actions Before the DPC with Respect to the Removed Pleading, Unless and Until the Pleading Is Remanded**

Respondent incorporates all arguments from Section III, *supra*. The likelihood of success on the merits is very high because the DPC lacks subject matter jurisdiction to proceed after removal. The harm to the defendants from participation by Joanne and her representatives in the

---

[60] See Part II, supra.

void DPC proceeding, and from their fermenting of new proceedings in the DPC, is imminent and irreparable. The harm to Joanne and her representatives from this injunction does not exist; they have no right to proceed before a court without subject matter jurisdiction. They will also see only a short delay until this Court decides on the removal petition, after which they will be able to proceed with their claims in either state or federal court. Finally, the public interest points in favor of the injunction because continuing with court proceedings, when the court lacks jurisdiction, harm the public's trust in the legal system.

Note too that Joanne's representatives brought the DPC Pleading in violation of the court order issued by the NDIL.[61] The NDIL specifically prohibited any party from seeking the removal of assets currently in custody of the NDIL. Joanne's Illinois attorney expressly promised the NDIL judge that Joanne would not do so in the DPC.[62] The DPC Pleading did exactly that. Joanne and her representatives should not benefit from violating an order of the NDIL.

Respectfully submitted,

Date: April 3, 2023

Bernard S. Black, pro se
As Issue Trust Trustee

/s/ Bernard S. Black

_____

---

[61] Minute order in Interpleader Case (N.D. Ill. June 19, 2019) [doc. 69] ("preclude any party from seeking to enforce any court order requiring, or otherwise seek to effectuate, any turnover or withdrawal of the interpleader assets from the accounts held by [Chase Bank], without first filing a motion with this Court seeking approval for such withdrawal").

[62] Memorandum Opinion and Order (Sept. 29, 2021), 2021 WL 4459482, at *21 ("Joanne's counsel later made clear—repeatedly—that she did not seek any turnover of the Trusts' assets").

**CERTIFICATE OF SERVICE**

I hereby certify that I served a true and correct copy of the foregoing document on April 3, 2023, to the following individual(s) by the method(s) indicated below.

Via ECF:
Counsel for Joanne Black
DiPonio and DiPonio LLC
Lisa ReneeMarie DiPonio
7931 S. Boradway # 348
Littleton CO 80120
diponiolawfirm@comcast.net

Via first-class mail
Guardian-ad-litem for Joanne Black
Gayle Y.L. Young
PO Box 307
Littleton CO 80160
d.zen@q.com

Via e-mail
Counsel for Bernard Black as Conservator and SNT Trustee
The Pearman Law Firm, P.C.
Shaun Pearman, Esq.
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
shaun@pearmanlawfirm.com

/s/ Bernard S. Black

_____
Bernard S. Black
Pro se, as Issue Trust Trustee

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

/s/ Bernard S. Black

_____

Bernard S. Black
Pro se, as Issue Trust Trustee